Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
        scott.lawrence@wickphillips.com

Jennifer R. Hoover (*pro hac vice* admitted)
Andrew D. Kinsey (*pro hac vice* to be filed)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com
        akinsey@beneschlaw.com

Nicholas J. Secco (*pro hac vice* admitted)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: nsecco@beneschlaw.com

Alyssa A. Moscarino (*pro hac vice* admitted)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500
Email: amoscarino@beneschlaw.com

Abbey Walsh (*pro hac vice* admitted)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: (646) 777-0053
Email: abbey.walsh@beneschlaw.com

COUNSEL TO PROFESSIONAL BULL RIDERS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MERIT STREET MEDIA, INC.,[1] | Case No. 25-80156 (SWE) |
| Debtor. | |

## PROFESSIONAL BULL RIDERS LLC'S EMERGENCY MOTION TO COMPEL PRODUCTION BY THE DEBTOR AND PETESKI PRODUCTIONS, INC.

Under Federal Rule of Civil Procedure 37, made applicable by Rules 7037 and 9014 of the Federal Rules of Bankruptcy Procedure, and 11 U.S.C. § 105(a), Professional Bull Riders LLC ("**PBR**"), by and through its undersigned counsel, moves to compel production of certain documents, communications, and electronic information from Merit Street Media, Inc. (the "**Debtor**"), the debtor in this chapter 11 bankruptcy case (the "**Chapter 11 Case**"), and Peteski

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

Productions, Inc. ("**Peteski**"), the DIP lender in this Chapter 11 Case.[2]

**PRELIMINARY STATEMENT**

1.      All evidence presently suggests that Phillip C. McGraw ("Dr. Phil") orchestrated

this Chapter 11 Case to avoid menacing litigation against PBR and jumpstart Envoy Media Co.

("**Envoy**"), a brand-new media venture he founded the day before Debtor filed this case, with the

Debtor's remaining assets free and clear of any legacy encumbrances and obligations he made on

the Debtor's behalf. Thus, PBR, the Debtor's largest creditor, believes that conversion to chapter

7 is in the creditors' best interests and has formally requested that relief from this Court.[3]

2.      On August 19, this Court will hear arguments, weigh evidence, and make certain

key determinations: whether to convert this case to chapter 7 as PBR requests, dismiss it as TBN

(Debtor's former majority shareholder) requests, or approve DIP Financing as the Debtor

requests.[4] To evaluate dismissal or conversion, the Court must consider whether the Debtor filed

this case in bad faith and whether it serves a valid bankruptcy purpose. The bad-faith determination

hinges upon whether the Debtor engaged in pre-petition misconduct. This might include depleting,

diverting, siphoning, or fraudulently transferring assets, overspending, abandoning its business,

leaving no assets to protect, preserve, or reorganize, breaches of fiduciary duties on behalf of its

director(s) or shareholder(s), and/or filing the bankruptcy without the requisite corporate authority.

And to evaluate whether the case serves a valid bankruptcy purpose, the Court considers whether

---

[2] Defined terms not otherwise defined here have the meaning ascribed to them in *Objection of Professional Bull Riders, LLC to Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetiton Financing, and (B) The Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expenses Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "**DIP Objection**"), [Dkt. 97]. Paragraphs 6–14 of the PBR DIP Objection are incorporated herein by reference.
[3] *See Partial Joinder of Professional Bull Riders, LLC In Support Of Trinity Broadcasting of Texas, Inc. and TCT Ministries, Inc.'s ("**TBN**") Emergency Motion For An Order: (i) Dismissing Debtor's Chapter 11 Case, (ii) Converting The Case To Chapter 7, or (iii) Appointing a Chapter 11 Trustee* (Dkt. No. 151) (the "**Partial Joinder**").
[4] On August 19, the Court will also decide the Debtor's Bidding Procedures Motion. (Dkt. No. 155.)

the case was filed to gain a tactical litigation advantage and/or to insulate a Debtor or its directors from discovery in pending pre-petition litigation.

3. In its Partial Joinder, PBR argues that these factors, which create cause to convert, are present in this Chapter 11 Case. To that end, PBR served requests for production to the Debtor and Peteski. PBR's requests can be grouped into two general categories, both of which seek discovery that is material to the August 19 hearing: (1) discovery related to the Court's determination to dismiss or convert; and (2) DIP discovery. To date, however, Debtor has produced just over 1,600 pages of documents. Peteski has produced none.

4. Depositions are imminent, with the first occurring today. But PBR has no meaningful documents to evaluate the pending motions and examine witnesses. Accordingly, PBR regrets seeking emergency relief from this Court but is left with no other recourse.

## RELEVANT BACKGROUND

5. PBR reincorporates paragraphs 1–6 of its Partial Joinder for a summary of its position as a creditor in this case and why it submits that conversion is appropriate.[5]

6. On July 18, 2025, PBR served its First Requests for Production of Documents to the Debtor, a true and accurate copy of which is attached here as **EXHIBIT A** (the "Debtor Requests"). On July 17, 2025, PBR served its First Requests for Production of Documents to Peteski, a true and accurate copy of which is attached here as **EXHIBIT B** (the "Peteski Requests," and together with the Debtor Requests, the "Requests"). Specifically, PBR served 41 requests to Debtor and 32 requests to Peteski covering a range of topics that fall within the two categories outlined above.

---

[5] *See Partial Joinder Of Professional Bull Riders, LLC In Support Of Trinity Broadcasting of Texas, Inc. And TCT Ministries, Inc.'s Emergency Motion For An Order: (i) Dismissing Debtor's Chapter 11 Case, (ii) Converting The Case To Chapter 7, Or (iii) Appointing A Chapter II Trustee* (Dkt. No. 151) (the "__Partial Joinder__").

7.      On July 18, PBR's counsel separately participated in meet-and-confer conferences with Debtor's and Peteski's counsel during which PBR articulated the rationale for its discovery. At that time, PBR's DIP Objection was on file. On those calls, counsel discussed PBR's concerns that Debtor's proposed DIP terms released estate claims for alter ego, breaches of fiduciary duty, and fraudulent transfer against Peteski, Dr. Phil, and potential others without any investigation. The parties have met and conferred, and have made good progress, but have not yet reached a formal accord on the DIP release.

8.      Since then, however, the following has occurred: (a) TBN moved to dismiss the case, convert it to chapter 7, or appoint a Chapter 11 Trustee, arguing that the case was filed in bad faith and serves no valid bankruptcy purpose; (b) PBR filed its Partial Joinder to TBN's motion, seeking conversion to chapter 7, and also arguing that the Chapter 11 case was filed in bad faith and serves no valid bankruptcy purpose, but adding that the estate is suffering ongoing and continuing losses with no possibility of rehabilitation; and (c) PBR has met and conferred with the Debtor about the sale process. During the sale process discussion, the Debtor would not agree to carve out estate claims against Dr. Phil and Peteski from the assets it will propose for sale under the Bidding Procedures Motion.[6] Instead, the Debtor said its counsel was investigating those claims and would present its findings to the Debtor's special committee (which has one member, Gary Broadbent, the Debtor's Chief Restructuring Officer ("CRO")) when appropriate. Needless to say, PBR cannot rely upon the Debtor investigating claims against its majority shareholder, board member, and DIP Lender.

9.      Put simply, the August 19 hearing is about much more than the DIP Motion. PBR is thus aiming to discover issues that this Court will confront on that date.

---

[6] PBR and the Debtor continue to confer on this issue as it relates to the Bidding Procedures Motion.

10.     **The Peteski Requests**. Peteski, the DIP Lender, is wholly owned and controlled by Dr. Phil. Peteski is the Debtor's controlling shareholder and was the sole director from August 2024 until just before this Chapter 11 Case was filed. Immediately after Peteski assumed control of the Debtor's business and for the duration of its tenure as controlling shareholder, the Debtor showed signs of severe financial turmoil. This includes multiple rounds of employee layoffs, suspending anchor programming, excessive overspending, and failing to meet contractual obligations to PBR. (*See* Partial Joinder, at ¶¶ 2–6.) Peteski and Dr. Phil cannot untangle themselves from this case and the discovery PBR seeks. They are inextricably intertwined, participated in key conduct that led to the Debtor's insolvency, and ultimately decided to file for bankruptcy. There is no doubt that Peteski possesses and controls a significant volume of key documents.

11.     As such, the Peteski Requests seek documents related to the Debtor's and/or its directors' and shareholders' decisions to file this Chapter 11 Case and the actions it took in connection with that decision, its corporate structure and directors, whether the Debtor observed corporate formalities when deciding and preparing to file, contracts and agreements with directors and shareholders (including TBN), the Debtor's remaining employees and those it terminated before filing (as well as their duties and responsibilities, and the reasons they were retained or terminated), and any assets or employees transferred to, or interactions with, Envoy—Dr. Phil's new media startup founded the day before this Chapter 11 Case was filed, which appears to be a carbon copy of the Debtor's business. (*See* Peteski Request Nos. 1, 5–7, 11–21, 24–32.)

12.     The Peteski Requests also seek documents related to the proposed DIP, including marketing, negotiating, and documenting the DIP, considering alternatives, protecting the integrity of the DIP process considering Peteski's insider status with the Debtor, searching for equity

investors, establishing the Debtor's special committee and its authority, payments made by or to Peteski and its advisors while the DIP was being negotiated, investigating claims against certain "Released Parties" identified in the DIP, among other documents. (*See* Peteski Request Nos. 2–4, 7–10, 12, 22, 23.)

13.    **The Debtor Requests**. The Debtor Requests seek information like that which PBR seeks in the Peteski Requests,[7] including all actions that Debtor undertook in deciding to and in connection with filing this Chapter 11 Case, and all individuals or entities who were consulted or involved in that decision. However, PBR also seeks information about Debtor's board meetings, minutes, votes to remove or appoint directors, what ultimately led Debtor to breach its contractual obligations to PBR, whether Debtor's ongoing litigation against PBR influenced its decision to file, who at Debtor was responsible for making key decisions, and Debtor's detailed financial information. (*See* Debtor Request Nos. 1, 2, 5–9, 11–24, 27–28, 32, 34–41.) Finally, like the Peteski Requests, PBR seeks documents from Debtor related to the DIP Financing proposed in this case. (*See* Debtor Request Nos. 1, 3–5, 8–10, 30, 31.)

14.    On July 21, 2025, the Debtor produced 251 documents and served Objections and Responses to the Debtor Requests, a true and accurate copy of which is attached here as **EXHIBIT C** (the "Debtor Responses"). That same day, Peteski served Objections and Responses to the Peteski Requests, a true and accurate copy of which is attached here as **EXHIBIT D** (the "Peteski Responses"). Both the Debtor and Peteski significantly and unreasonably narrowed the relevant timeframe for PBR's Requests to June 1, 2025 to the present, just one month before the Debtor filed the Chapter 11 Case. The Debtor and Peteski also categorically refused to produce text

---

[7] PBR is willing to coordinate with Debtor and Peteski to the extent the requests result in duplication of efforts, but it remains unclear to PBR whether Debtor, Peteski, Dr. Phil, or others will claim to possess or control the information it seeks.

messages. Finally, the Debtor and Peteski objected to every single one of the Requests, outright refusing to produce documents in response to a myriad of Requests because, in the Debtor's and Peteski's view, the Requests did not relate to the DIP Financing, or in Peteski's view, PBR did not have standing to make the Requests (even though PBR is the largest creditor in this case).

15.    PBR re-engaged with counsel for the Debtor and Peteski after filing its Joinder and upon realizing that Debtor may seek to sell estate claims against Dr. Phil and Peteski, concluding it was certain they would realize that PBR's full discovery was relevant to the many issues set for hearing on August 19.

16.    With respect to the Debtor, PBR reiterated that its discovery was relevant for various independent, equally dispositive reasons. First, it is relevant to the pending motions seeking dismissal and conversion, including the arguments therein that the bankruptcy was filed in bad faith, without corporate authority, to obtain a tactical litigation advantage, and does not serve a valid bankruptcy purpose, among other things. PBR also explained that the discovery was relevant to its DIP objection, as the parties are not in formal agreement on the DIP release language, and to investigate estate claims that Debtor might carve out of its assets for sale, including claims for alter ego, breaches of fiduciary duty, and fraudulent transfer. (*See* Email from PBR's counsel to Debtor's counsel dated August 4, 2025, attached as **EXHIBIT E**.) That evening, the Debtor produced 5 additional documents. On August 5, the Debtor produced 4 more. All documents that Debtor has produced, however, relate to the DIP Financing. Debtor has not produced discovery related to the other categories PBR seeks; namely, categories central to its Partial Joinder.

17.    With respect to Peteski, PBR also insisted that TBN's Motion to Dismiss/Convert and PBR's Partial Joinder presents several issues for discovery, in addition to discovery related to the DIP release and sale process (again, all of which is independently dispositive). (*See* Email from

PBR's counsel to Debtor's counsel dated August 5, 2025, attached as **EXHIBIT F**.) In response to the email, PBR and Peteski participated in two meet-and-confer videoconferences that same day and the next, but they did not reach agreement on any disputed issues. Specifically, Peteski's counsel said that he believes discovery should be limited to the DIP Financing and stated that Peteski will not produce any documents until a protective order is in place—an issue that counsel for other parties, not PBR and Peteski, are disputing. Withholding documents pending a protective order is a stall tactic and not appropriate. In fact, PBR pointed out that the Debtor has produced documents absent a protective order and that all parties are treating the documents with appropriate confidentiality considerations. PBR offered to do the same with respect to a Peteski production while the protective order disputes are pending. Peteski refused.

18.      PBR is willing to continue to meet and confer with both Debtor and Peteski as of the date of this filing to try and resolve or narrow the issues herein. But depositions are imminent. The first deposition of the Debtor's CRO is taking place today, August 6. The second deposition of the Debtor's proposed restructuring advisor, Triple P Securities and Triple P RTS, LLC, is set for Friday, August 8. Moreover, PBR served a subpoena to Dr. Phil to produce documents and deposition testimony (the "**<u>Dr. Phil Subpoena</u>**", Dkt. No. 149). Dr. Phil's deposition is set to take place on August 14, 2025. If Dr. Phil resists that deposition or does not appear, PBR will move to enforce the Dr. Phil Subpoena.

19.      The Debtor's and Peteski's failures to make timely and complete document productions in advance of this deposition (and potentially others to come) has prejudiced PBR and the other creditors from evaluating the pending motions (particularly to dismiss or convert) and fully investigating the claims the Debtor might seek to release as part of the DIP Motion, and/or sell as part of the Bidding Procedures Motion. Moreover, as more depositions and the August 19

hearing are imminent, PBR cannot wait for other parties to resolve the protective order before obtaining critical documents.

## ARGUMENT AND AUTHORITIES

20.     Good cause exists for the Court to compel the Debtor and Peteski to make fulsome productions in response to PBR's Requests. The issues that underscore dismissal and conversion inform PBR's discovery, which principally seeks to discover whether this Chapter 11 Case was filed in bad faith and serves no valid bankruptcy purpose. Of course, discovery into the DIP Financing is fair game. But Debtor's and Peteski's attempts to limit discovery to *just* the DIP is unwarranted and will not shed light on key issues ripe for the Court's determination.

21.     Accordingly, PBR's Requests to Peteski and Debtor can be grouped into two categories, both of which seek information that must be uncovered before and presented on August 19: (1) discovery related to the Court's determination to dismiss or convert; and (2) DIP discovery.

### A. Legal Standard

22.     Rule 37, applicable here because of Bankruptcy Rule 7037, permits "[a] party seeking discovery [to] move for an order compelling … production … [if] a party fails to produce documents … as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "A party resisting discovery is swimming against a strong upstream policy current. The policy underlying the discovery rules encourages *more* rather than less discovery, and discourages obstructionist tactics." *In re Tex. Bumper Exch., Inc.*, 333 B.R. 135, 139–40 (Bankr. W.D. Tex. 2005) (emphasis in original). Rule 7037 ensures that this policy is enforced. *Id.* at 140.

23.     This Court has "broad discretion in discovery matters." *Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-G, 2010 WL 791421, at *4 (N.D. Tex. Mar. 8, 2010) (quoting *Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 773 (5th Cir. 2007) (per curiam). Bankruptcy Rule

7026 incorporates Rule 26 of the Federal Rules of Civil Procedure, allowing wide-ranging discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the" investigation.  Fed. R. Civ. P. 26(b)(1).  In this District, relevance "is broadly construed, especially in the context of discovery requests, which should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense."  *In re Adkins Supply, Inc.*, 555 B.R. 579, 589 (Bankr. N.D. Tex. 2016) (emphasis in original).  "Information sought only fails the relevance test if it is clear that it could have no possible bearing on the claim."  *Id.*  Indeed, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable," and the party resisting discovery bears the burden of showing that the discovery sought is irrelevant or non-proportional.  *See Orchestrate HR, Inc. v. Trombetaa*, 178 F. Supp. 3d 476, 504–06 (N.D. Tex. 2016).

### B.  Category 1: Discovery Related to the Court's Determination to Dismiss or Convert

24.    As set forth in TBN's Motion to Dismiss/Convert and PBR's Partial Joinder, the Fifth Circuit considers various factors that can establish cause to dismiss or convert. One such factor looks at whether the Debtor committed improper prepetition conduct. *See In re M.A.R. Design & Constr., Inc.*, 653 B.R. 843, 865–66 (Bankr. S.D. Tex. 2023) (improper prepetition conduct of debtor's president before filing bankruptcy was indicative of bad faith and established cause to dismiss); *see also In re 1701 Commerce, LLC*, 477 B.R. 652, 658 (Bankr. N.D. Tex. 2012) (improper prepetition conduct established a bad faith filing where a debtor was created before filing the bankruptcy solely to isolate distressed property from the parent company's other assets).

