

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 18, 2025**

_____
**United States Bankruptcy Judge**

_____

**United States Bankruptcy Court**
**Northern District of Texas**
**Dallas Division**

| | | |
|---|---|---|
| In re: | § § | |
| Merit Street Media, Inc., | § § § | Case No. 25-80156-swe11 |
| Debtor. | § | |

### *Order Granting Continuance and Providing Ancillary Relief*

This Order memorializes certain findings and observations that the Court made at an emergency hearing on a motion for continuance [Docket No. 229] just a few days ago, plus it adds a few more. At issue was whether to continue certain matters that were scheduled for hearing on August 19, 2025, particularly a continued hearing on debtor-in-possession financing.

The Debtor's response to the continuance motion [Docket 235] (the "**Response**") begins by highlighting what it twice calls a very "routine" DIP-financing motion that was handled at first-day hearings by a different presiding judge (Chief Bankruptcy Judge Stacey Jernigan), and it ends by alleging that, since then, the Debtor has been unjustly deprived of the opportunity for a second hearing on the DIP-financing motion for an extended period of time. The Response paints what could be described charitably as an incomplete picture, so in a nutshell, here's what actually happened.

1

The Debtor, a media company, filed for Chapter 11 relief on July 2, 2025, and let go most of its employees shortly thereafter. There appears to be some, albeit minimal, operations ongoing and only a handful of employees left. On the petition date, the Debtor's primary owners—Peteski Productions, Inc. ("**Peteski**") on the one side, and Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network ("**TBN**") on the other—were battling with each other, and the Debtor was litigating with a significant creditor, Professional Bull Riders LLC ("**PBR**").

The Debtor quickly filed its first-day motions, including its "routine" DIP-financing motion. Although such a motion is of course routine in many Chapter 11 cases, the Response curiously omits one unorthodox part of the DIP-financing motion at issue here: The DIP lender, Peteski, indicated that it would not fund a second draw under the DIP loan unless and until it received a favorable ruling on the Debtor's preference claim against TCT Ministries, Inc. ("**TCT**")—an affiliate of TBN—contained in a six-count postpetition adversary proceeding that was filed against TBN and TCT (together, "**Trinity**") even before any substantive motions were filed in the main bankruptcy case. *See* Adv. No. 25-8006. The Court granted interim DIP-financing relief, and based on Peteski's uncustomary condition for the next DIP-financing draw, the Court scheduled the next DIP-financing hearing *and* a summary-judgment hearing on the preference claim less than a month later on July 29. The Court has no qualms with Judge Jernigan's scheduling of those combined matters on that timeframe given the landscape and record at the time, including Peteski's unorthodox DIP-financing condition.

As often happens in bankruptcy, however, facts and circumstances change, and Peteski's uncustomary DIP-financing condition soon tripped up the Debtor. Trinity filed a motion requesting dismissal of the case, conversion of the case to Chapter 7, or appointment of a Chapter 11 trustee. [Docket No. 100]. That motion alleged not only that the bankruptcy was filed in bad faith, but also that the case was filed without proper corporate authority. PBR partially joined in Trinity's motion, preferring conversion over dismissal. [Docket No. 151]. The Court has since reminded the parties more than once of the urgency of determining the authority-to-file issue given Fifth Circuit precedent holding that a bankruptcy case must be dismissed if it was filed without proper

2

corporate authority. *See Franchise Servs. of N. Am., Inc. v. U.S. Trustee (In re Franchise Servs. of N. Am., Inc.)*, 891 F.3d 198, 206–07 (5th Cir. 2018).

Trinity then requested a continuance of the July 29 preference hearing and DIP-financing hearing, arguing that it needed discovery for its motion to dismiss, convert, or appoint a trustee. At a July 22 continuance hearing, when Peteski's unorthodox DIP-financing condition was still in place, *all* parties agreed that it made sense to try the motion to dismiss and preference count at the same time. Transcript of Hearing Held 7/22/25 [Docket No. 144] at 27:16–28:3. *After all, if there's no bankruptcy case, there's no preference.* After a back-and-forth discussion where the Court probed the positions of the parties, the Debtor's counsel floated the idea of continuing the matters to the August 4–8 timeframe. *Id.* at 48. But because the parties informed the Court that the recently formed Creditors' Committee had not selected counsel yet due to unknown delays, and because of Trinity's and PBR's persuasive arguments that they needed more time to obtain discovery, the Court selected the already-scheduled Merit Street omnibus hearing date of August 19. So at the end of the day, there was only roughly an eleven-day difference between what the Debtor last proposed and what it got. Moreover, it should have been clear to the Debtor and Peteski based on the Court's ruling that Trinity and PBR were entitled to timely production of discovery—not only for the DIP-financing motion but also for the competing motions of Trinity and PBR—given the tight schedule.

