| | | |
|---|---|---|
| Holland N. O'Neil (TX 14864700)<br>Robert Slovak (TX 24013523)<br>Steven C. Lockhart (TX 24036981)<br>Mark C. Moore (TX 24074751)<br>Stephanie L. McPhail (TX 24104104)<br>Davis G. Mosmeyer III (TX 24106346)<br>**FOLEY & LARDNER LLP**<br>2021 McKinney Avenue, Suite 1600<br>Dallas, TX 75201<br>Telephone: (214) 999-3000<br>Facsimile: (214) 999-4667<br>honeil@foley.com<br>rslovak@foley.com<br>slockhart@foley.com<br>mmoore@foley.com<br>smcphail@foley.com<br>dmosmeyer@foley.com | Rajiv Dharnidharka<br>(admitted *pro hac vice*)<br>**FOLEY & LARDNER LLP**<br>555 California Steet, Suite 1700<br>San Francisco, CA 94104<br>Telephone: (415) 434-4484<br>Facsimile: (415) 434-4507<br>rajiv.dharnidharka@foley.com | Nora J. McGuffey (TX 24121000)<br>**FOLEY & LARDNER LLP**<br>321 North Clark Street, Suite 3000<br>Chicago, IL 60654<br>Telephone: (312) 832-4366<br>Facsimile: (312) 832-4700<br>nora.mcguffey@foley.com |

*Attorneys for Trinity Broadcasting of Texas, Inc.*
*dba Trinity Broadcasting Network and TCT Ministries, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>MERIT STREET MEDIA, INC.,[1]<br><br>Debtor. | § Chapter 11<br>§<br>§ Case No.: 25-80156-11 (SWE)<br>§<br>§ |

## TRINITY BROADCASTING OF TEXAS, INC. AND TCT MINISTRIES, INC.'S <u>EMERGENCY</u> MOTION FOR CONTEMPT AND SANCTIONS AGAINST PETESKI PRODUCTIONS, INC.

> **Emergency relief has been requested. Relief is requested not later than 5:00 p.m. on August 27, 2025. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Trinity Broadcasting of Texas, Inc. d/b/a Trinity Broadcasting Network ("**TBN**") and TCT Ministries, Inc. ("**TCT**" and together with "TBN," "**Trinity**"), by and through their undersigned

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy., Fort Worth, Texas 76177.

counsel, hereby submits this *Motion for Contempt and Sanctions Against Peteski Productions, Inc.* (the "**Motion**"). The DIP lender in this chapter 11 bankruptcy case (the "**Chapter 11 Case**"), Peteski Productions, Inc. ("**Peteski**"), has failed and refused to comply with its discovery obligations and this Court's Orders. In support of this Motion, Trinity states as follows:

# I.
# PRELIMINARY STATEMENT

1. We are again confronted with the same discovery failures the Court has already fully addressed. Just eleven days ago, Professional Bull Riders LLC ("**PBR**") sought an order compelling the Debtor and Peteski to produce documents they had stubbornly refused to provide, which Trinity joined. After full briefing and argument, the Court granted that motion on all fronts, finding "very few (if any) of the discovery rulings were close calls."[2] The Court also continued the hearing on the Motion to Dismiss to allow the parties time to complete discovery. In so doing, Merit Street Media, Inc. ("**MSM**" or the "**Debtor**") timely made a substantial production in an effort to fully comply with the Court's Order,[3] but Peteski continues to withhold and obfuscate production.

2. Once again we stand with just a week before this Court is scheduled to hear argument from Trinity, PBR, the Debtor, and Peteski on numerous complex matters—including whether the Court has jurisdiction over the Chapter 11 Case and whether this case should be dismissed or converted to a Chapter 7 proceeding for bad faith (the "**Hearing**")—and, for all practical purposes, we have not made much progress on two critical issues that necessitated the motion to compel in the first place. In a transparent attempt to create the illusion of compliance

---

[2] Order Granting Continuance and Providing Ancillary Relief, Docket No. 248, at 4.