25.    Both PBR and TBN contend that the Debtor and its shareholder(s) or director(s) unquestionably did so here. TBN claims the Debtor filed this bankruptcy without proper authority. PBR and TBN claim that the Debtor depleted or diverted its resources that should have been used

to pay obligations owed to creditors like PBR. (*See* Partial Joinder, at ¶ 8.) They also argue that once Dr. Phil (through Peteski) assumed majority control of the Debtor in August 2024, the Debtor's business rapidly deteriorated: it laid off a third of its workforce, failed to meet its contractual obligations to PBR, apparently engaged in excessive overspending (including to Dr. Phil's family members), and suspended its anchor program. (*Id.*) They also allege that Dr. Phil (the Debtor's controlling shareholder through Peteski) breached various fiduciary duties to the Debtor and launched a suspiciously similar media enterprise the day before the Debtor filed this Chapter 11 Case, ostensibly diverting the Debtor's assets to that enterprise. (*Id.*)

26.    PBR and TBN also argue that this case must be dismissed or converted because it serves no valid bankruptcy purpose. (*Id.* at ¶¶ 14–16.) Specifically, PBR argues that Dr. Phil is improperly using this case to obtain a tactical litigation advantage for himself in pre-petition litigation between the Debtor, Dr. Phil, and PBR. (*See id.*); *see also In re National Rifle Ass'n. of Am.*, 628 B.R. 262, 280–83 (Bankr. N.D. Tex. 2021) (finding the National Rifle Association's bankruptcy was filed in bad faith, where the filing was premised on obtaining a litigation advantage in dissolution proceedings in New York); *In re Trust*, 526 B.R. 668, 679–680 (Bankr. N.D. Tex. 2015) (finding that debtor's bankruptcy petition was filed in bad faith where debtor filed to gain an advantage in litigation). Accordingly, PBR must discover why the Debtor chose to file this case; did it do so to insulate its directors from imminent discovery in the pre-petition litigation and/or to gain a tactical advantage? If so, conversion is appropriate—but it must first be discovered.

27.    Consequently, in its Requests to Peteski and the Debtor, PBR seeks to explore Debtor's prepetition misconduct and whether the Chapter 11 Case serves no valid bankruptcy purpose. PBR seeks documents related to the Debtor's and/or its directors' decisions to file this Chapter 11 Case and actions it took in connection with that decision, its corporate structure and

directors, whether the Debtor observed corporate formalities when deciding and preparing to file, contracts or agreements with directors and shareholders (including TBN), the Debtor's remaining employees and those it terminated before filing, and any assets or employees transferred to, or interactions with, Envoy. PBR further seeks Debtor's board meetings, votes to remove or appoint directors, what led Debtor to breach its contractual obligations to PBR, whether Debtor's ongoing litigation against PBR influenced its decision to file, who at Debtor was responsible for making key decisions, and Debtor's detailed financial information. (*See* Debtor Request Nos. 1, 2, 5–9, 11–24, 27–28, 32, 34–41; *see* Peteski Request Nos. 1, 5–7, 11–21, 24–32.)

28.    Discovery into these issues—bad faith and no valid bankruptcy purpose—is central to the Court's determination on whether to dismiss or convert. The documents are also critical to upcoming depositions, particularly of Dr. Phil on August 14. This Court should compel the Debtor and Peteski to respond.

## C. Category 2: DIP Discovery

29.    PBR has objected to the Debtor's proposed DIP Financing, and the Court will decide this issue on August 19. It is unquestionably relevant and discoverable, and neither Peteski nor the Debtor has attempted to dispute that. In fact, based on the Debtor's minimal production and Peteski's statements during meet-and-confer communications, they appear willing to engage in DIP-related discovery. Nonetheless, they have not produced related documents.

30.    The Peteski and Debtor Requests seek documents related to the DIP Financing, including marketing, negotiating, and documenting the DIP, considering DIP alternatives, protecting the integrity of the DIP process considering Peteski's insider status, searching for equity investors, establishing the Debtor's special committee and its authority, payments made by or to Peteski and its advisors while the DIP was being negotiated, investigating claims or causes of

action against certain "Released Parties" identified in the DIP, among other documents. (*See* Peteski Request Nos. 2–4, 7–10, 12, 22, 23; *see also* Debtor Request Nos. 1, 3–5, 8–10, 30, 31.)

31.    These documents are relevant, not likely in dispute, but have not been produced. This Court should compel the Debtor and Peteski to do so.

## CONCLUSION AND RESERVATION OF RIGHTS

32.    To date, the Debtor has only produced minimal documents that relate to the DIP Financing only. Peteski has produced nothing, using other parties' disputes over a protective order as an excuse to resist discovery altogether. This has impeded PBR's ability to investigate the issues that are being litigated in real time, at a rapid pace, and which will be explored during upcoming witness depositions and presented to the Court on August 19.  An order compelling production is thus necessary and warranted. Moreover, because the Debtor has refused to produce any appreciable number of documents, and Peteski has refused to produce any documents at all, the Debtor and Peteski have put all of PBR's Requests in dispute.  PBR is thus submitting the entirety of its Requests as exhibits to this motion, in accordance with Local Bankruptcy Rule 7026-1(a)(1). *See* L.B.R. 7026-1 ("A motion that relates to a discovery proceeding may only contain the portions of the discovery materials in dispute.").

33.    For the reasons expressed above and to the extent set forth above, PBR respectfully requests that the Court enter an order, substantially in the form attached here as **EXHIBIT G**, (a) compelling the Debtor and Peteski to produce documents in response to all PBR's Requests; and (b) granting such other and further relief as the Court may deem just and proper.

34.    PBR reserves all rights and remedies, waiving none.

Dated: August 6, 2025                    Respectfully submitted,

*/s/ Jason M. Rudd*
Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
         scott.lawrence@wickphillips.com

Jennifer R. Hoover (*pro hac vice* admitted)
Andrew D. Kinsey (*pro hac vice to be filed*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com
         akinsey@beneschlaw.com

Abbey Walsh (*pro hac vice* admitted)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1155 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (646) 777-0053
Email: abbey.walsh@beneschlaw.com

Nicholas J. Secco (*pro hac vice* admitted)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: nsecco@beneschlaw.com

Alyssa A. Moscarino (*pro hac vice* admitted)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500
Email: amoscarino@beneschlaw.com

**COUNSEL TO PROFESSIONAL BULL RIDERS, LLC**

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

The undersigned counsel to PBR hereby certifies that PBR has attempted in good faith to confer with Debtor's counsel and Peteski's counsel in an effort to resolve the dispute without court action.

*/s/ Jason M. Rudd*
Jason M. Rudd

## **CERTIFICATE OF SERVICE**

I certify that on August 6, 2025, a true and correct copy of the foregoing document was served by the Court's ECF noticing system on all parties that consent to such service via electronic filing.

*/s/ Jason M. Rudd*
Jason M. Rudd

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| MERIT STREET MEDIA, INC.,[1] | Case No. 25-80156 (SWE) |
| Debtor. | |

## CREDITOR PROFESSIONAL BULL RIDERS, LLC'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO MERIT STREET MEDIA, INC.

To:     Merit Street Media, Inc., c/o Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, Dallas, Texas 75201

Under Federal Rules of Civil Procedure 26 and 34, made applicable by Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Creditor Professional Bull Riders, LLC ("PBR"), by its undersigned counsel, respectfully submits this request for the production of documents (the "Document Requests") to the above-captioned debtor and debtor-in-possession, Merit Street Media, Inc. ("MSM"). PBR requests that the documents and electronic information responsive to the Document Requests identified in the attached **Exhibit A** be produced to Nicholas Secco, Alyssa Moscarino, and Andrew Kinsey, Benesch, Friedlander, Coplan and Aronoff LLP, 71 S. Wacker Drive, Suite 1600, Chicago, IL 60606, counsel for PBR, commencing immediately, continuing on a rolling basis and to be completed by no later than close of business on July 21, 2025 (Central Time).

Please take further notice that PBR reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and any applicable law

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

regarding the subject matter of these Document Requests to amend, supplement or modify Exhibit A attached here or to serve additional discovery requests.

To the extent that any discovery requests contained herein relate to the alter ego claims asserted by PBR, those requests are included in an abundance of caution in the event that it may be determined that those claims belong to the Debtor.  However, PBR does not concede that such claims do belong to the Debtor and reserves all of its rights with respect to the alter ego claims against Dr. Phil and any other claims it may have against the Released Parties, whether such claims have been asserted already or may be asserted in the future, to argue that those claims are particular to PBR and do not belong to the Debtor.

Dated: July 18, 2025                    Respectfully submitted,

                                        /s/ Jason M. Rudd
                                        Jason M. Rudd, Tex. Bar No. 24028786
                                        Scott D. Lawrence, Tex. Bar No. 24087896
                                        WICK PHILLIPS GOULD & MARTIN, LLP
                                        3131 McKinney Avenue, Suite 500
                                        Dallas, Texas 75204
                                        Telephone: (214) 692-6200
                                        Email: jason.rudd@wickphillips.com
                                               scott.lawrence@wickphillips.com

                                        Jennifer R. Hoover (*pro hac vice to be filed*)
                                        Andrew D. Kinsey (*pro hac vice to be filed*)
                                        BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
                                        1313 N. Market Street, Suite 1201
                                        Wilmington, DE 19801
                                        Telephone: (302) 442-7010
                                        Email: jhoover@beneschlaw.com
                                               akinsey@beneschlaw.com

                                        Abbey Walsh (*pro hac vice to be filed*)
                                        BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
                                        1155 Avenue of the Americas, 26th Floor
                                        New York, New York 10036
                                        Telephone: (646) 777-0053
                                        Email: abbey.walsh@beneschlaw.com

                                        Nicholas J. Secco (*pro hac vice pending*)
                                        BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
                                        71 South Wacker Drive, Suite 1600
                                        Chicago, IL 60606
                                        Telephone: (312) 212-4949
                                        Email: nsecco@beneschlaw.com

                                        Alyssa A. Moscarino (*pro hac vice pending*)
                                        BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
                                        127 Public Square, Suite 4900
                                        Cleveland, OH 44114
                                        Telephone: (216) 363-4500
                                        Email: amoscarino@beneschlaw.com

                                        **COUNSEL TO PROFESSIONAL BULL RIDERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2025, I caused a copy of the foregoing *Requests for Production* to be served on MSM's counsel via electronic mail to the email addresses below.

**SIDLEY AUSTIN LLP**
Thomas R. Califano, tom.califano@sidley.com
Jeri Leigh Miller, jeri.miller@sidley.com
Parker G. Embry, parker.embry@sidley.com
Chelsea McManus, cmcmanus@sidley.com
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201

|  |  |
|---|---|
| _____ | Hand Delivery |
| _____ | Regular Mail |
| _____ | Facsimile |
| __X__ | E-mail |
| _____ | CM/ECF |

**SIDLEY AUSTIN LLP**
Steven E. Hessler, shessler@sidley.com
Patrick Venter, pventer@sidley.com
Weiru Fang, weiru.fang@sidley.com
787 Seventh Avenue
New York, New York 10019

|  |  |
|---|---|
| _____ | Hand Delivery |
| _____ | Regular Mail |
| _____ | Facsimile |
| __X__ | E-mail |
| _____ | CM/ECF |

**COUNSEL FOR MERIT STREET MEDIA, INC.**

*/s/ Jason M. Rudd*
Jason M. Rudd

## EXHIBIT A

## INSTRUCTIONS

The following instructions apply to the requests for production that follow:

1.      MSM must respond in writing to each separate request for documents set forth below.

2.      All documents produced in response to these requests are to be produced in the form, order, and manner in which they are maintained in MSM's files or shall be organized and labeled to correspond with these requests.

3.      For any documents requested that were at one time in MSM's possession, custody or control, but no longer are in MSM's possession, custody or control, identify the document, state the date upon and the circumstances under which it left MSM's possession, custody or control, identify all persons having knowledge of the circumstances under which it left MSM's possession, custody or control, identify its last known custodian, and identify all persons having knowledge of the contents.

4.      For any documents requested that were at one time in MSM's possession, custody or control, but that MSM believes have ceased to exist or have been lost or destroyed, identify the document, state the date upon and the circumstances under which it ceased to exist or was lost or destroyed, identify all persons having knowledge of the circumstances under which it ceased to exist or was lost or destroyed, identify its last known custodian, and identify all persons having knowledge of the contents.

5.      If any documents identified in response to these requests are in the possession of a third party, identify the third party and the location where the documents are maintained by the third party.

6.      Any document that bears any marks, including by way of illustration only and without limitation, initials, stamped indicia, comments or notations of any character, which are not a part of the original text or any reproduction, is to be considered a separate document.

7.      If MSM withholds any document requested herein as privileged, confidential, or otherwise protected from disclosure, MSM must provide a privilege log containing the following information:

 a.      the date of the document;

 b.      the author(s) of the document;

 c.      the addressee(s) and recipient(s) of the document;

 d.      the document type;

 e.      a brief description of the nature and subject matter of the document; and,

 f.      the reason(s) for withholding the document.

8.      If MSM withholds any document requested herein on the grounds that production is prohibited by a protective order or confidentiality agreement, identify such order or agreement, and produce a copy of such order or agreement.

9.      If MSM objects to a portion of a request or otherwise cannot comply in full, MSM should produce all other documents called for by that request, describe the respects in which MSM objects to the request or otherwise cannot comply with it in full, and explain the basis for MSM's objection or failure to comply with the request in full.

10.     All requests shall be interpreted to bring within their scope the broadest range of discovery permissible under the applicable Bankruptcy Rules, Federal Rules, and Local Rules. These requests for production are continuing in nature, so PBR requests that supplemental responses and production be submitted seasonably if further or different information is obtained

with respect to any request.

11.    All uses of the conjunctive include the disjunctive and vice versa to make the request more inclusive rather than exclusive, such that "and" and "or" shall be interpreted to mean "and/or" and shall not be interpreted to exclude any document from the scope of the request.

12.    All singular nouns include the plural and vice versa to make the request more inclusive rather than exclusive.

13.    All uses of the word "all" include "any" and vice versa, to make the request more inclusive.

14.    All uses of the word "each" include "every" and vice versa, to make the request more inclusive.

15.    The use of a verb in any tense encompasses the use of the verb in all tenses.

16.    A document or communication "concerning," "that relates to," "relating to," "related to," "relating thereto," "referring to," or "reflecting" a given subject means all documents and things or communications that directly or indirectly constitute, contain, embody, concern, evidence, show, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, involve, mention, discuss, record, support, negate, or are in my way pertinent to that subject.

17.    MSM's document production must identify which files and documents are being produced. Files and documents in the custody of an individual must be identified by the name of the individual having custody. The term identify:

    a.    when used in reference to a natural person, means to state the person's full name, present or last known home address and telephone number, present or last known business address and telephone number, occupation, job title, job description, any present or former relationship to any of the parties to this action and the years of such relationship;

b.      when used in reference to a person other than a natural person, means to state the person's full name, present or last address or principal place of business and form of organization (e.g., partnership, corporation);

c.      when used in reference to a document, means to state the title, date, author, author's affiliation, addressee, addressee's affiliation, general subject matter, type of document (i.e., letter, memorandum), present location and the identity of each person having possession, custody or control of the document or any copy of the document; and

d.      when used in reference to a communication, means to state whether it was written or oral, the general subject matter of the communication, the place and date of the communication, the identity of the persons present during the communication, the persons engaged in, participating in, or involved in any way in the communication and any documents referring or relating to the communication.

18.     A request means a request for all paper and electronically stored information ("ESI") responsive to the request.  As to paper documents, such a request is a request for legible copies and an opportunity, if necessary, to inspect the originals of those documents as they are kept in the usual course of business.  All ESI should be produced as full text searchable .PDF images of the native documents, or other comparable searchable format, and shall include all metadata associated with ESI.

19.     Along with each document responsive to the requests below, produce any document that is or was appended to or enclosed with it, and if any other such document no longer exists, identify the document that was appended or enclosed.

20.     A request for files containing documents includes all documents that are contained in those files or that have been removed from those files for any reason other than that they are being withheld from production on the ground of privilege or work product.

21.     No document may be withheld from MSM's production solely on the ground that it is confidential since a protective order is in place or will be in place.  Notwithstanding this instruction, if MSM withholds a document from production based solely on confidentiality, MSM must include it in its privilege log.

22.     A request for all documents of any particular type means:  1) all such documents regardless of whether they are kept in one or more locations, 2) all such documents whether they are in paper or electronic form, and 3) all such documents including all versions of such documents.

23.     If, in responding to these discovery requests, MSM encounters any purported ambiguities, please so state, set forth the matter deemed ambiguous, and the construction used in responding.

## DEFINITIONS

The following definitions apply to the requests for production that follow:

1.     The term "Adversary Complaint" means the Adversary Complaint for Declaratory and Monetary Relief filed on July 2, 2025 [D.I. 3].

2.     The term "Arbitration" means the now-stayed arbitration between PBR and MSM, JAMS Case No. 5310001058.

3.     The term "Broadbent Declaration" means the Declaration of Gary Broadbent, Chief Restructuring Officer of the Debt, in Support of the Debtor's Chapter 11 Proceeding [D.I. 14].

4.     The term "Case" shall mean the above-referenced chapter 11 bankruptcy proceeding pending in the United States Bankruptcy Court for the Northern District of Texas.