Unfortunately, Trinity and PBR had trouble getting the discovery they requested, with PBR first filing a motion to compel and a motion to expedite consideration of that motion. [Docket Nos. 173, 174].[1] At an August 8 status conference on those matters, the Court asked whether the parties were still on track to keep the August 19 hearing date given the discovery disputes bubbling up. One exchange seemed emblematic of a larger problem. In a literal he-said-verses-she-said, she (counsel for PBR) said that he (counsel for Peteski) took the position in a discovery conference that week that discovery should be limited to the DIP-financing motion and should not include the competing motions to dismiss or convert or appoint a trustee, whereas he said it was simply a

---

[1] Trinity later filed a joinder to PBR's motion to compel. [Docket No. 206].

3

misunderstanding.[2] The Court expressed some skepticism that the August 19 hearing date would hold given the unresolved disputes but asked the parties to continue conferring before having to set the motion to compel.[3]

The conferral process stalled, so at an August 14 hearing on Trinity's and PBR's respective motions to compel, the Court overruled the remaining unresolved objections of the Debtor and Peteski to the discovery requests. In the Court's view, very few (if any) of the discovery rulings were particularly close calls. And notably, not until August 11 at 11:05 p.m., in footnote 8 of one of the Debtor's discovery-related responses, did the Debtor notify the Court that Peteski was no longer sticking to its unorthodox DIP-financing condition. [Docket No. 192].

With the August 19 hearing looming, and with much of the ordered discovery still outstanding, Trinity and PBR filed the emergency continuance motion that was held on August 15 and that is the subject of this Order. At that hearing, the Court heard—as it has throughout the case—two different worldviews.

On the one hand, the Debtor and Peteski allege, among other things, that (a) Trinity and PBR are obstreperous creditors who are looking out for their own interests—including their litigation interests—rather than the interests of all creditors; and (b) the estate and the reorganization will be jeopardized unless the Court approves its requested DIP financing for operational expenses and for prefunded professional fees.

On the other hand, Trinity and PBR allege variously, among other things, that (a) the Debtor did not have corporate authority to file the bankruptcy; (b) the Debtor filed the bankruptcy in bad faith; (c) the pending Section 363 sale process is a sham that favors Peteski and its owner, who started a competing media company near the petition date and who, with Peteski, is represented by a law firm whose attorneys

---

[2] The Court believes what she said.

[3] The Response says that the Court declined to take testimony from the Debtor's financial advisor about the need for DIP financing. It is true that the Court declined that invitation, but that's because it was a status conference, where counsel could have simply relayed any relevant information without the need to convert the status conference into an impromptu evidentiary hearing—with sworn testimony and cross-examination—on the DIP-financing motion.

4

attended one or more Debtor board meetings where the Section 363 sale process was discussed; and (d) the DIP-financing motion should be approved on a further interim basis only for limited operational expenses and not to fund a giant litigation war chest for the Debtor's professionals, which in turn would lien-up the Debtor's assets and potentially allow Peteski to credit bid that debt at the challenged sale process in favor of the competing insider media company.

Each side challenges the other side's allegations. Whose worldview is correct? The Court doesn't know because it hasn't heard the merits. But the Court has heard and seen enough to conclude that the Debtor and Peteski have delayed these matters by improperly resisting discovery and that the interests of the estate and creditors are best served by considering at the August 19 DIP-financing hearing only what operating expenses are needed to get the Debtor to a final combined hearing on the DIP-financing motion and the competing motions to dismiss, convert, or appoint a trustee.[4] With this imperfect but somewhat level playing field, the Court can finally reach critical threshold issues, such as whether the Debtor had proper corporate authority to file this case.[5]

After the Court's oral ruling, the parties settled on September 2, 2025, at 9:00 a.m. for the new hearing date. The Court trusts the parties will do their best to respond to other parties' discovery requests and do what is required to keep that hearing date so the matters are not postponed again.

### End of Order ###

---

[4] Certain other matters will also go forward on the 19th, as discussed at the August 15 hearing.

[5] The Response notes that the Debtors have uploaded some orders that have not been entered yet. Those orders each contain a finding that this Court has jurisdiction. The Court will not require resubmission of those orders with revised language; instead, this Order shall be deemed to modify every order entered to date and those entered going forward to reflect that this Court's finding of jurisdiction is subject to the authority-to-file issue, which remains outstanding. If the Court determines that the Debtor had proper corporate authority to file this bankruptcy, then the findings of jurisdiction in those orders will stand.