[3] Counsel for Debtor confirmed this morning that Debtor will search its own records for the Jackson Walker invoices it paid pre-petition or otherwise, any engagement letter with Jackson Walker, and any conflict waiver with Jackson Waiver – or confirm it does not have any such documents – as required by this court's prior orders. As such, this motion is not directed at Debtor. If Debtor fails to do so, the Debtor will also be in violation of the court's prior orders.

**TRINITY'S MOTION FOR CONTEMPT AND SANCTIONS**                                                      **PAGE 2**
4922-8097-7250.6

with the Court's August 22, 2025, production deadline, Peteski produced just 337 documents on August 22, 2025, with an additional 37 documents produced on August 25, 2025 (as compared to the 3,993 documents produced by the Debtor on August 22, 2025, and an additional 431 documents produced on August 25, 2025). By its own admission in a meet-and-confer between counsel on August 26, 2025, Peteski still has not produced all of Phillip C. McGraw's emails and text messages (despite his deposition being scheduled to begin in less than 48 hours from the time of such conference), nor has it produced all of the documents concerning Envoy. Peteski's same delay tactics persist. The pattern is so striking that it is more than mere déjà vu; it is a deliberate rerun, scripted by parties who have decided that the Court's orders are optional guidance rather than binding directives.

3. The time for patience has passed. Accordingly, Trinity requests emergency relief from this Court, and asks the Court, as authorized under Fed. R. Civ. P. 37(b), to: (a) continue the Hearing one additional week and order Peteski to produce all responsive documents within 24 hours, (b) order Peteski to verify under oath that all of Mr. McGraw's relevant text messages and emails have been produced, or, in the absence of a continuance, (c) order the deposition of Mr. McGraw proceed but permit Trinity to keep the deposition open so that it can question Mr. McGraw on any documents produced on or after August 26, 2025, (d) order that the supplemental deposition of Mr. McGraw take place before the Hearing, and (e) order monetary sanctions to all costs of seeking Peteski's compliance with the Court's prior orders and the resulting delay in the Hearing. Alternatively, Trinity asks that if the Court is inclined to proceed with the Hearing as scheduled, that Peteski be prohibited from opposing Trinity's claim that the Debtor lacked corporate authority to institute the bankruptcy and issue a negative inference on the issue of corporate authority in light of Peteski's discovery gamesmanship. In any event, Trinity requests explicit instruction that all discovery from all parties be concluded in accordance with prior orders.

## II.
## RELEVANT BACKGROUND

4. Trinity incorporates by reference the factual background to its Joinder to the Motion to Compel.[4] Additionally, Trinity provides the following background.

5. On August 12, 2025, Trinity and PBR jointly sought to compel the Debtor and Peteski to (a) collect documents and communications, including text messages, from the custodians identified by Trinity and PBR, (b) expand the scope of their collections and productions to January 1, 2024 to the present, (c) apply the search terms proposed by Trinity and PBR to the document collections; and (d) complete their document productions within three days of the Court's order.[5] The Court heard Trinity and PBR's Motion to Compel on August 14, 2025 and granted the Motion to Compel on all grounds. Subsequently, the Court heard Trinity's Motion to Continue the Hearing. The Court granted the Motion to Continue and reset the hearing for September 2, 2025.[6]

6. On August 22, 2025, Peteski produced 337 documents, and the Debtor produced the 3,993 documents. Trinity reviewed those documents and identified deficiencies in Peteski's production. On Sunday, August 24, 2025, counsel for Trinity, PBR, and Peteski exchanged various emails conferring about the deficiencies identified in Peteski's productions.[7]

7. On August 26, 2025, counsel for Trinity, PBR, Peteski, and the Debtor conferred via video conference on the Peteski's production deficiencies. That video conference followed an earlier conference by and between counsel for Trinity, PBR, and the Debtor. During the latter call

---

[4] *Joinder in Support of Professional Bull Rider LLC's Emergency Motion to Compel Production by the Debtor and Peteski Productions, Inc.* [Docket No. 206].

[5] *Professional Bull Riders LLC's Emergency Motion to Compel Production by the Debtor and Peteski Productions, Inc.* [Docket No. 173] together with Trinity's Joinder, the "**Motion to Compel.**"

[6] *See* Docket No. 248.

[7] A true and correct copies of this email exchange is attached hereto as **Exhibit A**.