5.     The term "communication" means any communication, however made, including, but not limited to, correspondence, contact, discussion, or any other kind of oral or written exchange between two or more persons, including, but not limited to, all telephone conversations, face-to-face conversations, meetings, visits, conferences, e-mail or other electronic messages, texts, facsimiles, telexes, internal and external discussions, lectures, presentations, letters, notes, directives, memoranda, circulars, bulletins, telegrams, voicemail messages, and documents, however the same are transcribed, sent, or given.

6. The term "CrossSeed Note" refers to the $25m convertible promissory note referenced on page 9 and paragraphs 23-24 of the Broadbent Declaration and paragraph 8 of the Adversary Complaint.

7. The term "Demand" means the Second Amended Statement of Claim PBR filed in the Arbitration, all attachments thereto, all previous versions, and all amendments.

8. The term "DIP Facility" means the $21.4 million of secured debtor-in-possession financing proposed by way of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition Financing, and (B) The Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling A Final Hearing; and (V) Granting Related Relief [D.I. 11].

9. The terms "document" or "documents" are used in the broadest possible sense and include, without limitation, all originals, copies, drafts, and recordings of any written, typewritten, handwritten, printed, graphic, electronic, digital, or otherwise recorded matter, including forms of information translatable or convertible into a reasonably usable form. "Document" or "documents" include, without limitation, the following items: electronic mail (e-mails), including, but not limited to, emails on the personal devices and from the personal email addresses of a select subset of MSM custodians to be negotiated between the parties; text messages on the personal devices of a select subset of MSM custodians to be negotiated between the parties, including, but not limited to, text messages from the personal devices between and among Dr. Phil and Joel Cheatwood during the Relevant Time Period; Microsoft PowerPoint slides and/or presentations; Microsoft Excel spreadsheets; Microsoft Word documents or other word processing program; licenses; agreements; communications, including intracompany communications; correspondence; letters; memoranda; records; books; summaries or handwritten notes or other records of personal

conversations or interviews; diaries; notebooks; appointment books or electronic entries; manuscripts, either in final or draft form, whether complete or incomplete and whether published or not; grant or project proposals; forecasts; statistical statements; any and all forms of data; meeting abstracts; meeting agendas; meeting minutes; slides; graphs; charts; diagrams; maps; blueprints; tables; indices; pictures; audio or visual recordings; tapes; magnetic discs; printed cards; programming instructions; assembly diagrams; schematic diagrams; manuals; films; assay results and reports; charges; accounts; invoices; analytical records; reports, records or summaries of meetings or conferences; reports, records or summaries of consultants; reports, records or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; stenographic, handwritten or any other notes; projectable images, including transparent overheads or slides; any other document or writing or form of information convertible into a document, including information contained within or accessible by a computer or computer accessory and the underlying documents supporting computer entries.

10.     The term "Envoy" means Envoy Media Co. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

11.     The term "Jackson Walker" means Jackson Walker LLP and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

12.     The term "Joint Venture Agreement" means the January 10, 2023 agreement, pursuant to a Binding Letter of Intent, entered into between MSM and Trinity Broadcasting of

Texas, Inc. dba Trinity Broadcasting Network, through which Dr. Phil McGraw's production

company, Peteski Productions, Inc., and Trinity Broadcasting of Texas, Inc. dba Trinity

Broadcasting Network would launch a new television network in 2024.

13.     The term "Lansio Declaration" means the Declaration of Lisa K. Lansio in Support

of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A)

Postpetition Financing, and (B) the Use of Cash Collateral; (II) Granting Liens and Providing

Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV)

Scheduling a Final Hearing; and (V) Granting Related Relief [D.I. 12].

14.     The term "MRA" means, collectively, the Media Rights Agreement that PBR and

MSM entered into on or about May 3, 2024, with an effective date of May 20, 2024, a true and

accurate copy of which is attached to PBR's Demand as Exhibit 1, as well as all amendments.

15.     The term "MSM" means debtor Merit Street Media, Inc. and all of its parents,

subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers,

directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or

purporting to act, on its behalf.

16.     The term "PBR" means creditor Professional Bull Riders, LLC and all of its

parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former

officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons

acting, or purporting to act, on its behalf.

17.     The term "person" means any natural person, firm, sole proprietorship, association,

partnership, corporation, limited liability company, governmental agency, political subdivision,

governmental body, quasi-public entity, joint venture, trust, estate, or any other form of legal

entity, as well as any division, subdivision, department, bureau, office, or unit.

18.     The term "Peteski" means Peteski Productions, Inc. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

19.     The term "Petition Date" shall mean July 2, 2025.

20.     The term "Dr. Phil" means Phillip C. McGraw, PhD, an individual citizen of Texas residing in Dallas.

21.     The term "Relevant Time Period," for purposes of these requests for production only and unless otherwise provided, means July 2, 2023 to the present.

22.     The term "MSM Restructure" means the transaction that took place in or around August 2024 by which Peteski and TBN changed their respective ownership interests in MSM.

23.     The term "Sidley" means Sidley Austin LLP and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

24.     The term "TBN" means Trinity Broadcasting of Texas, Inc. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

## **REQUESTS FOR PRODUCTION**

**REQUEST NO. 1.**   All documents and communications relating to MSM's decision to file this Case, including, but not limited to, any documents or communications relating to or reflecting any meetings of MSM's board of directors, board of managers, or other governing body during which MSM's board of directors, board of managers, or other governing body approved the filing of this case.

**REQUEST NO. 2.**   All documents and communications between MSM on one hand and Peteski, Dr. Phil, TBN, or Envoy on the other hand relating to the filing of this Case.

**REQUEST NO. 3.**   All documents and communications regarding the marketing, negotiation or documentation of the DIP Facility, including, but not limited to, any alternatives to the DIP Facility including efforts described in paragraph 11 of the Lansio Declaration.

**REQUEST NO. 4.**   All documents and communications regarding the "safeguards aimed at protecting the integrity of its process as it negotiated with Peteski" as described in paragraph 12 of the Lansio Declaration.

**REQUEST NO. 5.**   All documents and communications regarding the search for potential equity investors, investors, or third-party financing and the evaluation of "various strategic options" as described in paragraph 31 and 48-49 of the Broadbent Declaration and paragraph 8 of the Lansio Declaration.

**REQUEST NO. 6.**   All documents and communications regarding any relationship—past or present—between Dr. Phil or Peteski and any past or present director of MSM, including, but not limited to, Gary Broadbent, Matt Crouch, or Samuel Smadja.

**REQUEST NO. 7.**   All documents and communications reflecting the identity of the directors of MSM, Peteski, and TBN during the Relevant Time Period, including documents and communications to explain any changes in the directors of each such entity during the Relevant Time Period, if any, including, but not limited to, the appointment of Gary Broadbent to the board of directors of MSM.

**REQUEST NO. 8.**   All documents and communications regarding the establishment of the special committee as described in paragraph 12 of the Lansio Declaration and paragraph 14 of the Broadbent Declaration including, but not limited to, all documents or communications describing the authority of the special committee.

**REQUEST NO. 9.**   The engagement letter between MSM and the following: Sidley, Triple P Securities, LLC, Triple P RTS, LLC, and Jackson Walker.

**REQUEST NO. 10.**   All documents and communications reflecting or relating to payment of Jackson Walker's attorney's fees and expenses on MSM's behalf, including, but not limited to, Jackson Walker's invoices relating to the Arbitration while the DIP Facility was being negotiated.

**REQUEST NO. 11.** All documents and communications regarding any conflict waivers or potential conflicts between and among MSM, Dr. Phil, or Peteski regarding this case or the DIP Facility.

**REQUEST NO. 12.** All communications with Sidley on the one hand and Peteski, Dr. Phil, TBN, or Envoy on the other hand.

**REQUEST NO. 13.** Organizational charts or other documents sufficient to show MSM's overall corporate organization and internal organization during the Relevant Time Period, including, but not limited to, how the structure of the corporate organization and internal organization has changed, if at all, during the Relevant Time Period.

**REQUEST NO. 14.** All documents or communications relating to the corporate records and other legal documents for MSM, including, but not limited to, documents relating to formation, ownership, management structure, or corporate governance, including, but not limited to, minutes from meetings of the board of directors, board of managers, or other governing body.

**REQUEST NO. 15.** All financial statements, balance sheets, or operating statements of MSM in MSM's possession, custody, or control, whether draft, audited, interim, or otherwise, including, but not limited to, any statements of cash flow, records showing MSM's capitalization, and documents showing MSM's solvency or insolvency.

**REQUEST NO. 16.** All documents and communications in MSM's possession, custody, or control regarding any capital contributions to MSM or planned capital contributions to MSM including, but not limited to, capital contributions—planned or actual—by Peteski, TBN, Dr. Phil, or any other entity.

**REQUEST NO. 17.** All single or joint federal, state, or local tax returns, IRS Schedule K-1s, IRS Form 1099s, or other evidence of earnings or income in MSM's possession, custody, or control relating to or concerning MSM.

**REQUEST NO. 18.** All documents and communications referring, reflecting, or relating to any analyses, financial projections, or budgets concerning MSM's financial condition prior to and following the Petition Date.

**REQUEST NO. 19.** All documents and communications regarding any and all payments or transfers of assets MSM made to Peteski, Dr. Phil, any member of the McGraw family, any entity affiliated in any way with the McGraw family, TBN, any entity affiliated in any way with TBN, or Envoy.

**REQUEST NO. 20.** All documents or communications relating to all agreements, contracts, or other transactions or arrangements between or among MSM, Peteski, TBN, Dr. Phil, Envoy, or any other owners, shareholders, members, employees, or affiliates of MSM, including, but not limited to, the Joint Venture Agreement, any restrictive covenants between MSM, on the one hand, and any individual, on the other hand, including, but not limited to, any non-compete, non-solicitation, or non-disclosure agreements between Dr. Phil and MSM, or between any other individual and MSM.

**REQUEST NO. 21.** All documents and communications relating to the MSM Restructure, including, but not limited to, documents and communications regarding the Stock Confirmation agreement executed by Peteski, TBN, and MSM.

**REQUEST NO. 22.** All documents and communications relating to Dr. Phil or Peteski exercising control over MSM regarding any of the following corporate decisions: whether to make capital expenditures or contributions, whether to pay money owed under any contract, whether to transfer any MSM assets to any other individual or entity, including, but not limited to, Envoy, the engagement of a restructuring officer, and filing for bankruptcy.

**REQUEST NO. 23.** All documents and communications relating to TBN exercising control over MSM regarding any of the following corporate decisions: whether to make capital expenditures or contributions, whether to pay money owed under any contract, whether to transfer any MSM assets to any other individual or entity, including, but not limited to, Envoy, the engagement of a restructuring officer, and filing for bankruptcy.

**REQUEST NO. 24.** All documents and communications related to MSM's decisions to lay off any employees or cease MSM programming, including *Dr. Phil Primetime*, including why those decisions were made and whether they were influenced by Peteski, Dr. Phil, TBN, Envoy, or others.

**REQUEST NO. 25.** All documents and communications related to MSM's attempts to renegotiate or failure to make payments under any contract or demand, including why MSM needed to renegotiate the contract and why MSM was unable to or chose not to make payments thereunder.

**REQUEST NO. 26.** All documents that MSM produced in the Arbitration.

**REQUEST NO. 27.** All documents and communications concerning MSM's consideration of the following in connection with its decision to file this case: its relationship with PBR; the MRA or any other contract; resources expended in the Arbitration (including attorneys' fees); a potential award against MSM in the Arbitration; and/or MSM's ability to pay an award in the Arbitration as described in paragraphs 20-21, 29, 31, and 44-45 of the Broadbent Declaration and paragraph 8 of the Lansio Declaration.

**REQUEST NO. 28.** All documents and communications related to MSM seeking relief in connection with making payments under any contract, including requests for financial assistance from Dr. Phil, Peteski, TBN, Envoy, or other individuals or entities.

**REQUEST NO. 29.** All documents and communications related to MSM's decision to reincorporate in Texas in February 2025.

**REQUEST NO. 30.** All documents related to any investigation of any claims or causes of action that the Debtor may have against the Released Parties (as such term is defined in the DIP Financing Motion [D.I. 11]).

**REQUEST NO. 31.** All documents and communications related to the Peteski Convertible Notes and Peteski Bridge Loan as described on page 9 of the Broadbent Declaration.

**REQUEST NO. 32.**  Documents sufficient to show the identity of each of the Debtor's remaining employees, directors, and officers, including each person's job responsibilities and compensation.

**REQUEST NO. 33.**  All documents and communications related to why MSM chose to retain the remaining employees, including whether MSM received input for those decisions from Dr. Phil, Peteski, TBN, Envoy, or other individuals or entities.

**REQUEST NO. 34.**  All documents and communications regarding any votes by stockholders to remove or appoint directors to MSM's board of directors, including any notices provided by MSM regarding changes in the composition of MSM's board of directors.

**REQUEST NO. 35.**  All documents and communications regarding the CrossSeed Note, including, but not limited to, the document referenced by TBN's counsel on page 83 of the first day hearing transcript where Dr. Phil allegedly wrote "simple and as much outside any SEC jurisdiction as possible so as not to encumber any future fundraising which might occur inside a six-month window."

**REQUEST NO. 36.**  All documents and communications referenced by TBN's counsel on page 67 of the first day hearing transcript, including, but not limited to, the emails where Dr. Phil referenced his "eleventh-hour poker strategy" and "gangster move" to take over MSM.

**REQUEST NO. 37.**  All documents and communications regarding agreements referenced in the Adversary Complaint, including, but not limited to, the agreements that TBN allegedly required MSM to enter into as referenced in paragraphs 32-35 and the "December 2024 Agreement" referenced in paragraph 56 of the Adversary Complaint.

**REQUEST NO. 38.**  All notices of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**REQUEST NO. 39.**  All documents distributed in advance of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**REQUEST NO. 40.**  All documents and communications regarding proposals, resolutions, or other actions taken by the MSM board of directors or any committee or subcommittee thereof, including, but not limited to, any actions taken by written consent.

**REQUEST NO. 41.**  All documents and communications regarding Envoy Media Co., including but not limited to documents and communications reflecting any current or former employees of MSM who are now affiliated in any capacity with Envoy Media Co., documents and communications reflecting any assets that MSM transferred to Envoy Media Co., and any other documents or communications referring in any way to Envoy Media Co.

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>MERIT STREET MEDIA, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-80156 (SWE) |

**CREDITOR PROFESSIONAL BULL RIDERS, LLC'S FIRST REQUESTS FOR
PRODUCTION OF DOCUMENTS TO PETESKI PRODUCTIONS, INC.**

To:     Peteski Productions, Inc., c/o Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010.

Under Federal Rules of Civil Procedure 26 and 34, made applicable by Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Creditor Professional Bull Riders, LLC ("PBR"), by its undersigned counsel, respectfully submits this request for the production of documents (the "Document Requests") to Peteski Productions, Inc. ("Peteski"). PBR requests that the documents and electronic information responsive to the Document Requests identified in the attached **Exhibit A** be produced to Nicholas Secco, Alyssa Moscarino, and Andrew Kinsey, Benesch, Friedlander, Coplan and Aronoff LLP, 71 S. Wacker Drive, Suite 1600, Chicago, IL 60606, counsel for PBR, commencing immediately, continuing on a rolling basis and to be completed by no later than close of business on July 21, 2025 (Central Time).

Please take further notice that PBR reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and any applicable law

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

regarding the subject matter of these Document Requests to amend, supplement or modify Exhibit A attached here or to serve additional discovery requests.

To the extent that any discovery requests contained herein relate to the alter ego claims asserted by PBR, those requests are included in an abundance of caution in the event that it may be determined that those claims belong to the Debtor.  However, PBR does not concede that such claims do belong to the Debtor and reserves all of its rights with respect to the alter ego claims against Dr. Phil and any other claims it may have against the Released Parties, whether such claims have been asserted already or may be asserted in the future, to argue that those claims are particular to PBR and do not belong to the Debtor.

Dated: July 17, 2025

Respectfully submitted,

/s/ Jason M. Rudd

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
      scott.lawrence@wickphillips.com

Jennifer R. Hoover (*pro hac vice to be filed*)
Andrew D. Kinsey (*pro hac vice to be filed*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com
      akinsey@beneschlaw.com

Abbey Walsh (*pro hac vice to be filed*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1155 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (646) 777-0053
Email: abbey.walsh@beneschlaw.com

Nicholas J. Secco (*pro hac vice pending*)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
Email: nsecco@beneschlaw.com

Alyssa A. Moscarino (*pro hac vice pending*)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4500
Email: amoscarino@beneschlaw.com

**COUNSEL TO PROFESSIONAL BULL RIDERS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2025, I caused a copy of the foregoing *Requests for Production* to be served on Peteski's counsel via electronic mail to the email addresses below.

| | | |
|---|---|---|
| **JACKSON WALKER LLP** | _____ | Hand Delivery |
| Charles L. Babcock, cbabcock@jw.com | _____ | Regular Mail |
| Bruce J. Ruzinsky, bruzinsky@jw.com | | Facsimile |
| Matthew D. Cavenaugh, mcavenaugh@jw.com | X | E-mail |
| 1401 McKinney Street, Suite 1900 | _____ | CM/ECF |
| Houston, TX 77010 | | |
| | | |
| **JACKSON WALKER LLP** | | |
| Carl C. Butzer, cbutzer@jw.com | _____ | Hand Delivery |
| Vienna F. Anaya, vanaya@jw.com | _____ | Regular Mail |
| William T. Farmer, wfarmer@jw.com | _____ | Facsimile |
| 2323 Ross Avenue, Suite 600 | X | E-mail |
| Dallas, TX 75201 | _____ | CM/ECF |

**COUNSEL FOR PETESKI PRODUCTIONS, INC.**

*/s/ Jason M. Rudd*
Jason M. Rudd

**EXHIBIT A**

**INSTRUCTIONS**

The following instructions apply to the requests for production that follow:

1.      Peteski must respond in writing to each separate request for documents set forth below.

2.      All documents produced in response to these requests are to be produced in the form, order, and manner in which they are maintained in Peteski's files or shall be organized and labeled to correspond with these requests.