**TRINITY'S MOTION FOR CONTEMPT AND SANCTIONS**  **PAGE 4**
4922-8097-7250.6

several issues were resolved, but two primary issues remained outstanding: (1) the late production of Mr. McGraw's text messages and emails in light of his forthcoming deposition, and (2) the limited search and production of documents concerning Envoy. Following conclusion of that video conference, the parties engaged in additional email correspondence leading up to the filing of this Motion.[8]

### III.
### LEGAL STANDARD

8. Federal Rule of Civil Procedure 37(b), which is made applicable by Bankruptcy Rules 7037 and 9014, grants courts broad authority to impose sanctions when a party fails to obey a discovery order. Specifically, Rule 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery," the court "may issue further just orders," which may include: (i) directing that certain facts be taken as established (*i.e.* issuing a negative inference); (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses; (iii) striking pleadings in whole or in part; (iv) staying proceedings; (v) dismissing the action in whole or in part; (vi) rendering a default judgment; or (vii) treating the failure as contempt of court.[9]

9. The scope of the court's discretion under Rule 37(b) is intentionally broad. Sanctions serve not only to penalize the offending party, but also to deter similar conduct, ensure compliance with the court's orders, and prevent prejudice to the opposing party. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) ("Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders. Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." (internal quotations omitted)).

---

[8] A true and correct copy of this email exchange is attached hereto as **Exhibit B.**

[9] Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

**TRINITY'S MOTION FOR CONTEMPT AND SANCTIONS**　　　　　　　　　　　　　　　　　　　　　　**PAGE 5**
4922-8097-7250.6

## IV.
## ARGUMENTS AND AUTHORITIES

10. On August 15, 2025, the Court ordered Peteski and the Debtor produce all documents responsive to Trinity's discovery requests by Friday, August 22, 2025. This directive was unequivocal. There was no ambiguity, no conditional language, and no "best efforts" qualification. The Debtor understood the Court's order and made efforts to comply with it, producing over 4,300 documents between August 22, 2025, and August 25, 2025, fulfilling its stated intent of "moving heaven and earth" in discovery. Trinity acted with similar haste, producing more than 6,566 documents in three productions between August 22, 2025, and August 25, 2025. Peteski, on the other hand continues to evade and withhold core categories of responsive information: text messages, emails, and other communications at the heart of the disputed transactions in this case.

11. This is not a case of inadvertent oversight. After weeks of conferrals, Court-imposed deadlines, and Peteski's explicit representations that production would be complete, the record now shows a pattern of obfuscation and selective withholding of critical evidence. Such conduct is a direct violation of Fed. R. Civ. P. 37(b) and warrants not only an order compelling remedial production, but also sanctions.

12. **Mr. McGraw's Text Messages and Emails**. The most glaring deficiency in the Peteski's production is the near total absence of Mr. McGraw's text messages and emails. We know that these documents exist because some of them were produced by the Debtor. For example, Trinity has identified the following emails from Mr. McGraw that the Debtor produced but Peteski has not: MSM0004420, MSM0004826, MSM0014006, MSM0014007, MSM0014009, MSM0014019, MSM0014047, MSM0014144, MSM0015941, MSM0016238, MSM0022138. The Debtor's production demonstrates that Mr. McGraw was emailing about critical issues that will be decided during the Hearing. Similarly, Trinity has identified the following texts from Mr. McGraw that the Debtor

produced but Peteski has not: MSM0009869, MSM0009871, MSM0009873, MSM0009876, MSM0010151, MSM0010586, MSM0010593, MSM0010596, MSM0010600, MSM0022371, MSM0022696, MSM0022759, MSM0022805, MSM0022841, MSM0022856, MSM0022859, MSM0022898, MSM0022955, MSM0022959, MSM0022965, MSM0023002, MSM0023025, MSM0023057, MSM0023059, and MSM0023236. For additional context regarding text messages:

- MSM produced 196 text chains involving Ken Solomon; Peteski produced 16;
- MSM produced 328 text chains involving Joel Cheatwood; Peteski produced 8;
- MSM produced 39 text chains involving Phil McIntyre; Peteski produced 12;
- MSM produced 8 text chains involving Jerry Sharell; Peteski produced 0; and,
- MSM produced 29 text chains involving Gary Broadbent; Peteski produced 1.