3.      For any documents requested that were at one time in Peteski's possession, custody or control, but no longer are in Peteski's possession, custody or control, identify the document, state the date upon and the circumstances under which it left Peteski's possession, custody or control, identify all persons having knowledge of the circumstances under which it left Peteski's possession, custody or control, identify its last known custodian, and identify all persons having knowledge of the contents.

4.      For any documents requested that were at one time in Peteski's possession, custody or control, but that Peteski believes have ceased to exist or have been lost or destroyed, identify the document, state the date upon and the circumstances under which it ceased to exist or was lost or destroyed, identify all persons having knowledge of the circumstances under which it ceased to exist or was lost or destroyed, identify its last known custodian, and identify all persons having knowledge of the contents.

5.      If any documents identified in response to these requests are in the possession of a third party, identify the third party and the location where the documents are maintained by the third party.

5

6.      Any document that bears any marks, including by way of illustration only and without limitation, initials, stamped indicia, comments or notations of any character, which are not a part of the original text or any reproduction, is to be considered a separate document.

7.      If Peteski withholds any document requested herein as privileged, confidential, or otherwise protected from disclosure, Peteski must provide a privilege log containing the following information:

a.      the date of the document;

b.      the author(s) of the document;

c.      the addressee(s) and recipient(s) of the document;

d.      the document type;

e.      a brief description of the nature and subject matter of the document; and,

f.      the reason(s) for withholding the document.

8.      If Peteski withholds any document requested herein on the grounds that production is prohibited by a protective order or confidentiality agreement, identify such order or agreement, and produce a copy of such order or agreement.

9.      If Peteski objects to a portion of a request or otherwise cannot comply in full, Peteski should produce all other documents called for by that request, describe the respects in which Peteski objects to the request or otherwise cannot comply with it in full, and explain the basis for Peteski's objection or failure to comply with the request in full.

10.      All requests shall be interpreted to bring within their scope the broadest range of discovery permissible under the applicable Bankruptcy Rules, Federal Rules, and Local Rules. These requests for production are continuing in nature, so PBR requests that supplemental responses and production be submitted seasonably if further or different information is obtained

with respect to any request.

11.    All uses of the conjunctive include the disjunctive and vice versa to make the request more inclusive rather than exclusive, such that "and" and "or" shall be interpreted to mean "and/or" and shall not be interpreted to exclude any document from the scope of the request.

12.    All singular nouns include the plural and vice versa to make the request more inclusive rather than exclusive.

13.    All uses of the word "all" include "any" and vice versa, to make the request more inclusive.

14.    All uses of the word "each" include "every" and vice versa, to make the request more inclusive.

15.    The use of a verb in any tense encompasses the use of the verb in all tenses.

16.    A document or communication "concerning," "that relates to," "relating to," "related to," "relating thereto," "referring to," or "reflecting" a given subject means all documents and things or communications that directly or indirectly constitute, contain, embody, concern, evidence, show, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, involve, mention, discuss, record, support, negate, or are in my way pertinent to that subject.

17.    Peteski's document production must identify which files and documents are being produced. Files and documents in the custody of an individual must be identified by the name of the individual having custody. The term identify:

   a.    when used in reference to a natural person, means to state the person's full name, present or last known home address and telephone number, present or last known business address and telephone number, occupation, job title, job description, any present or former relationship to any of the parties to this action and the years of such relationship;

b.   when used in reference to a person other than a natural person, means to state the person's full name, present or last address or principal place of business and form of organization (e.g., partnership, corporation);

c.   when used in reference to a document, means to state the title, date, author, author's affiliation, addressee, addressee's affiliation, general subject matter, type of document (i.e., letter, memorandum), present location and the identity of each person having possession, custody or control of the document or any copy of the document; and

d.   when used in reference to a communication, means to state whether it was written or oral, the general subject matter of the communication, the place and date of the communication, the identity of the persons present during the communication, the persons engaged in, participating in, or involved in any way in the communication and any documents referring or relating to the communication.

18.   A request means a request for all paper and electronically stored information ("ESI") responsive to the request.  As to paper documents, such a request is a request for legible copies and an opportunity, if necessary, to inspect the originals of those documents as they are kept in the usual course of business.  All ESI should be produced as full text searchable .PDF images of the native documents, or other comparable searchable format, and shall include all metadata associated with ESI.

19.   Along with each document responsive to the requests below, produce any document that is or was appended to or enclosed with it, and if any other such document no longer exists, identify the document that was appended or enclosed.

20.   A request for files containing documents includes all documents that are contained in those files or that have been removed from those files for any reason other than that they are being withheld from production on the ground of privilege or work product.

21.   No document may be withheld from Peteski's production solely on the ground that it is confidential since a protective order is in place or will be in place.  Notwithstanding this instruction, if Peteski withholds a document from production based solely on confidentiality, Peteski must include it in its privilege log.

22.    A request for all documents of any particular type means:  1) all such documents regardless of whether they are kept in one or more locations, 2) all such documents whether they are in paper or electronic form, and 3) all such documents including all versions of such documents.

23.    If, in responding to these discovery requests, Peteski encounters any purported ambiguities, please so state, set forth the matter deemed ambiguous, and the construction used in responding.

## <u>DEFINITIONS</u>

The following definitions apply to the requests for production that follow:

1.    The term "Adversary Complaint" means the Adversary Complaint for Declaratory and Monetary Relief filed on July 2, 2025 [D.I. 3].

2.    The term "Arbitration" means the now-stayed arbitration between PBR and Merit Street Media, Inc. ("MSM"), JAMS Case No. 5310001058.

3.    The term "Broadbent Declaration" means the Declaration of Gary Broadbent, Chief Restructuring Officer of the Debt, in Support of the Debtor's Chapter 11 Proceeding [D.I. 14].

4.    The term "Case" shall mean the above-referenced chapter 11 bankruptcy proceeding pending in the United States Bankruptcy Court for the Northern District of Texas.

5.    The term "communication" means any communication, however made, including, but not limited to, correspondence, contact, discussion, or any other kind of oral or written exchange between two or more persons, including, but not limited to, all telephone conversations, face-to-face conversations, meetings, visits, conferences, e-mail or other electronic messages, texts, facsimiles, telexes, internal and external discussions, lectures, presentations, letters, notes, directives, memoranda, circulars, bulletins, telegrams, voicemail messages, and documents, however the same are transcribed, sent, or given.

9

6.      The term "CrossSeed Note" refers to the $25m convertible promissory note referenced on page 9 and paragraphs 23-24 of the Broadbent Declaration and paragraph 8 of the Adversary Complaint.

7.      The term "Demand" means the Second Amended Statement of Claim PBR filed in the Arbitration, all attachments thereto, all previous versions, and all amendments.

8.      The term "DIP Facility" means the $21.4 million of secured debtor-in-possession financing proposed by way of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition Financing, and (B) The Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling A Final Hearing; and (V) Granting Related Relief [D.I. 11].

9.      The terms "document" or "documents" are used in the broadest possible sense and include, without limitation, all originals, copies, drafts, and recordings of any written, typewritten, handwritten, printed, graphic, electronic, digital, or otherwise recorded matter, including forms of information translatable or convertible into a reasonably usable form.   "Document" or "documents" include, without limitation, the following items:  electronic mail (e-mails), including, but not limited to, emails on the personal devices and from the personal email addresses of a select subset of Peteski's custodians to be negotiated between the parties; text messages on the personal devices of a select subset of Peteski's custodians to be negotiated between the parties, including, but not limited to, text messages from the personal devices between and among Dr. Phil and Joel Cheatwood during the Relevant Time Period; Microsoft PowerPoint slides and/or presentations; Microsoft Excel spreadsheets; Microsoft Word documents or other word processing program; licenses; agreements; communications, including intracompany communications; correspondence; letters; memoranda; records; books; summaries or handwritten notes or other records of personal

conversations or interviews; diaries; notebooks; appointment books or electronic entries; manuscripts, either in final or draft form, whether complete or incomplete and whether published or not; grant or project proposals; forecasts; statistical statements; any and all forms of data; meeting abstracts; meeting agendas; meeting minutes; slides; graphs; charts; diagrams; maps; blueprints; tables; indices; pictures; audio or visual recordings; tapes; magnetic discs; printed cards; programming instructions; assembly diagrams; schematic diagrams; manuals; films; assay results and reports; charges; accounts; invoices; analytical records; reports, records or summaries of meetings or conferences; reports, records or summaries of consultants; reports, records or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; stenographic, handwritten or any other notes; projectable images, including transparent overheads or slides; any other document or writing or form of information convertible into a document, including information contained within or accessible by a computer or computer accessory and the underlying documents supporting computer entries.

10.    The term "Envoy" means Envoy Media Co. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

11.    The term "Jackson Walker" means Jackson Walker LLP and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

12.    The term "Joint Venture Agreement" means the January 10, 2023 agreement, pursuant to a Binding Letter of Intent, entered into between MSM and Trinity Broadcasting of

Texas, Inc. dba Trinity Broadcasting Network, through which Dr. Phil McGraw's production company, Peteski Productions, Inc., and Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network would launch a new television network in 2024.

13.     The term "Lansio Declaration" means the Declaration of Lisa K. Lansio in Support of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition Financing, and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief [D.I. 12].

14.     The term "MRA" means, collectively, the Media Rights Agreement that PBR and MSM entered into on or about May 3, 2024, with an effective date of May 20, 2024, a true and accurate copy of which is attached to PBR's Demand as Exhibit 1, as well as all amendments.

15.     The term "MSM" means debtor Merit Street Media, Inc. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

16.     The term "PBR" means creditor Professional Bull Riders, LLC and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

17.     The term "person" means any natural person, firm, sole proprietorship, association, partnership, corporation, limited liability company, governmental agency, political subdivision, governmental body, quasi-public entity, joint venture, trust, estate, or any other form of legal entity, as well as any division, subdivision, department, bureau, office, or unit.

18.    The term "Peteski" means Peteski Productions, Inc. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

19.    The term "Petition Date" shall mean July 2, 2025.

20.    The term "Dr. Phil" means Phillip C. McGraw, PhD, an individual citizen of Texas residing in Dallas.

21.    The term "Relevant Time Period," for purposes of these requests for production only and unless otherwise provided, means July 2, 2023 to the present.

22.    The term "MSM Restructure" means the transaction that took place in or around August 2024 by which Peteski and TBN changed their respective ownership interests in MSM.

23.    The term "Sidley" means Sidley Austin LLP and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

24.    The term "TBN" means Trinity Broadcasting of Texas, Inc. and all of its parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1.**   All documents and communications between Peteski on one hand and MSM, Dr. Phil, TBN, or Envoy on the other hand relating to the filing of this Case.

**REQUEST NO. 2.**   All documents and communications regarding the marketing, negotiation or documentation of the DIP Facility, including, but not limited to, any alternatives to the DIP Facility including efforts described in paragraph 11 of the Lansio Declaration.

**REQUEST NO. 3.**   All documents and communications regarding the "safeguards aimed at protecting the integrity of its process as it negotiated with Peteski" as described in paragraph 12 of the Lansio Declaration.

**REQUEST NO. 4.**   All documents and communications regarding the search for potential equity investors, investors, or third-party financing and the evaluation of "various strategic options" as described in paragraph 31 and 48-49 of the Broadbent Declaration and paragraph 8 of the Lansio Declaration.

**REQUEST NO. 5.**   All documents and communications regarding any relationship—past or present—between Dr. Phil or Peteski and any past or present director of MSM, including, but not limited to, Gary Broadbent, Matt Crouch, or Samuel Smadja.

**REQUEST NO. 6.**   All documents and communications reflecting the identity of the directors of Peteski during the Relevant Time Period, including documents and communications to explain any changes in the directors of each such entity during the Relevant Time Period.

**REQUEST NO. 7.**   All documents and communications regarding the establishment of the special committee as described in paragraph 12 of the Lansio Declaration and paragraph 14 of the Broadbent Declaration including, but not limited to, all documents or communications describing the authority of the special committee.

**REQUEST NO. 8.**   The engagement letter between Peteski and Jackson Walker.

**REQUEST NO. 9.**   All documents and communications reflecting or relating to payment of Jackson Walker's attorney's fees and expenses on MSM's behalf, including, but not limited to, Jackson Walker's invoices relating to the Arbitration while the DIP Facility was being negotiated.

**REQUEST NO. 10.**   All documents and communications regarding any conflict waivers or potential conflicts between and among MSM, Dr. Phil, or Peteski regarding this case or the DIP Facility.

**REQUEST NO. 11.**   All communications with Sidley regarding this case, the DIP Facility, Envoy, or the Adversary Proceeding.

**REQUEST NO. 12.**   Organizational charts or other documents sufficient to show Peteski's overall corporate organization and internal organization during the Relevant Time Period, including, but not limited to, how the structure of the corporate organization and internal organization has changed, if at all, during the Relevant Time Period.

**REQUEST NO. 13.** All documents and communications in Peteski's possession, custody, or control regarding any capital contributions to MSM or planned capital contributions to MSM including, but not limited to, capital contributions—planned or actual—by Peteski, TBN, Dr. Phil, or any other entity.

**REQUEST NO. 14.** All documents and communications referring, reflecting, or relating to any analyses, financial projections, or budgets concerning MSM's financial condition prior to and following the Petition Date.

**REQUEST NO. 15.** All documents and communications regarding any and all payments or transfers of assets MSM made to Peteski, Dr. Phil, any member of the McGraw family, any entity affiliated in any way with the McGraw family, TBN, any entity affiliated in any way with TBN, or Envoy.

**REQUEST NO. 16.** All documents or communications relating to all agreements, contracts, or other transactions or arrangements between or among MSM, Peteski, TBN, Dr. Phil, Envoy, or any other owners, shareholders, members, employees, or affiliates of MSM, including, but not limited to, the Joint Venture Agreement, any restrictive covenants between MSM, on the one hand, and any individual, on the other hand, including, but not limited to, any non-compete, non-solicitation, or non-disclosure agreements between Dr. Phil and MSM, or between any other individual and MSM.

**REQUEST NO. 17.** All documents and communications relating to the MSM Restructure, including, but not limited to, documents and communications regarding the Stock Confirmation agreement executed by Peteski, TBN, and MSM.

**REQUEST NO. 18.** All documents and communications relating to Dr. Phil or Peteski exercising control over MSM regarding any of the following corporate decisions: whether to make capital expenditures or contributions, whether to pay money owed under any contract, whether to transfer any MSM assets to any other individual or entity, including, but not limited to, Envoy, the engagement of a restructuring officer, and filing for bankruptcy.

**REQUEST NO. 19.** All documents and communications related to MSM's decisions to lay off any employees or cease MSM programming, including *Dr. Phil Primetime*, including why those decisions were made and whether they were influenced by Peteski, Dr. Phil, TBN, Envoy, or others.

**REQUEST NO. 20.** All documents and communications related to MSM seeking relief in connection with making payments under any contract, including requests for financial assistance from Dr. Phil, Peteski, TBN, Envoy, or other individuals or entities.

**REQUEST NO. 21.** All documents and communications related to MSM's decision to reincorporate in Texas in February 2025.

**REQUEST NO. 22.** All documents related to any investigation of any claims or causes of action that the Debtor may have against the Released Parties (as such term is defined in the DIP Financing Motion [D.I. 11]).

**REQUEST NO. 23.**  All documents and communications related to the Peteski Convertible Notes and Peteski Bridge Loan as described on page 9 of the Broadbent Declaration.

**REQUEST NO. 24.**  All documents and communications related to why MSM chose to retain the remaining employees, including whether MSM received input for those decisions from Dr. Phil, Peteski, TBN, Envoy, or other individuals or entities.

**REQUEST NO. 25.**  All documents and communications regarding any votes by stockholders to remove or appoint directors to MSM's board of directors, including any notices provided by MSM regarding changes in the composition of MSM's board of directors.

**REQUEST NO. 26.**  All documents and communications regarding the CrossSeed Note, including, but not limited to, the document referenced by TBN's counsel on page 83 of the first day hearing transcript where Dr. Phil allegedly wrote "simple and as much outside any SEC jurisdiction as possible so as not to encumber any future fundraising which might occur inside a six-month window."

**REQUEST NO. 27.**  All documents and communications referenced by TBN's counsel on page 67 of the first day hearing transcript, including, but not limited to, the emails where Dr. Phil referenced his "eleventh-hour poker strategy" and "gangster move" to take over MSM.

**REQUEST NO. 28.**  All documents and communications regarding agreements referenced in the Adversary Complaint, including, but not limited to, the agreements that TBN allegedly required MSM to enter into as referenced in paragraphs 32-35 and the "December 2024 Agreement" referenced in paragraph 56 of the Adversary Complaint.

**REQUEST NO. 29.**  All notices of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**REQUEST NO. 30.**  All documents distributed in advance of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**REQUEST NO. 31.**  All documents and communications regarding proposals, resolutions, or other actions taken by the MSM board of directors or any committee or subcommittee thereof, including, but not limited to, any actions taken by written consent.

**REQUEST NO. 32.**  All documents and communications regarding Envoy Media Co., including but not limited to documents and communications reflecting any current or former employees of MSM who are now affiliated in any capacity with Envoy Media Co., documents and communications reflecting any assets that MSM transferred to Envoy Media Co., and any other documents or communications referring in any way to Envoy Media Co.