Likewise, Trinity produced numerous responsive text messages between McGraw and Frank Amedia during this period. *See, e.g.* TBN4511-4685. Yet, as of this filing, Peteski has failed to produce virtually any of McGraw's own emails and text messages. Given the transaction's importance and given that Mr. McGraw communicates extensively through text message and email, it is simply not believable that Mr. McGraw would not have texted or emailed *anyone else* about the deal.

13. In response to Trinity's conferral, Peteski stated that it was still working on reviewing and producing Mr. McGraw's emails and hoped to get them produced by midnight, August 26, 2025. That gives Trinity less than 24 hours to review the documents in advance of Mr. McGraw's deposition. The tactical delayed production is clearly intended to prejudice Trinity and hamstring its efforts to take a comprehensive deposition of Mr. McGraw.

14. The Court should compel Peteski to provide an immediate, complete, and certified production of *all* of Mr. McGraw's relevant emails and text messages and verify under oath what searches have been conducted and why these plainly responsive communications have not been produced to date.

15. Furthermore, it appears that Mr. McGraw is exerting his control over Peteski and strategically limiting his production in the hope that Trinity and PBR will cancel or postpone his deposition. Mr. McGraw has delayed and restricted production of key documents directly relevant to his testimony, making it impossible to question him fully unless the deposition is moved. This is not the first time Mr. McGraw has gone to extraordinary lengths to avoid sitting for a deposition. Indeed, he caused the Debtor to file for bankruptcy immediately after the arbitrator in the PBR arbitration compelled his deposition. Mr. McGraw does not want to sit for a deposition at all. But he should not be rewarded for his discovery tactics by a postponement or cancellation of his deposition. The Court should order that Mr. McGraw appear for his deposition as currently scheduled, and that the deposition remain open so that Trinity may reconvene and question him on any additional documents produced on August 26, 2025, or thereafter. In addition, the Court should impose monetary sanctions on Peteski sufficient to cover the fees and expenses associated with not only this motion but also the costs of conducting the second deposition necessitated by its noncompliance.

16. **Communications Concerning Envoy**. Equally troubling is the absence of any meaningful production of Peteski's documents concerning Envoy. By no later than May 20, 2025, Mr. McGraw and other officers of the Debtor were actively discussing what they themselves variously referred to as "newco," "DP 2.0," and a "new venture" — all of which ultimately materialized as Envoy. From that point through the bankruptcy filing, high-level personnel of the Debtor were engaged in transition planning that coincided with workforce layoffs, the winding

down of MSM, and the transfer of valuable MSM assets. These documents demonstrate that Peteski and the Debtor never intended to reorganize MSM, but rather to strip it of value and divert its assets to their new business venture, Envoy.

17. Again, Peteski unilaterally limited the scope of relevant documents. Peteski contends it interpreted "Envoy" discovery obligations to cover only two narrow topics — (1) current or former MSM workers joining Envoy and (2) the transfer of MSM assets to Envoy. Nowhere did the Court limit the scope in this manner, and the Debtor's own production disproves this interpretation. The Debtor produced multiple documents directly addressing the usurpation of corporate opportunities, the interplay between the Debtor's bankruptcy filing and the launch of Envoy, and other topics critical to the bad-faith and fiduciary-breach analysis. Peteski's continues to intentionally exclude the documents reflecting inception, planning, and execution of a competing enterprise at the Debtor's expense.

18. After conferral, Peteski later responded that it would produce more Envoy documents, but indicated that there were only approximately 200 relevant, yet-to-be produced documents that it intends to hand over. So based on its representations, Peteski is still not fully producing all documents relevant to Peteski. Again, with Mr. McGraw's deposition scheduled for approximately 36 hours from now, Trinity is prejudiced by Peteski's failure to comply with the Court's order and timely produce its documents.

19. The Court should grant this motion not only to compel the missing Envoy communications, but also to send a clear message that parties cannot selectively "curate" their productions to omit evidence harmful to their litigation position.