# EXHIBIT C

SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Jeri Leigh Miller (24102176)
Parker G. Embry (24126826)
Chelsea McManus (24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               jeri.miller@sidley.com
               parker.embry@sidley.com
               cmcmanus@sidley.com

SIDLEY AUSTIN LLP
James W. Ducayet (*pro hac vice*)
Steven E. Sexton (*pro hac vice*)
Andrew F. Rodheim (*pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone:     (312) 853-7000
Facsimile:     (312) 853-7036
Email:         jducayet@sidley.com
               ssexton@sidley.com
               arodheim@sidley.com

SIDLEY AUSTIN LLP
Stephen Hessler (*pro hac vice*)
Patrick Venter (*pro hac vice*)
Weiru Fang (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         shessler@sidley.com
               pventer@sidley.com
               weiru.fang@sidley.com

*Proposed Attorneys for the Debtor
and Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MERIT STREET MEDIA, INC.[1] | Case No. 25-80156 (SWE) |
| Debtor. | |

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

**DEBTOR'S RESPONSES AND OBJECTIONS TO PROFESSIONAL BULL RIDERS,
LLC'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein by Federal

Rules of Bankruptcy Procedure 7026, 7034, and 9014, the Debtor, Merit Street Media, Inc., by

and through its undersigned counsel, hereby responds and objects to the First Set of Requests for

Production of Documents (the "Requests") served by Professional Bull Riders, LLC.

**<u>PRELIMINARY STATEMENT</u>**

1.     The Debtor objects to the Requests to the extent they provide an unreasonably short

period of time—one business day—to produce documents in response to the 41 individually

numbered document requests.

2.     The Debtor objects to the Requests to the extent they seek documents from "July

2, 2023 to the present" (Definition No. 21). The Debtor will produce non-privileged, responsive

documents that can be located after a reasonable search from June 1, 2025 through the present,

subject to the Debtor's Responses to Individual Requests below.

3.     The Debtor objects to the Requests, including to the "Definitions" and

"Instructions," to the extent they are overbroad or purport to impose obligations that exceed those

set forth in Federal Rules of Civil Procedure 26 and 34, made applicable herein by Federal Rules

of Bankruptcy Procedure 7026, 7034, and 9014, the Local Rules of the United States Bankruptcy

Court for the Northern District of Texas (the "Court"), any applicable order of the Court, or any

other applicable statute, rule, or order.

4.     The Debtor objects to each Request to the extent that it seeks information that is

protected by the attorney-client privilege, the attorney work-product doctrine, or any other

applicable privilege, including but not limited to the joint-defense or common-interest privilege,

or that would result in disclosure of counsel's mental impressions, conclusions, opinions,

memoranda, notes or summaries, legal research, or legal theories concerning this or any other litigation. None of the Debtor's responses are intended as, nor should be construed as, a waiver or relinquishment of the attorney-client privilege, the work-product doctrine, the common-interest doctrine, or any other applicable privilege or immunity. Inadvertent disclosure of any information subject to any privilege, protection, immunity, or otherwise protected or immune from discovery shall not constitute a waiver of any privilege, protection, or immunity over the subject matter, and all such information and any copies thereof shall be returned to the Debtor or destroyed.

5.      The Debtor objects object to the Requests to the extent they seek the production of proprietary or other confidential business information that is not relevant to the above captioned matter. Any production of proprietary and other confidential business information will be subject to entry of an appropriate protective order governing that information.

6.      The Debtor's responses to all or part of any of the Requests are not intended and shall not be construed to constitute a waiver of all or part of any objection to any of the Requests. The Debtor further makes no admission of any nature and no admission may be implied by or inferred from these Responses and Objections.

7.      The Debtor objects to the Requests to the extent they purport to require the production of documents that are not in the Debtor's possession, custody, or control.

8.      The Debtor objects to the Requests, including specifically to Definition Nos. 10, 11, 15, 16, 18, 23, 24, as overbroad, unduly burdensome, and not proportionate to the needs of the case.

9.      The Debtor objects to the Requests as overbroad, unduly burdensome and not proportionate to the needs of the case to the extent they seek "all" documents, communications, or information responsive to a particular Request.

10.    The Debtor objects to Definition Nos. 5 and 9 as overbroad, unduly burdensome, and not proportionate to the needs of the case, including but not limited to the extent they seek the collection and production of texts. The Debtor will make a good-faith effort to collect and produce non-privileged, responsive emails located after a reasonable search, subject to the Debtor's Responses to Individual Requests below.

11.    The Debtor objects to Instruction Nos. 3–5, 7, 17–20, and 22 as overbroad, unduly burdensome, and not proportionate to the needs of the case.

12.    Each of the responses and objections below is based on the Debtor's current knowledge, information and belief, and a good faith interpretation of the Requests. The Debtor reserves all rights to supplement, modify, amend or otherwise vary these Responses and Objections.

## RESPONSES AND OBJECTIONS TO INDIVIDUAL REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

All documents and communications relating to MSM's decision to file this Case, including, but not limited to, any documents or communications relating to or reflecting any meetings of MSM's board of directors, board of managers, or other governing body during which MSM's board of directors, board of managers, or other governing body approved the filing of this case.

## RESPONSE TO REQUEST NO. 1:

The Debtor objects to this request as overbroad, unduly burdensome, not proportionate to the needs of the case. Subject to and without waiving the foregoing objections and Debtor's objections in the "Preliminary Statement," the Debtor will produce documents sufficient to show the Debtor's authority to file for bankruptcy, subject to the entry of a protective order.

## REQUEST FOR PRODUCTION NO. 2:

All documents and communications between MSM on one hand and Peteski, Dr. Phil, TBN, or Envoy on the other hand relating to the filing of this Case.

## RESPONSE TO REQUEST NO. 2:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate to the needs of the case, and as seeking information that is not relevant to the DIP hearing, including because it requests documents not related to the DIP facility. Subject to and without waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 3:

All documents and communications regarding the marketing, negotiation or documentation of the DIP Facility, including, but not limited to, any alternatives to the DIP Facility including efforts described in paragraph 11 of the Lansio Declaration.

## RESPONSE TO REQUEST NO. 3:

Subject to and without waiving the Debtor's objections in the "Preliminary Statement," the Debtor will produce non-privileged documents responsive to this Request concerning the

5

negotiation of the DIP facility and the Debtor's efforts to obtain alternative DIP financing that

can be located after a good-faith search using reasonable search terms, subject to the entry of a

protective order.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications regarding the "safeguards aimed at protecting the integrity of
its process as it negotiated with Peteski" as described in paragraph 12 of the Lansio Declaration.

**RESPONSE TO REQUEST NO. 4:**

Subject to and without waiving the Debtor's objections in the "Preliminary Statement,"

the Debtor will produce non-privileged documents responsive to this Request concerning the

negotiation of the DIP facility and the Debtor's efforts to obtain alternative DIP financing that

can be located after a good-faith search using reasonable search terms, subject to the entry of a

protective order.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications regarding the search for potential equity investors, investors,
or third-party financing and the evaluation of "various strategic options" as described in paragraph
31 and 48-49 of the Broadbent Declaration and paragraph 8 of the Lansio Declaration.

**RESPONSE TO REQUEST NO. 5:**

Subject to and without waiving the Debtor's objections in the "Preliminary Statement,"

the Debtor will produce non-privileged documents responsive to this Request concerning the

negotiation of the DIP facility and the Debtor's efforts to obtain alternative DIP financing that

can be located after a good-faith search using reasonable search terms, subject to the entry of a

protective order.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications regarding any relationship—past or present—between Dr.
Phil or Peteski and any past or present director of MSM, including, but not limited to, Gary
Broadbent, Matt Crouch, or Samuel Smadja.

6

**RESPONSE TO REQUEST NO. 6:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications reflecting the identity of the directors of MSM, Peteski, and
TBN during the Relevant Time Period, including documents and communications to explain any
changes in the directors of each such entity during the Relevant Time Period, if any, including, but
not limited to, the appointment of Gary Broadbent to the board of directors of MSM.

**RESPONSE TO REQUEST NO. 7:**

The Debtor objects to this request as overbroad, unduly burdensome, not proportionate to

the needs of the case, seeking information that is not relevant to the DIP hearing, and seeking

information about Peteski and TBN's directors that is not in the Debtor's possession, custody, or

control. Subject to and without waiving the forgoing objections and the Debtor's objections in

the "Preliminary Statement," the Debtor will produce documents sufficient to show the identities

of the Debtor's directors as of the Petition Date, subject to the entry of a protective order.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications regarding the establishment of the special committee as
described in paragraph 12 of the Lansio Declaration and paragraph 14 of the Broadbent Declaration
including, but not limited to, all documents or communications describing the authority of the
special committee.

**RESPONSE TO REQUEST NO. 8:**

The Debtor objects to this request as overbroad, unduly burdensome, and not

proportionate to the needs of the case to the extent it seeks "all" documents and communications

regarding the establishment of the Special Committee. Subject to and without waiving the

7

Debtor's objections in the "Preliminary Statement," the Debtor will produce documents

sufficient to show the formation of the Special Committee, subject to the entry of a protective

order.

**REQUEST FOR PRODUCTION NO. 9:**

The engagement letter between MSM and the following: Sidley, Triple P Securities, LLC, Triple
P RTS, LLC, and Jackson Walker.

**RESPONSE TO REQUEST NO. 9:**

The Debtor objects to this Request as seeking information that is not relevant to the DIP

hearing, including because it requests documents not related to the DIP facility. Subject to and

without waiving the foregoing objections and the Debtor's objections in the "Preliminary

Statement," the Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications reflecting or relating to payment of Jackson Walker's
attorney's fees and expenses on MSM's behalf, including, but not limited to, Jackson Walker's
invoices relating to the Arbitration while the DIP Facility was being negotiated.

**RESPONSE TO REQUEST NO. 10:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications regarding any conflict waivers or potential conflicts between
and among MSM, Dr. Phil, or Peteski regarding this case or the DIP Facility.

**RESPONSE TO REQUEST NO. 11:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 12:**

All communications with Sidley on the one hand and Peteski, Dr. Phil, TBN, or Envoy on the
other hand.

**RESPONSE TO REQUEST NO. 12:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor will produce non-privileged documents responsive to this Request concerning the

negotiation of the DIP facility and the Debtor's efforts to obtain alternative DIP financing that

can be located after a good-faith search using reasonable search terms, subject to the entry of a

protective order.

**REQUEST FOR PRODUCTION NO. 13:**

Organizational charts or other documents sufficient to show MSM's overall corporate organization
and internal organization during the Relevant Time Period, including, but not limited to, how the
structure of the corporate organization and internal organization has changed, if at all, during the
Relevant Time Period.

**RESPONSE TO REQUEST NO. 13:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 14:

All documents or communications relating to the corporate records and other legal documents for MSM, including, but not limited to, documents relating to formation, ownership, management structure, or corporate governance, including, but not limited to, minutes from meetings of the board of directors, board of managers, or other governing body.

## RESPONSE TO REQUEST NO. 14:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor will produce non-privileged responsive corporate governance documents relating to the

filing of the bankruptcy petition.

## REQUEST FOR PRODUCTION NO. 15:

All financial statements, balance sheets, or operating statements of MSM in MSM's possession, custody, or control, whether draft, audited, interim, or otherwise, including, but not limited to, any statements of cash flow, records showing MSM's capitalization, and documents showing MSM's solvency or insolvency.

## RESPONSE TO REQUEST NO. 15:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor will produce its December 2024, January 2025, February 2025, and March 2025

unaudited financial statements, subject to the entry of a protective order.

10

**REQUEST FOR PRODUCTION NO. 16:**

All documents and communications in MSM's possession, custody, or control regarding any capital contributions to MSM or planned capital contributions to MSM including, but not limited to, capital contributions—planned or actual—by Peteski, TBN, Dr. Phil, or any other entity.

**RESPONSE TO REQUEST NO. 16:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate to the needs of the case, and as seeking information that is not relevant to the DIP hearing, including because it requests documents not related to the DIP facility. Subject to and without waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 17:**

All single or joint federal, state, or local tax returns, IRS Schedule K-1s, IRS Form 1099s, or other evidence of earnings or income in MSM's possession, custody, or control relating to or concerning MSM.

**RESPONSE TO REQUEST NO. 17:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate to the needs of the case, and as seeking information that is not relevant to the DIP hearing, including because it requests documents not related to the DIP facility. Subject to and without waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and communications referring, reflecting, or relating to any analyses, financial projections, or budgets concerning MSM's financial condition prior to and following the Petition Date.

**RESPONSE TO REQUEST NO. 18:**

The Debtor objects to this Request as overbroad, unduly burdensome, and not proportionate to the needs of the case. Subject to and without waiving the foregoing objections

and the Debtor's objections in the "Preliminary Statement," the Debtor refers to the Approved

Budget filed at Dkt. 35 in the above-captioned case, and will produce drafts of the DIP facility

budget exchanged between counsel for the Debtor and Peteski that can be located after a good-

faith search using reasonable search terms, subject to the entry of a protective order.

## REQUEST FOR PRODUCTION NO. 19:

All documents and communications regarding any and all payments or transfers of assets MSM made to Peteski, Dr. Phil, any member of the McGraw family, any entity affiliated in any way with the McGraw family, TBN, any entity affiliated in any way with TBN, or Envoy.

**RESPONSE TO REQUEST NO. 19:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 20:

All documents or communications relating to all agreements, contracts, or other transactions or arrangements between or among MSM, Peteski, TBN, Dr. Phil, Envoy, or any other owners, shareholders, members, employees, or affiliates of MSM, including, but not limited to, the Joint Venture Agreement, any restrictive covenants between MSM, on the one hand, and any individual, on the other hand, including, but not limited to, any non-compete, nonsolicitation, or non-disclosure agreements between Dr. Phil and MSM, or between any other individual and MSM.

**RESPONSE TO REQUEST NO. 20:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 21:

All documents and communications relating to the MSM Restructure, including, but not limited to, documents and communications regarding the Stock Confirmation agreement executed by Peteski, TBN, and MSM.

## RESPONSE TO REQUEST NO. 21:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate to the needs of the case, and as seeking information that is not relevant to the DIP hearing, including because it requests documents not related to the DIP facility. Subject to and without waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 22:

All documents and communications relating to Dr. Phil or Peteski exercising control over MSM regarding any of the following corporate decisions: whether to make capital expenditures or contributions, whether to pay money owed under any contract, whether to transfer any MSM assets to any other individual or entity, including, but not limited to, Envoy, the engagement of a restructuring officer, and filing for bankruptcy.

## RESPONSE TO REQUEST NO. 22:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate to the needs of the case, and as seeking information that is not relevant to the DIP hearing, including because it requests documents not related to the DIP facility. Subject to and without waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 23:

All documents and communications relating to TBN exercising control over MSM regarding any of the following corporate decisions: whether to make capital expenditures or contributions, whether to pay money owed under any contract, whether to transfer any MSM assets to any other individual or entity, including, but not limited to, Envoy, the engagement of a restructuring officer, and filing for bankruptcy.

13

**RESPONSE TO REQUEST NO. 23:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and communications related to MSM's decisions to lay off any employees or cease
MSM programming, including Dr. Phil Primetime, including why those decisions were made and
whether they were influenced by Peteski, Dr. Phil, TBN, Envoy, or others.

**RESPONSE TO REQUEST NO. 24:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications related to MSM's attempts to renegotiate or failure to make
payments under any contract or demand, including why MSM needed to renegotiate the contract
and why MSM was unable to or chose not to make payments thereunder.

**RESPONSE TO REQUEST NO. 25:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 26:**

All documents that MSM produced in the Arbitration.

**RESPONSE TO REQUEST NO. 26:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and communications concerning MSM's consideration of the following in
connection with its decision to file this case: its relationship with PBR; the MRA or any other
contract; resources expended in the Arbitration (including attorneys' fees); a potential award
against MSM in the Arbitration; and/or MSM's ability to pay an award in the Arbitration as
described in paragraphs 20-21, 29, 31, and 44-45 of the Broadbent Declaration and paragraph 8 of
the Lansio Declaration.

**RESPONSE TO REQUEST NO. 27:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 28:**

All documents and communications related to MSM seeking relief in connection with making
payments under any contract, including requests for financial assistance from Dr. Phil, Peteski,
TBN, Envoy, or other individuals or entities.

**RESPONSE TO REQUEST NO. 28:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 29:**

All documents and communications related to MSM's decision to reincorporate in Texas in
February 2025.

**RESPONSE TO REQUEST NO. 29:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 30:**

All documents related to any investigation of any claims or causes of action that the Debtor may
have against the Released Parties (as such term is defined in the DIP Financing Motion [D.I. 11]).

**RESPONSE TO REQUEST NO. 30:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, seeking information that is not relevant to the DIP hearing, and seeking

information that is protected from disclosure by the attorney-client privilege and work product

doctrine. Subject to and without waiving the foregoing objections and the Debtor's objections in

the "Preliminary Statement," the Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and communications related to the Peteski Convertible Notes and Peteski Bridge
Loan as described on page 9 of the Broadbent Declaration.

**RESPONSE TO REQUEST NO. 31:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case. Subject to and without waiving the foregoing objections and the

Debtor's objections in the "Preliminary Statement," the Debtor will produce non-privileged

documents responsive to this Request concerning the negotiation of the Peteski Bridge Loan that

can be located after a good-faith search using reasonable search terms, subject to the entry of a

protective order.

**REQUEST FOR PRODUCTION NO. 32:**

Documents sufficient to show the identity of each of the Debtor's remaining employees, directors,
and officers, including each person's job responsibilities and compensation.