20. **<u>Additional Deficiencies in Peteski's Production.</u>** In addition to the above issues, Peteski and Trinity discussed a number of other production deficiencies. During the conferral call

between counsel, many of these issues were addressed with supplemental production and/or investigation forthcoming. The categories of these documents include the following:

- Text messages and emails from Jay McGraw, which Peteski intends to produce by midnight on August 26, 2025;

- Emails from a second email account of Jay McGraw, which are being reviewed and Peteski intends to produce by August 27, 2025;

- Emails from Phillip McIntyre, which Peteski intends to produce by midnight on August 26, 2025;

- Emails and communications from Envoy email accounts that were established in early August 2025, which Peteski intends to produce by midnight on August 26, 2025;

- Text messages and emails from Jordan McGraw, which Peteski intends to produce by August 27, 2025; and

- Jackson Walker engagement letters and invoices, which Peteski is discussing internally and will inform counsel for PBR and Trinity if they will agree to produce.

21. **Requested Sanctions.** Given the clear violation of a discovery order, the implausibility of Peteski's explanations, and the centrality of the withheld material, the Court should act under Fed. R. Civ. P. 37(b) impose the following sanctions on Peteski:

1. Monetary sanctions in an amount sufficient to reimburse Trinity for all attorneys' fees and expenses incurred in forcing Peteski to meet their discovery obligations, including the full costs of any additional depositions made necessary by Peteski's untimely and incomplete productions, and all fees and costs incurred by any other party in connection with a continuance of the Hearing; **and**,

2. Order Peteski to produce all material addressed above, including all of Mr. McGraw's emails and text messages be produced within 24 hours and order Peteski to verify under oath that all of Mr. McGraw's relevant text messages and emails have been produced; **and**, alternatively:

3. (a) Continue the Hearing, which would allow the deposition of Mr. McGraw to be rescheduled for Tuesday or Wednesday, September 2 or 3 (dates Mr. McGraw is already known to be available given his attendance at the hearing); **or**,

   (b) Order the deposition of Mr. McGraw proceed but permit Trinity to keep the deposition open so that it can question Mr. McGraw on any

documents produced on August 26, 2025 or later, with such supplemental deposition to take place before the Hearing after Trinity has had sufficient time to review Mr. McGraw's late produced-documents.

Finally, if the Court is inclined to proceed with the Hearing as scheduled, order that Peteski is prohibited from opposing Trinity's claim that the Debtor lacked corporate authority to institute the bankruptcy and issue a negative inference on the issue of corporate authority in light of Peteski's discovery gamesmanship.

## V.
## CONCLUSION

Where a party's conduct amounts to bad faith and undermines the judicial process, courts *must* impose sanctions proportionate to the harm caused. Here, the harm is substantial: Peteski's selective withholding of relevant documents is depriving Trinity and this court of the most probative evidence in this case. The only way to restore fairness is to require full production, shift the resulting costs, and impose a negative inference warranted by Peteski's discovery antics. Trinity further requests this Court enter an order granting Trinity such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

DATED: August 26, 2025  Respectfully submitted by:

*/s/ Mark C. Moore*
Holland N. O'Neil (TX 14864700)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Mark C. Moore (TX 24074751)
Stephanie L. McPhail (TX 24104104)
Davis G. Mosmeyer III (TX 24106346)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
rslovak@foley.com
slockhart@foley.com
mmoore@foley.com
smcphail@foley.com
dmosmeyer@foley.com

-and-

Rajiv Dharnidharka
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
555 California Steet, Suite 1700
San Francisco, CA 94104
Telephone: (415) 434-4484
Facsimile: (415) 434-4507
rajiv.dharnidharka@foley.com

-and-

Nora J. McGuffey (TX 24121000)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4366
Facsimile: (312) 832-4700
nora.mcguffey@foley.com

***Attorneys for Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network and TCT Ministries, Inc.***

# CERTIFICATE OF GOOD FAITH CONFERENCE

Except as noted above, the undersigned counsel to Trinity hereby certifies that Trinity has attempted in good faith to confer with the Debtor's counsel and Peteski's counsel in an effort to resolve the dispute without court action as set forth above.

*/s/ Mark C. Moore*
Mark C. Moore

# CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Nora J. McGuffey*
Nora J. McGuffey