**RESPONSE TO REQUEST NO. 32:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 33:**

All documents and communications related to why MSM chose to retain the remaining employees,
including whether MSM received input for those decisions from Dr. Phil, Peteski, TBN, Envoy,
or other individuals or entities.

**RESPONSE TO REQUEST NO. 33:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 34:

All documents and communications regarding any votes by stockholders to remove or appoint
directors to MSM's board of directors, including any notices provided by MSM regarding changes
in the composition of MSM's board of directors.

### RESPONSE TO REQUEST NO. 34:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 35:

All documents and communications regarding the CrossSeed Note, including, but not limited to,
the document referenced by TBN's counsel on page 83 of the first day hearing transcript where
Dr. Phil allegedly wrote "simple and as much outside any SEC jurisdiction as possible so as not to
encumber any future fundraising which might occur inside a six-month window."

### RESPONSE TO REQUEST NO. 35:

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 36:

All documents and communications referenced by TBN's counsel on page 67 of the first day
hearing transcript, including, but not limited to, the emails where Dr. Phil referenced his "eleventh-
hour poker strategy" and "gangster move" to take over MSM.

18

**RESPONSE TO REQUEST NO. 36:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 37:**

All documents and communications regarding agreements referenced in the Adversary Complaint,
including, but not limited to, the agreements that TBN allegedly required MSM to enter into as
referenced in paragraphs 32-35 and the "December 2024 Agreement" referenced in paragraph 56
of the Adversary Complaint.

**RESPONSE TO REQUEST NO. 37:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 38:**

All notices of meetings of the MSM board of directors or any committee or subcommittee of the
MSM board of directors.

**RESPONSE TO REQUEST NO. 38:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 39:**

All documents distributed in advance of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**RESPONSE TO REQUEST NO. 39:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications regarding proposals, resolutions, or other actions taken by the MSM board of directors or any committee or subcommittee thereof, including, but not limited to, any actions taken by written consent.

**RESPONSE TO REQUEST NO. 40:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor refers to its responses to Request Nos. 8 and 14.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications regarding Envoy Media Co., including but not limited to documents and communications reflecting any current or former employees of MSM who are now affiliated in any capacity with Envoy Media Co., documents and communications reflecting any assets that MSM transferred to Envoy Media Co., and any other documents or communications referring in any way to Envoy Media Co.

**RESPONSE TO REQUEST NO. 41:**

The Debtor objects to this Request as overbroad, unduly burdensome, not proportionate

to the needs of the case, and as seeking information that is not relevant to the DIP hearing,

20

including because it requests documents not related to the DIP facility. Subject to and without

waiving the foregoing objections and the Debtor's objections in the "Preliminary Statement," the

Debtor is willing to meet and confer about this Request.

Dated: July 21, 2025
Dallas, Texas

/s/ Jeri Leigh Miller

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Jeri Leigh Miller (24102176)
Parker G. Embry (24126826)
Chelsea McManus (24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:          tom.califano@sidley.com
                jeri.miller@sidley.com
                parker.embry@sidley.com
                cmcmanus@sidley.com

*and*

James W. Ducayet (*pro hac vice*)
Steven E. Sexton (*pro hac vice*)
Andrew F. Rodheim (*pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone:     (312) 853-7000
Facsimile:     (312) 853-7036
Email:          jducayet@sidley.com
                ssexton@sidley.com
                arodheim@sidley.com

*and*

Stephen Hessler (*pro hac vice*)
Patrick Venter (*pro hac vice*)
Weiru Fang (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:          shessler@sidley.com
                pventer@sidley.com
                weiru.fang@sidley.com

*Proposed Attorneys for the Debtor
and Debtor in Possession*

22

## **CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served on July 21, 2025 on counsel of record for Professional Bull Riders, LLC.

*/s/ Jeri Leigh Miller*
Jeri Leigh Miller

# EXHIBIT D

Charles L. Babcock (TX Bar No. 01479500)
Bruce J. Ruzinsky (TX Bar No. 17439425)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Emily Meraia (TX Bar No. 24129307)
**Jackson Walker LLP**
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: bruzinsky@jw.com
Email: cbabcock@jw.com
Email: mcavenaugh@jw.com

Carl C. Butzer (TX Bar No. 03545900)
Vienna F. Anaya (TX Bar No. 24091225)
William T. Farmer (TX Bar No. 24127156)
**Jackson Walker LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6047
Email: cbutzer@jw.com
Email: vanaya@jw.com
Email: wfarmer@jw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>MERIT STREET MEDIA, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-80156 (SWE) |

### PETESKI PRODUCTIONS, INC.'S OBJECTIONS AND RESPONSES TO PROFESSIONAL BULL RIDERS, LLC'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PETESKI PRODUCTIONS, INC.

TO:    Professional Bull Riders, LLC., by and through their attorney of record, Jason M. Rudd and Scott D. Lawrence, Wick Phillips Gould & Martin, LLP, 3131 McKinney Ave., Suite 500, Dallas, TX 75204, Jennifer R. Hoover and Andrew D. Kinsey, Benesch, Friedlander, Coplan & Aronoff, LLP, 1313 N. Market Street, Suite 1201, Wilmington, DE 19801, Abbey Walsh, Benesch, Friedlander, Coplan & Aronoff, LLP, 1155 Avenue of the Americas, 26th Floor, New York, NY 10036, Nicholas J. Secco, Benesch, Friedlander, Coplan & Aronoff, LLP, 71 South Wacker Drive, Suite 1600, Chicago, IL 60606, and Alyssa A. Moscarino, Benesch, Friedlander, Coplan & Aronoff, LLP, 127 Public Square, Suite 4900, Cleveland, OH 44114.

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein by Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, Peteski Productions, Inc. ("Peteski"), by and through its undersigned counsel, hereby responds and objects to the First Requests for Production of Documents (the "Requests") served by Professional Bull Riders, LLC ("PBR").

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

Each of the responses and objections below is based on Peteski's current knowledge and Peteski reserves all rights to supplement, modify, or amend its responses and objections.

## PRELIMINARY STATEMENT

1.    Peteski objects to the Requests because the vast majority of them seek documents that are not related to the DIP facility, which is the subject of the July 29, 2025 hearing. As for documents that Peteski agrees to produce, they will be limited only to documents relating to the DIP facility.

2.    Peteski objects to the Definitions and Instructions, including Instruction Nos. 3, 4, 5, 7, 8, 9, 16, 17, 19, 21, and 23, to the extent they purport to impose obligations that exceed those set forth in Federal Rules of Civil Procedure 26 and 34, made applicable herein by Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Court"), any applicable order of the Court, or any other applicable statute, rule, or order.

3.    Peteski objects to the definition of "Envoy" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

4.    Peteski objects to the definition of "Jackson Walker" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

5.      Peteski objects to the definition of "MSM" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

6.      Peteski objects to the definition of "PBR" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

7.      Peteski objects to the definition of "Peteski" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

8.      Peteski objects to the definition of "Sidley" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

9.      Peteski objects to the definition of "TBN" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, particularly to the extent it includes "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or

former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

10.     Peteski objects to the Definitions and Instructions as overbroad, unduly burdensome, and not proportionate to the needs of the case, to the extent they seek collection and production of texts. Peteski will make a good-faith effort to collect and produce non-privileged, responsive emails located after a reasonable search, subject to the Peteski's individual responses below.

11.     Peteski objects to Definition No. 9 as overly broad and unduly burdensome; to the extent it exceeds the scope of Fed. R. Civ. P. 34 and the subject matter of the July 29, 2025 hearing on the DIP Facility; and because it seeks to include documents not in the possession, custody, or control of Peteski (including documents that are in Debtor's possession).

12.     Peteski objects to the timeframe set forth in the Requests – "from July 2, 2023 to the present" – as overbroad, unduly burdensome, and not proportional to the needs of the case. Peteski will treat the relevant timeframe as June 1, 2025 through the present, subject to Peteski's responses to the individual requests below.

13.     The First Day Hearing was on July 3, 2025. PBR did not serve the Requests until 3:57 p.m. CT on Thursday, July 17, 2025, and then demanded Peteski serve its responses and objections to the Requests, as well as any responsive documents, "commencing immediately, continuing on a rolling basis and to be completed by no later than close of business on July 21, 2025." Peteski objects to the unreasonably short time period for complying with the Requests. Peteski will make reasonable efforts to serve its responses, objections and documents subject to entry of a protective order.

14.    Peteski objects to the Requests to the extent they seek information, or require disclosure of information, that is protected by attorney-client privilege, the attorney work product doctrine and/or any other applicable privilege, protection or immunity afforded by statute, rule of the Court, or common law, including but not limited to the joint-defense or common-interest privilege ("Privileged Information").

15.    Peteski objects to the Requests to the extent they seek the production of proprietary or other confidential business information. Production of any such material will be subject to entry of a mutually agreeable protective order governing that information.

16.    Peteski objects to the Requests to the extent they purport to require the production of documents that are not in Peteski's possession, custody, or control.

17.    Peteski objects to those Requests seeking production of "all Communications" or "all Documents" on the basis that such Requests are facially overbroad.

18.    Peteski objects to the definitions of "communication," "document," and "documents" as overbroad, unduly burdensome, and not proportionate to the needs of the case.

19.    Peteski objects to the form of production called for in Instruction No. 18. Peteski will produce documents as described in Exhibit "A" hereto.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents and communications between Peteski on one hand and MSM, Dr. Phil, TBN, or Envoy on the other hand relating to the filing of this Case.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Subject to and without waiving the foregoing objections and

Peteski's objections in the "Preliminary Statement," Peteski will produce non-privileged

documents responsive to this Request related to the DIP facility in its possession, custody, or

control, subject to entry of a mutually agreeable protective order.

## REQUEST FOR PRODUCTION NO. 2:

All documents and communications regarding the marketing, negotiation or documentation of the
DIP Facility, including, but not limited to, any alternatives to the DIP Facility including efforts
described in paragraph 11 of the Lansio Declaration.

**RESPONSE:** Peteski objects to this Request to the extent it seeks Privileged Information. Peteski

objects to this Request because it seeks documents not within Peteski's possession, custody, or

control. Subject to and without waiving the foregoing objections and Peteski's objections in the

"Preliminary Statement," Peteski will produce non-privileged documents responsive to this

Request related to the DIP facility in its possession, custody, or control, subject to entry of a

mutually agreeable protective order.

## REQUEST FOR PRODUCTION NO. 3:

All documents and communications regarding the "safeguards aimed at protecting the integrity of
its process as it negotiated with Peteski" as described in paragraph 12 of the Lansio Declaration.

**RESPONSE:** Peteski objects to this Request because the defined terms are overbroad, unduly

burdensome, vague, ambiguous, not proportional to the needs of the case, to the extent they include

"parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former

officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons

acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks

Privileged Information. Peteski objects to this Request because it seeks documents not within

Peteski's possession, custody, or control. Subject to and without waiving the foregoing objections

and Peteski's objections in the "Preliminary Statement," Peteski will produce non-privileged

documents responsive to this Request related to the DIP facility in its possession, custody, or

control, subject to entry of a mutually agreeable protective order.

## REQUEST FOR PRODUCTION NO. 4:

All documents and communications regarding the search for potential equity investors, investors,
or third-party financing and the evaluation of "various strategic options" as described in paragraph
31 and 48-49 of the Broadbent Declaration and paragraph 8 of the Lansio Declaration.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional

to the needs of the case, and seeking irrelevant documents, to the extent it requests documents not

related to the DIP facility. Peteski objects to this Request to the extent it seeks Privileged

Information. Peteski objects to this Request because it seeks documents not within Peteski's

possession, custody, or control. Subject to and without waiving the foregoing objections and

Peteski's objections in the "Preliminary Statement," Peteski will produce non-privileged

documents responsive to this Request related to the DIP facility in its possession, custody, or

control, subject to entry of a mutually agreeable protective order.

## REQUEST FOR PRODUCTION NO. 5:

All documents and communications regarding any relationship—past or present—between Dr.
Phil or Peteski and any past or present director of MSM, including, but not limited to, Gary
Broadbent, Matt Crouch, or Samuel Smadja.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request on the basis that PBR lacks standing.

## **REQUEST FOR PRODUCTION NO. 6**:

All documents and communications reflecting the identity of the directors of Peteski during the Relevant Time Period, including documents and communications to explain any changes in the directors of each such entity during the Relevant Time Period.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request on the basis that PBR lacks standing.

## **REQUEST FOR PRODUCTION NO. 7**:

All documents and communications regarding the establishment of the special committee as described in paragraph 12 of the Lansio Declaration and paragraph 14 of the Broadbent Declaration including, but not limited to, all documents or communications describing the authority of the special committee.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request to the extent it seeks Privileged

Information. Peteski objects to this Request because it seeks documents not within Peteski's possession, custody, or control. Subject to and without waiving the foregoing objections and Peteski's objections in the "Preliminary Statement," Peteski is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 8:

The engagement letter between Peteski and Jackson Walker.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because it seeks Privileged Information. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf."

## REQUEST FOR PRODUCTION NO. 9:

All documents and communications reflecting or relating to payment of Jackson Walker's attorney's fees and expenses on MSM's behalf, including, but not limited to, Jackson Walker's invoices relating to the Arbitration while the DIP Facility was being negotiated.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information.

## REQUEST FOR PRODUCTION NO. 10:

All documents and communications regarding any conflict waivers or potential conflicts between and among MSM, Dr. Phil, or Peteski regarding this case or the DIP Facility.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Subject to and without waiving the foregoing objections and Peteski's objections in the "Preliminary Statement," Peteski is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 11:

All communications with Sidley regarding this case, the DIP Facility, Envoy, or the Adversary Proceeding.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski will produce non-privileged documents responsive to this

Request related to the DIP facility in its possession, custody, or control, subject to entry of a

mutually agreeable protective order.

## REQUEST FOR PRODUCTION NO. 12:

Organizational charts or other documents sufficient to show Peteski's overall corporate organization and internal organization during the Relevant Time Period, including, but not limited to, how the structure of the corporate organization and internal organization has changed, if at all, during the Relevant Time Period.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information.

## REQUEST FOR PRODUCTION NO. 13:

All documents and communications in Peteski's possession, custody, or control regarding any capital contributions to MSM or planned capital contributions to MSM including, but not limited to, capital contributions—planned or actual—by Peteski, TBN, Dr. Phil, or any other entity.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski objects to this Request on the basis that PBR lacks standing.

## REQUEST FOR PRODUCTION NO. 14:

All documents and communications referring, reflecting, or relating to any analyses, financial projections, or budgets concerning MSM's financial condition prior to and following the Petition Date.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Subject to and without waiving the foregoing objections and

Peteski's objections in the "Preliminary Statement," Peteski will produce non-privileged

documents responsive to this Request related to the DIP budget in its possession, custody, or

control, subject to entry of a mutually agreeable protective order.

## REQUEST FOR PRODUCTION NO. 15:

All documents and communications regarding any and all payments or transfers of assets MSM made to Peteski, Dr. Phil, any member of the McGraw family, any entity affiliated in any way with the McGraw family, TBN, any entity affiliated in any way with TBN, or Envoy.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, because it seeks documents regarding "any and all payments or transfers of assets" among numerous unidentified entities and persons over a two-year time period. Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks standing.

**REQUEST FOR PRODUCTION NO. 16**:

All documents or communications relating to all agreements, contracts, or other transactions or arrangements between or among MSM, Peteski, TBN, Dr. Phil, Envoy, or any other owners, shareholders, members, employees, or affiliates of MSM, including, but not limited to, the Joint Venture Agreement, any restrictive covenants between MSM, on the one hand, and any individual, on the other hand, including, but not limited to, any non-compete, nonsolicitation, or non-disclosure agreements between Dr. Phil and MSM, or between any other individual and MSM.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request as overbroad, unduly burdensome, vague, ambiguous, confusing, and not proportional to the needs of the case,

because it seeks documents relating to "all agreements, contracts, or other transactions or

arrangements" among numerous unidentified entities and persons over a two-year time period.

Peteski objects to this Request as overbroad, unduly burdensome, vague, ambiguous, and

confusing because the terms "transactions" and "arrangements" are undefined. Peteski objects to

this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it

seeks documents not within Peteski's possession, custody, or control. Peteski objects to this Request

on the basis that PBR lacks standing.


**REQUEST FOR PRODUCTION NO. 17**:

All documents and communications relating to the MSM Restructure, including, but not limited
to, documents and communications regarding the Stock Confirmation agreement executed by
Peteski, TBN, and MSM.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski objects to this Request on the basis that PBR lacks standing.


**REQUEST FOR PRODUCTION NO. 18**:

All documents and communications relating to Dr. Phil or Peteski exercising control over MSM
regarding any of the following corporate decisions: whether to make capital expenditures or
contributions, whether to pay money owed under any contract, whether to transfer any MSM assets

to any other individual or entity, including, but not limited to, Envoy, the engagement of a restructuring officer, and filing for bankruptcy.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request as overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, because it

seeks documents relating to "whether to pay money owed under any contract" and "whether to

transfer any MSM assets to any other individual or entity." Peteski objects to this Request to the

extent it seeks Privileged Information. Peteski objects to this Request on the basis that PBR lacks

standing.


## REQUEST FOR PRODUCTION NO. 19:

All documents and communications related to MSM's decisions to lay off any employees or cease MSM programming, including Dr. Phil Primetime, including why those decisions were made and whether they were influenced by Peteski, Dr. Phil, TBN, Envoy, or others.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request as overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, because it

seeks documents relating to decisions to "cease MSM programming." Peteski objects to this

Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks

documents not within Peteski's possession, custody, or control. Peteski objects to this Request on

the basis that PBR lacks standing.

## REQUEST FOR PRODUCTION NO. 20:

All documents and communications related to MSM seeking relief in connection with making
payments under any contract, including requests for financial assistance from Dr. Phil, Peteski,
TBN, Envoy, or other individuals or entities.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request as overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, because it

seeks documents relating to MSM "seeking relief in connection with making payments under any

contract." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects

to this Request because it seeks documents not within Peteski's possession, custody, or control.

Peteski objects to this Request on the basis that PBR lacks standing.

**REQUEST FOR PRODUCTION NO. 21**:

All documents and communications related to MSM's decision to reincorporate in Texas in February 2025.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request because it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks standing.

**REQUEST FOR PRODUCTION NO. 22**:

All documents related to any investigation of any claims or causes of action that the Debtor may have against the Released Parties (as such term is defined in the DIP Financing Motion [D.I. 11]).

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within

Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks

standing.

**REQUEST FOR PRODUCTION NO. 23**:

All documents and communications related to the Peteski Convertible Notes and Peteski Bridge
Loan as described on page 9 of the Broadbent Declaration.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request to the extent it seeks Privileged

Information. Subject to and without waiving the foregoing objections and Peteski's objections in

the "Preliminary Statement," Peteski will produce non-privileged documents responsive to this

Request related to the DIP facility in its possession, custody, or control, subject to entry of a

mutually agreeable protective order.

**REQUEST FOR PRODUCTION NO. 24**:

All documents and communications related to why MSM chose to retain the remaining employees,
including whether MSM received input for those decisions from Dr. Phil, Peteski, TBN, Envoy,
or other individuals or entities.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski objects to this Request because it seeks documents not within

Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks

standing.

## REQUEST FOR PRODUCTION NO. 25:

All documents and communications regarding any votes by stockholders to remove or appoint directors to MSM's board of directors, including any notices provided by MSM regarding changes in the composition of MSM's board of directors.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski objects to this Request because it seeks documents not within

Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks

standing.

## REQUEST FOR PRODUCTION NO. 26:

All documents and communications regarding the CrossSeed Note, including, but not limited to, the document referenced by TBN's counsel on page 83 of the first day hearing transcript where Dr. Phil allegedly wrote "simple and as much outside any SEC jurisdiction as possible so as not to encumber any future fundraising which might occur inside a six-month window."

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski objects to this Request because it seeks documents not within

Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks

standing.

## REQUEST FOR PRODUCTION NO. 27:

All documents and communications referenced by TBN's counsel on page 67 of the first day
hearing transcript, including, but not limited to, the emails where Dr. Phil referenced his "eleventh-
hour poker strategy" and "gangster move" to take over MSM.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it

seeks Privileged Information. Peteski objects to this Request on the basis that PBR lacks standing.

## REQUEST FOR PRODUCTION NO. 28:

All documents and communications regarding agreements referenced in the Adversary Complaint,
including, but not limited to, the agreements that TBN allegedly required MSM to enter into as
referenced in paragraphs 32-35 and the "December 2024 Agreement" referenced in paragraph 56
of the Adversary Complaint.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks standing.

## REQUEST FOR PRODUCTION NO. 29:

All notices of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks standing.

**REQUEST FOR PRODUCTION NO. 30**:

All documents distributed in advance of meetings of the MSM board of directors or any committee or subcommittee of the MSM board of directors.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks standing.

**REQUEST FOR PRODUCTION NO. 31**:

All documents and communications regarding proposals, resolutions, or other actions taken by the MSM board of directors or any committee or subcommittee thereof, including, but not limited to, any actions taken by written consent.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking irrelevant documents, including because it requests documents not related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other persons acting, or purporting to act, on its behalf." Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this Request because it seeks documents not within

Peteski's possession, custody, or control. Peteski objects to this Request on the basis that PBR lacks

standing.

## REQUEST FOR PRODUCTION NO. 32:

All documents and communications regarding Envoy Media Co., including but not limited to
documents and communications reflecting any current or former employees of MSM who are now
affiliated in any capacity with Envoy Media Co., documents and communications reflecting any
assets that MSM transferred to Envoy Media Co., and any other documents or communications
referring in any way to Envoy Media Co.

**RESPONSE:** Peteski objects to this Request as overbroad, unduly burdensome, not proportional to

the needs of the case, and seeking irrelevant documents, including because it requests documents not

related to the DIP facility. Peteski objects to this Request because the defined terms are overbroad,

unduly burdensome, vague, ambiguous, and not proportional to the needs of the case, to the extent

they include "parents, subsidiaries, divisions, affiliates, predecessors, successors, and any present

or former officers, directors, trustees, employees, agents, representatives, attorneys, or all other

persons acting, or purporting to act, on its behalf." Peteski objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case, because it seeks documents

relating to "any other documents or communications referring in any way to Envoy Media Co."

Peteski objects to this Request to the extent it seeks Privileged Information. Peteski objects to this

Request because it seeks documents not within Peteski's possession, custody, or control. Peteski

objects to this Request on the basis that PBR lacks standing.

Respectfully submitted,

*/s/ Carl C. Butzer*
Carl C. Butzer

Charles L. Babcock (TX Bar No. 01479500)
Bruce J. Ruzinsky (TX Bar No. 17439425)
Matthew D. Cavenaugh (TX Bar No.
   24062656)
Emily Meraia (TX Bar No. 24129307)
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: bruzinsky@jw.com
Email: cbabcock@jw.com
Email: mcavenaugh@jw.com

-and-

Carl C. Butzer (TX Bar No. 03545900)
Vienna F. Anaya (TX Bar No. 24091225)
William T. Farmer (TX Bar No. 24127156)
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6047
Email: cbutzer@jw.com
Email: vanaya@jw.com
Email: wfarmer@jw.com

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing document to be served on July 21, 2025 on counsel of

record for Professional Bull Riders, LLC.

*/s/ Carl C. Butzer*
Carl C. Butzer

# EXHIBIT A
## PRODUCTION PROTOCOL

Data or information that exists in electronic or magnetic form ("ESI") will be produced in the following format:

Concordance (.dat) with Opticon (.opt) image load file format, in Group IV, 300 DPI, single page TIFF images. File names cannot contain spaces. Color documents to be in 24-bit JPG files. Documents that cannot be converted to TIFF (video, audio, applications, etc.) will be produced in native format. Extracted text of a document to be delivered on a document level. All text for a single document should be contained within one file. The name of the file should be the beginning Bates number of the document (BEGDOC.txt). If there are non-searchable electronic documents and the text cannot be extracted, OCR text shall be provided for those documents. Every document referenced in a production image load file shall have all corresponding images, text, and data. Redacted text shall not be included in a redacted document's text file. Every image in the delivery volume shall be contained in the image load file. The image key shall be named the same as the Bates number of the page. Every image will contain a unique Bates number and a prefix that identifies the party producing the document. The confidentiality legends shall be "burned" onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document. The load file shall reference the metadata and coding fields for ESI as follows:

| | | |
|---|---|---|
| BEG BATES | MD5HASH | DOCUMENT AUTHOR |
| END BATES | CONFIDENTIALITY | FILE SIZE |
| BEG ATTACH | REDACTIONS | TEXTLINK |
| END ATTACH | TEXT/OCR | NATIVELINK |
| PAGE COUNT | CREATED DATE/TIME | |
| FILE EXTENSION | TITLE | |

Additional Metadata for email:

| | | |
|---|---|---|
| TO | EMAIL SENT DATE/TIME | ALL CUSTODIANS |
| FROM | MESSAGE ID | EMAIL REC'D DATE/TIME |
| CC | EMAIL SUBJECT LINE | |
| BCC | EMAIL TIME ZONE | |

Data or information that exists in hard copy form will be produced in the following format:

Image in Group IV, 300 DPI, single-page TIFF format, unitized logically with load files that represent the full and complete information contained in the original document. File names cannot contain spaces. OCR text to be delivered with all hard copy documents scanned into electronic form. All text for a single document should be contained within one file. The name of the file should be the beginning Bates number of the document (BEGDOC.txt). An Opticon load file (OPT) will be provided for hard copy productions. A coded field will be provided for any hard copy documents that contain redactions. A coded field will be provided for any hard copy document that have been marked confidential pursuant to the protective order, and the confidentiality legends shall be "burned" onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document. The load file shall reference the metadata and coding fields for hard copy documents as follows: BEG BATES, END BATES, CONFIDENTIALITY, REDACTIONS.

# EXHIBIT E

| | |
|---|---|
| **From:** | Moscarino, Alyssa |
| **To:** | Fang, Weiru; Sexton, Steven; Brenda Ramirez; Walsh, Abbey; Secco, Nick; Barrie, Michael; Hoover, Jennifer; Walsh, James; Kinsey, Andrew; David Drez; Jason Rudd; Scott Lawrence; Catherine A. Curtis; Zachary Farrar |
| **Cc:** | Miller, Jeri Leigh; Hessler, Stephen E.; Venter, Patrick; Califano, Thomas R.; Embry, Parker G.; McManus, Chelsea; Ducayet, Jim; Rodheim, Andrew F.; Mooney, James P. |
| **Subject:** | RE: Discovery for In re Merit Street Media, Inc.; Case No. 25-80156 |
| **Date:** | Monday, August 4, 2025 1:26:09 PM |
| **Attachments:** | Merit - DIP Release.docx |
| | 2025-08-04- PBR - BK Second Set of RFPs Directed at MSM.pdf |

Weiru,

Thank you for sending over proposed revisions to the DIP release. We would agree to the changes to the release, _provided that_, with respect to the language you added regarding the Roll-Up, we have put that language in brackets/highlights and would only agree to that if the Court approves the Roll-Up as part of the DIP Financing over PBR's objection. If the Roll-Up is not approved, then we do not agree to the inclusion of that language as part of the release. Unless you will remove that language, we are at an impasse on the DIP release until the Court rules on this issue.

As such, the DIP release is not resolved, and our discovery remains relevant to that issue at a minimum. But the status of negotiations on the DIP release does not moot any of PBR's requested discovery, which remains relevant for other independent reasons. First, as you know, TBN has moved to dismiss/convert/appoint, and PBR has joined that motion in part. The motion and joinder raise several topics on which discovery is necessary, including arguments that the bankruptcy was filed in bad faith, without corporate authority, to obtain a tactical litigation advantage, and does not serve a valid bankruptcy purpose, among other things. Second, PBR intends to object to the Debtor's bid motion, particularly after my team participated in a call with your team on Friday to discuss the "sale process." On that call, we learned that the Debtor is refusing to carve out the estate claims against Peteski, Dr. Phil, and related parties from the assets for sale. We further learned that Sidley is conducting its own internal investigation into those claims to determine whether they exist and, if so, what their value is. Given the inherent conflict of interest between the Debtor investigating claims against its majority shareholder, board member, and DIP Lender, we cannot rely on the investigation being conducted by Sidley. We will be conducting our own investigation regarding the value of these claims and therefore all of our existing discovery requests remain in full force and effect. To that end, please see PBR's second set of requests for production to the Debtor.

On a related note, we understand that Debtor served responses and objections to PBR's document requests ("R&Os") and made a small document production (251 documents) on July 21. As you know from the R&Os, Debtor offered to meet and confer on the following requests: PBR RFP Nos. 2, 6, 9, 10, 11, 13, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41. Debtor also offered to negotiate search terms (and presumably custodians) on the following requests: PBR RFP Nos. 3, 4, 5, 12, 18, 31. Accordingly, PBR was under the impression that Debtor would be making additional rolling document productions while the parties engaged in a meet and confer process and negotiated search terms (and presumably custodians). If that is not your understanding, please advise us ASAP so we can bring it to the Court's attention.

Additionally, the 251 documents Debtor produced do not fully satisfy the scope of documents and communications PBR sought in its requests. Debtor's objections were largely based on the requests allegedly not being connected to the DIP Facility. But as set forth above, the August 19 hearing now encompasses much more than the DIP Facility. We trust that Debtor will be producing documents responsive to all PBR's requests. Please confirm PBR's current understanding.

Finally, Debtor's narrowing of the relevant timeframe to June 1, 2025 to the present and refusal to produce text messages is unreasonable. We know that Debtor's employees, directors, and officers routinely communicated via text message to discuss Debtor's business; accordingly, Debtor should produce responsive text messages. Debtor also unilaterally narrowed to a "sufficient to show" standard or otherwise PBR RFP Nos. 1, 7, 8, 14, 15, 18, 31. Debtor's unilateral narrowing is unwarranted and should also be subject to a good-faith meet and confer process. As we have previously advised you, PBR is willing to

consent to entry of the Eastern District of Texas's standard protective order, which should alleviate any confidentiality concerns Debtor may have.

We are happy to meet and confer on any of the above issues but intend to seek Court intervention within the next 24-48 hours if we cannot reach an accord and Debtor will not produce responsive documents. PBR reserves all of its rights, waiving none.

Best,



Alyssa A. Moscarino
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Fang, Weiru <weiru.fang@sidley.com>
**Sent:** Thursday, July 31, 2025 2:18 PM
**To:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>; Sexton, Steven <ssexton@sidley.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@Beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@WickPhillips.com>
**Cc:** Miller, Jeri Leigh <jeri.miller@sidley.com>; Hessler, Stephen E. <shessler@sidley.com>; Venter, Patrick <pventer@sidley.com>; Califano, Thomas R. <tom.califano@sidley.com>; Embry, Parker G. <parker.embry@sidley.com>; McManus, Chelsea <cmcmanus@sidley.com>; Ducayet, Jim <jducayet@sidley.com>; Rodheim, Andrew F. <arodheim@sidley.com>; Mooney, James P. <jmooney@sidley.com>
**Subject:** RE: Discovery for In re Merit Street Media, Inc.; Case No. 25-80156

Benesch team,

Please see attached for a revised version of the DIP release, which has been agreed to by the DIP lender. Redline is against your draft. Let us know if helpful to discuss. All rights are reserved.

Thanks,
Weiru

**WEIRU FANG**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
+1 202 736 8327
weiru.fang@sidley.com

**From:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Sent:** Tuesday, July 29, 2025 10:31 AM
**To:** Sexton, Steven <ssexton@sidley.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@Beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@WickPhillips.com>
**Cc:** Miller, Jeri Leigh <jeri.miller@sidley.com>; Hessler, Stephen E. <shessler@sidley.com>; Venter, Patrick

<pventer@sidley.com>; Fang, Weiru <weiru.fang@sidley.com>; Califano, Thomas R. <tom.califano@sidley.com>;
Embry, Parker G. <parker.embry@sidley.com>; McManus, Chelsea <cmcmanus@sidley.com>; Ducayet, Jim
<jducayet@sidley.com>; Rodheim, Andrew F. <arodheim@sidley.com>; Mooney, James P. <jmooney@sidley.com>
**Subject:** RE: Discovery for In re Merit Street Media, Inc.; Case No. 25-80156

Counsel,

Attached please find PBR's redlines to the proposed DIP release.  If these are acceptable to the
Debtor, we will resume the discussion from our July 18 meet-and-confer call about withdrawing
discovery related to the merits of the underlying claims that we believe Debtor proposes to waive
under its original release.  If the redlines are not acceptable, PBR will proceed with all discovery
requests and deposition notices as served.  Please let us know your position as soon as possible.
We are happy to discuss.

Thank you,



Alyssa A. Moscarino
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Sexton, Steven <ssexton@sidley.com>
**Sent:** Thursday, July 24, 2025 11:03 AM
**To:** Brenda Ramirez <brenda.ramirez@wickphillips.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>;
Moscarino, Alyssa <AMoscarino@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael
<mbarrie@Beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James
<JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez
<david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence
<scott.lawrence@wickphillips.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar
<Zachary.Farrar@WickPhillips.com>
**Cc:** Miller, Jeri Leigh <jeri.miller@sidley.com>; Hessler, Stephen E. <shessler@sidley.com>; Venter, Patrick
<pventer@sidley.com>; Fang, Weiru <weiru.fang@sidley.com>; Califano, Thomas R. <tom.califano@sidley.com>;
Embry, Parker G. <parker.embry@sidley.com>; McManus, Chelsea <cmcmanus@sidley.com>; Ducayet, Jim
<jducayet@sidley.com>; Rodheim, Andrew F. <arodheim@sidley.com>; Mooney, James P. <jmooney@sidley.com>
**Subject:** RE: Discovery for In re Merit Street Media, Inc.; Case No. 25-80156

Counsel,

Now that everything has been rescheduled for a hearing on August 19, we will not be
making witnesses available this weekend for depositions.  We will coordinate with you and
TBN's counsel on future deposition scheduling.

Best,
Steve

**STEVEN E. SEXTON**
Partner

**SIDLEY AUSTIN LLP**
+1 312 853 2179
ssexton@sidley.com

*********************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*****************************************************************************************

**From:** Brenda Ramirez <brenda.ramirez@wickphillips.com>
**Sent:** Friday, July 18, 2025 10:23 AM
**To:** Sexton, Steven <ssexton@sidley.com>; Miller, Jeri Leigh <jeri.miller@sidley.com>; Hessler, Stephen E. <shessler@sidley.com>; Venter, Patrick <pventer@sidley.com>; Fang, Weiru <weiru.fang@sidley.com>; Califano, Thomas R. <tom.califano@sidley.com>; Embry, Parker G. <parker.embry@sidley.com>; McManus, Chelsea <cmcmanus@sidley.com>; Ducayet, Jim <jducayet@sidley.com>; Rodheim, Andrew F. <arodheim@sidley.com>; Mooney, James P. <jmooney@sidley.com>
**Cc:** Walsh, Abbey <abbey.walsh@beneschlaw.com>; Moscarino, Alyssa <amoscarino@beneschlaw.com>; Secco, Nick <nsecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@beneschlaw.com>; Walsh, James <jwalsh@beneschlaw.com>; Kinsey, Andrew <akinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@WickPhillips.com>
**Subject:** Discovery for In re Merit Street Media, Inc.; Case No. 25-80156

Sidley Austin,

On behalf of Professional Bull Riders, LLC, attached please find the following:

- Notice of Deposition of Joel Cheatwood;
- Notice of Deposition of Gary Broadbent; and
- First Requests for Production of Documents to Merit Street Media, Inc.

Thank you,



**Brenda Ramirez** | Legal Assistant
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Direct: 214.420.4088 | Fax: 214.692.6255
www.wickphillips.com

# EXHIBIT F

| | |
|---|---|
| **From:** | Moscarino, Alyssa |
| **To:** | Butzer, Carl |
| **Cc:** | Cavenaugh, Matthew; Babcock, Chip; Brenda Ramirez; Ruzinsky, Bruce; Anaya, Vienna; Farmer, William; Walsh, Abbey; Secco, Nick; Barrie, Michael; Hoover, Jennifer; Walsh, James; Kinsey, Andrew; David Drez; Jason Rudd; Scott Lawrence; Martinez, Cody; Catherine A. Curtis; Zachary Farrar; Ceckowski, Lauren |
| **Subject:** | RE: Discovery to Dr. Phillip McGraw |
| **Date:** | Tuesday, August 5, 2025 2:23:08 PM |
| **Attachments:** | image001.png |

Sure.  Go ahead and send an invite.

Alyssa A. Moscarino

Partner | Litigation

Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939

AMoscarino@beneschlaw.com | www.beneschlaw.com

127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

---

**From:** Butzer, Carl <cbutzer@jw.com>
**Sent:** Tuesday, August 5, 2025 2:18 PM
**To:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>; Ceckowski, Lauren <lceckowski@jw.com>
**Subject:** RE: Discovery to Dr. Phillip McGraw

Alyssa

How about 2 CT/3 ET?

**Thanks,**
**Carl**

**Carl Butzer** | Partner
2323 Ross Avenue, Suite 600
Dallas, TX 75201
V: (214) 953-5902 | F: (214) 661-6609 | cbutzer@jw.com

**Jackson Walker** LLP

---

**From:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Sent:** Tuesday, August 5, 2025 10:15 AM
**To:** Butzer, Carl <cbutzer@jw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>; Ceckowski, Lauren <lceckowski@jw.com>
**Subject:** RE: Discovery to Dr. Phillip McGraw

**Caution:** **External Email.

Carl,

Thanks.  Do you have time this afternoon?  Considering the short timeline before August 19 and imminent depositions (including Broadbent's tomorrow), we need to know if Peteski will be making a meaningful and substantive production in response to PBR's RFPs, and when.  We don't have time for lengthy negotiations over each and every RFP.  I know that protective order negotiations are ongoing with TBN, and we'd like to know what a Peteski production will look like once that is resolved, whether by agreement or Court order.  Conversely, we need to know if Peteski's position is that it won't be producing anything.

Thanks,



Alyssa A. Moscarino
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Butzer, Carl <cbutzer@jw.com>
**Sent:** Tuesday, August 5, 2025 9:57 AM
**To:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>; Ceckowski, Lauren <lceckowski@jw.com>
**Subject:** RE: Discovery to Dr. Phillip McGraw

Alyssa

Happy to discuss.

**Thanks,**
**Carl**

**Carl Butzer** | Partner
2323 Ross Avenue, Suite 600
Dallas, TX 75201
V: (214) 953-5902 | F: (214) 661-6609 | cbutzer@jw.com

## Jackson Walker LLP

**From:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Sent:** Tuesday, August 5, 2025 9:26 AM
**To:** Butzer, Carl <cbutzer@jw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>
**Subject:** RE: Discovery to Dr. Phillip McGraw

**Caution: **External Email.**

Counsel,

Having heard nothing, we intend to file a motion to compel Peteski to respond to PBR's RFPs.

All of our requests remain relevant and thus in full force and effect for several independent reasons. As you might have heard from Sidley, the DIP release issue is not resolved because they have not removed certain language regarding the Roll-Up. But the status of negotiations on the DIP release does not moot any of PBR's requested discovery. First, as you know, TBN has moved to dismiss/convert/appoint, and now PBR has joined that motion in part. The motion and joinder raise several topics on which discovery is necessary, including arguments that the bankruptcy was filed in bad faith, without corporate authority, to obtain a tactical litigation advantage, and does not serve a valid bankruptcy purpose, among other things. PBR's requests directly relate to those issues. Second, PBR intends to object to the Debtor's bid motion, also set for hearing on August 19, because the Debtor has not definitively agreed to carve out estate claims against Peteski, Dr. Phil, and related parties from the assets for sale. Accordingly, PBR is entitled to investigate the value of those claims if they are going to be listed for sale.

Please also see attached PBR's second set of RFPs to Peteski.

I understand your position that there needs to be a protective order in place, but PBR has agreed to abide by the E.D. Tex. protective order and that should be sufficient. Regardless, the protective order is a timing issue; Peteski should at a minimum agree to produce documents once a protective order is entered. We have no such assurances in place, and thus we are forced to seek Court intervention.

Thank you,



Alyssa A. Moscarino
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

---

**From:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Sent:** Wednesday, July 30, 2025 4:29 PM
**To:** Butzer, Carl <cbutzer@jw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>
**Subject:** RE: Discovery to Dr. Phillip McGraw

Carl,

Dr. Phil is an employee of MSM, the Debtor, and the founder, President, and Chief Executive Officer of Peteski, the DIP Lender.  He is not only a party to this action; he is unquestionably relevant to DIP lending process.  Moreover, the DIP is not the only issue on which discovery is warranted.  The Debtor has not agreed to acceptable language for the DIP release, so the merits of the underlying claims for alter ego, breach of fiduciary duty, fraudulent transfer, and related claims against the Debtor's directors and officers like Dr. Phil and Peteski are discoverable.  Moreover, as you know, TBN has a pending motion to dismiss or convert the case, or in the alternative, appoint a Chapter 11 Trustee.  Dr. Phil's actions as the individual in control of the Debtor and DIP Lender are central and material to issues related to resolving that motion.  As a creditor, PBR is entitled to conduct all of this discovery.

Please let us know by tomorrow morning if you will be responding to PBR's requests for production to Dr. Phil and producing him for a deposition.  If not, we will be serving the attached subpoena tomorrow (notice of intent to serve also attached).  By serving this subpoena, PBR in no way concedes that Dr. Phil is a third party.  But if Dr. Phil refuses to respond to the requests for production and sit for a deposition, in the interest of time, we must go this route.  We will be seeking Court intervention if Dr. Phil resists the subpoena.

Also attached is a subpoena for Dr. Phil to testify at the August 19 hearing.

Please also let us know when we can expect Peteski to respond to our RFPs.  As we informed Sidley, PBR is amenable to the Eastern District of Texas's form protective order, which we understand has been proposed as the basis for a protective order in the Chapter 11 Case.  We saw Peteski's objections to PBR's first set of RFPs, which were largely based on the requests allegedly not being connected to the DIP Facility.  As set forth above, there is no acceptable DIP release in place, and thus the merits of all underlying claims proposed for release are discoverable.  And now that the August 19 hearing is about much more than the DIP Facility, e.g., TBN's motion to dismiss/convert/appoint, etc., we trust that Peteski will be producing documents responsive to all PBR's requests.  Please confirm PBR's current understanding.

We also noticed that Peteski is refusing to produce documents on the grounds that PBR "lacks standing."  As the largest unsecured creditor in the Chapter 11 Case, PBR has standing to investigate the proposed DIP Lender's background and association with the Debtor.  Indeed, the DIP Lender proposes preferential treatment for amounts it has loaned and seeks to loan the Debtor, which may further subordinate PBR's significant claim.  "Lacks standing" is not an appropriate objection to this highly relevant discovery.  Please produce these documents.  Finally, per Peteski's offer, we are willing to meet and confer on PBR RFP Nos. 7 and 10

Thank you,



Alyssa A. Moscarino
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Butzer, Carl <cbutzer@jw.com>
**Sent:** Monday, July 21, 2025 1:14 PM
**To:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@beneschlaw.com>; Hoover, Jennifer <jhoover@beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>
**Subject:** RE: Discovery to Dr. Phillip McGraw

Alyssa

Dr. McGraw is not a party to the proceeding, and PBR hasn't served a subpoena for the discovery directed to him (including the deposition notice). Accordingly, we don't believe a response is necessary. Moreover, Dr. McGraw is not relevant to the July 29 hearing on the DIP Facility.

Even if there were a properly issued subpoena, we've learned there is no protective order in place. On that note, we want to make clear that no documents will be produced (by Peteski or otherwise) without a protective order.

**Thanks,**
**Carl**

**Carl Butzer** | Partner
2323 Ross Avenue, Suite 600
Dallas, TX 75201
V: (214) 953-5902 | F: (214) 661-6609 | cbutzer@jw.com

**Jackson Walker** LLP

---

**From:** Butzer, Carl <cbutzer@jw.com>
**Sent:** Monday, July 21, 2025 9:46 AM
**To:** Alyssa Moscarino <AMoscarino@beneschlaw.com>
**Cc:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Abbey Walsh <abbey.walsh@beneschlaw.com>; Nick Secco <NSecco@beneschlaw.com>; Michael Barrie <mbarrie@beneschlaw.com>; Jennifer Hoover <jhoover@beneschlaw.com>; James Walsh <JWalsh@beneschlaw.com>; Andrew Kinsey <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Martinez, Cody <CMartinez@jw.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <Zachary.Farrar@wickphillips.com>
**Subject:** Re: Discovery to Dr. Phillip McGraw

Alyssa

What is your position?

Thanks,
Carl

Carl C. Butzer
Jackson Walker LLP
2323 Ross Ave., Suite 600
Dallas, Texas 75201
214.953.5902

On Jul 21, 2025, at 09:13, Moscarino, Alyssa <AMoscarino@beneschlaw.com> wrote:

> **Caution:** **External Email.

Carl, that's not accurate. We never discussed this. I asked if you would be responding to the discovery we propounded or resisting the deposition notices and Chip said you'd take a position after seeing revised DIP release language from Sidley. Is it now your position that you will not be responding to discovery directed at Mr. McGraw regardless of what transpires with the release?

Alyssa A. Moscarino
Partner | Litigation

Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

On Jul 21, 2025, at 9:44 AM, Butzer, Carl <cbutzer@jw.com> wrote:

Alyssa

On Thursday of last week, PBR propounded two discovery requests to Dr. McGraw: (1) Notice Of Deposition Of Phillip C. McGraw, PHD, and (2) Creditor Professional Bull Riders, LLC's First Requests For Production Of Documents To Phillip C. McGraw, PHD.

As we discussed during our call on Friday, we are not responding to that discovery, we are not producing Dr. Phil McGraw for deposition, and we are not producing documents in response to the RFPs directed to him.

Please tell me if you disagree.

**Thanks,**
**Carl**

**Carl Butzer** | Partner
2323 Ross Avenue, Suite 600
Dallas, TX 75201
V: (214) 953-5902 | F: (214) 661-6609 | cbutzer@jw.com

<image001.png>

---

**From:** Moscarino, Alyssa <AMoscarino@beneschlaw.com>
**Sent:** Thursday, July 17, 2025 4:42 PM
**To:** Cavenaugh, Matthew <mcavenaugh@jw.com>
**Cc:** Babcock, Chip <cbabcock@jw.com>; Brenda Ramirez <brenda.ramirez@wickphillips.com>; Ruzinsky, Bruce <bruzinsky@jw.com>; Butzer, Carl <cbutzer@jw.com>; Anaya, Vienna <vanaya@jw.com>; Farmer, William <wfarmer@jw.com>; Walsh, Abbey <abbey.walsh@beneschlaw.com>; Secco, Nick <NSecco@beneschlaw.com>; Barrie, Michael <mbarrie@Beneschlaw.com>; Hoover, Jennifer <jhoover@Beneschlaw.com>; Walsh, James <JWalsh@beneschlaw.com>; Kinsey, Andrew <AKinsey@beneschlaw.com>; David Drez <david.drez@wickphillips.com>; Jason Rudd <jason.rudd@wickphillips.com>; Scott Lawrence <scott.lawrence@wickphillips.com>; Catherine A. Curtis <catherine.curtis@wickphillips.com>; Zachary Farrar <zachary.farrar@wickphillips.com>
**Subject:** Re: Discovery for In re Merit Street Media, Inc.; Case No. 25-80156

**Caution: **External Email.**

Thanks. I'm available. Let's set it up and I'll get someone from my BK team to join.

<image002.jpg>

Alyssa A. Moscarino
Partner | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6238 | m: 216.338.7939
AMoscarino@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

On Jul 17, 2025, at 5:40 PM, Cavenaugh, Matthew <mcavenaugh@jw.com> wrote:

 I will make myself available at that time.
**Matt Cavenaugh** | Partner
JACKSON WALKER
1401 McKinney, Suite 1900
Houston, TX 77010
V: (713) 752-4284

[mcavenaugh@jw.com](mailto:mcavenaugh@jw.com)

This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law.

On Jul 17, 2025, at 5:36 PM, Babcock, Chip <[cbabcock@jw.com](mailto:cbabcock@jw.com)> wrote:

I will need my bankruptcy lawyer Matt Cavenaugh with me. Assuming he can do it then how about 2pm CT?
Sent from my iPad

> On Jul 17, 2025, at 4:22 PM, Moscarino, Alyssa <[AMoscarino@beneschlaw.com](mailto:AMoscarino@beneschlaw.com)> wrote:
>
> **Caution:** **External Email.
>
> Our team at Wick Phillips will send it shortly. In the meantime, can we agree on a time for tomorrow? Thanks!
>
> Alyssa A. Moscarino
> Partner | Litigation
> Benesch Friedlander Coplan & Aronoff LLP
>
> t: 216.363.6238 | m: 216.338.7939
> [AMoscarino@beneschlaw.com](mailto:AMoscarino@beneschlaw.com) | [www.beneschlaw.com](http://www.beneschlaw.com)
> 127 Public Square, Suite 4900, Cleveland, OH 44114
>
> Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice
>
> On Jul 17, 2025, at 5:11 PM, Babcock, Chip <[cbabcock@jw.com](mailto:cbabcock@jw.com)> wrote:
>
> Alyssa,
> I have not received your objection. I have a notice of deposition, and two requests for production of documents. I am happy to speak once I get the objection.
> Best
> Chip
> Sent from my iPad
>
> > On Jul 17, 2025, at 3:56 PM, Moscarino, Alyssa <[AMoscarino@beneschlaw.com](mailto:AMoscarino@beneschlaw.com)> wrote:
> >
> > **Caution:** **External Email.
> >
> > Chip, now that you have our objection and discovery, is there a time that works for a call tomorrow?
> >
> > Alyssa A. Moscarino
> > Partner | Litigation
> > Benesch Friedlander Coplan & Aronoff LLP
> >
> > t: 216.363.6238 | m: 216.338.7939
> > [AMoscarino@beneschlaw.com](mailto:AMoscarino@beneschlaw.com) | [www.beneschlaw.com](http://www.beneschlaw.com)
> > 127 Public Square, Suite 4900, Cleveland, OH 44114
> >
> > Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice
> >
> > On Jul 17, 2025, at 4:52 PM, Brenda Ramirez <[brenda.ramirez@wickphillips.com](mailto:brenda.ramirez@wickphillips.com)> wrote:

Jackson Walker,

On behalf of Professional Bull Riders, LLC,
attached please find the following:

1. Notice of Deposition of Phillip C. McGraw,
   PhD;
2. First Requests for Production of Documents
   to Phillip C. McGraw, PhD; and
3. First Requests for Production of Documents
   to Peteski Productions, Inc.

Thank you.

**Brenda Ramirez** | Legal Assistant
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Direct: 214.420.4088 | Fax: 214.692.6255
www.wickphillips.com

<2025-07-17 First Requests for Production to
Phillip C. McGraw, PhD.pdf>
<2025-07-17 Notice of Deposition of Phillip C.
McGraw, PhD.pdf>
<2025-07-17 First Requests for Production to
Peteski Productions, Inc..pdf>

<image511600.jpg>

<image129112.jpg>

<image217625.jpg>

<image001.png>
<image002.jpg>

**<u>EXHIBIT G</u>**

**<u>Proposed Order</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MERIT STREET MEDIA, INC.,[1] | Case No. 25-80156 (SWE) |
| Debtor. | |

**ORDER COMPELLING THE DEBTOR AND PETESKI PRODUCTIONS, INC. TO
PRODUCE DOCUMENTS**

Upon consideration of *Professional Bull Riders LLC's Emergency Motion to Compel
Production By The Debtor And Peteski Productions, Inc.* (the "Motion"), it is hereby **ORDERED**
that:

1.    The Motion is GRANTED as set forth herein.

2.    The Debtor must produce to PBR all documents, communications, and electronic

---

[1]   The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501
Alliance Gateway Fwy, Fort Worth, TX 76177.

1

information, without limitation, that is responsive to PBR's requests to Debtor no later than 5 days after the entry of this Order.

3.      Peteski must produce to PBR all documents, communications, and electronic information, without limitation, that is responsive to PBR's requests to Peteski no later than 5 days after the entry of this Order.

4.      The Court shall retain exclusive jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #


Submitted by:

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email: jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com

**COUNSEL TO PROFESSIONAL BULL RIDERS, LLC**