| | |
|---|---|
| Carl C. Butzer (TX Bar No. 03545900)<br>Vienna F. Anaya (TX Bar No. 24091225)<br>William T. Farmer (TX Bar No. 24127156)<br>**Jackson Walker LLP**<br>2323 Ross Avenue, Suite 600<br>Dallas, TX 75201<br>Telephone: (214) 953-6047<br>Email: cbutzer@jw.com<br>Email: vanaya@jw.com<br>Email: wfarmer@jw.com | Charles L. Babcock (TX Bar No. 01479500)<br>Bruce J. Ruzinsky (TX Bar No. 17439425)<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>Emily Meraia (TX Bar No. 24129307)<br>**Jackson Walker LLP**<br>1401 McKinney Street, Suite 1900<br>Houston, TX 77010<br>Telephone: (713) 752-4200<br>Email: bruzinsky@jw.com<br>Email: cbabcock@jw.com<br>Email: mcavenaugh@jw.com |

*Counsel for Peteski Productions, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>MERIT STREET MEDIA, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-80156 (SWE)<br><br>**Re: Docket Nos. 303 & 304** |

**PETESKI PRODUCTIONS, INC.'S
OBJECTION TO (A) TRINITY BROADCASTING OF TEXAS, INC.
AND TCT MINISTRIES, INC.'S EMERGENCY MOTION FOR CONTEMPT AND
SANCTIONS AGAINST PETESKI PRODUCTIONS, INC.; AND (B) PROFESSIONAL
BULL RIDERS LLC'S JOINDER IN SUPPORT OF TRINITY BROADCASTING
OF TEXAS, INC. AND TCT MINISTRIES, INC.'S EMERGENCY MOTION
FOR CONTEMPT AND SANCTIONS AGAINST PETESKI PRODUCTIONS, INC.**

Peteski Productions, Inc. ("Peteski"), a majority equity owner, creditor, and the DIP Lender in the above-referenced case (the "Bankruptcy Case"), files this Objection (the "Objection") to: (A) *Trinity Broadcasting of Texas, Inc. and TCT Ministries, Inc.'s Emergency Motion for Contempt and Sanctions Against Peteski Productions, Inc.* [Docket No. 303] (the "Motion") filed by Trinity Broadcasting of Texas, Inc. ("TBN") and TCT Ministries, Inc ("TCT" and collectively,

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

"Trinity"), and (B) *Professional Bull Riders LLC's Joinder in Support of Trinity Broadcasting of Texas, Inc. and TCT ministries, Inc.'s Emergency Motion for Contempt and Sanctions Against Peteski Productions, Inc.* [Docket No. 304] (the "PBR Joinder") filed by Professional Bull Riders LLC ("PBR" and together with Trinity, the "Movants"), and respectfully states as follows:

**Preliminary Statement**

1. Trinity (and PBR in its PBR Joinder) filed a premature motion to this Court riddled with misrepresentations and mischaracterizations of Peteski's earnest efforts in this proceeding. To date, Peteski has reviewed over 45,000 documents resulting from the application of Movants' search terms, to each of Movants' requested custodians, across the time period set by Movants. That Peteski's resulting production volume is disappointing to Movants should not be surprising, as Peteski has been clear for over a month that the discovery requests will not yield a large number of responsive documents—despite the monumental effort required by the breadth of the requests. As explained in detail below, Peteski has expended incredible time and resources complying with Movants' discovery requests since the Court entered its order just 13 days ago. ***As of this filing, Peteski's production is complete.***

2. Regardless of the immense—and successful—effort by Peteski to complete its productions prior to the depositions of its corporate representative (Trinity cannot say the same, see *infra*) and Dr. McGraw, Peteski consents to one of the forms of relief requested in Trinity's Motion and PBR's Joinder: a brief adjournment and continuance of the September 2 hearing. A short continuance will remove any question of alleged prejudice caused to Trinity or PBR.

3. For any and all of the reasons described below, Trinity's Motion and PBR's Joinder should be denied.

2

## Background

4. Below is a brief timeline of the relevant dates leading to the discovery at the core of so many disputes in this case:

**A.  The Movants delayed pursuit and conferral on discovery.**

5. **July 2, 2025**: Merit Street Media, Inc. filed for relief under chapter 11 of Title 11 the Bankruptcy Code.

6. **July 3, 2025**: The Court held certain first day hearings on various matters and entered various orders.

7. **July 11, 2025**: Trinity served its First Set of Requests for Production of Documents to Peteski, First Set of Interrogatories to Peteski, and Notice of Intent to Take the Oral and Videotaped Deposition of the Corporate Representative of Peteski (the "Trinity Requests").

8. **July 17, 2025**: PBR served its First Requests for Production of Documents to Peteski (the "First PBR Requests").

9. **July 21, 2025:** There is no dispute that Peteski timely responded and objected to the First PBR Requests and Trinity Requests (collectively, the "Requests") on July 21, 2025, in which it confirmed that it "will produce non-privileged documents responsive" to many of the Requests "subject to entry of a mutually agreeable protective order." *See Trinity MTC Joinder*, at ¶ 11; *see also PBR MTC*, at ¶ 14. With respect to remaining Requests, Peteski's responses explicitly invited both Trinity and PBR to confer on the Requests and Peteski's objections, stating "Peteski is willing to meet and confer about this Request." *See Trinity MTC Joinder*, at Ex. 3 [Docket No. 206-3].

10. For over a week, neither PBR nor Trinity responded to or otherwise acknowledged Peteski's objections, nor made any efforts to discuss or file a protective order to facilitate the

3

production of documents. Instead, the Movants let the Requests lie dormant in their objected-to state.

11. **July 30, 2025:** Eight days after receiving Peteski's Objections and Responses, PBR demanded an update on Peteski's production related to the First PBR Requests.

12. **August 1, 2025:** PBR filed its *Partial Joinder of Professional Bull Riders LLC in Support of Trinity Broadcasting of Texas, Inc. and TCT ministries, Inc.'s Emergency Motion for an Order: (I) Dismissing Debtor's Chapter 11 Case, (II) Converting the Case to Chapter 7, or (III) Appointing a Chapter 11 Trustee* [Docket No. 151] (the "PBR MTD Joinder").

13. **August 5, 2025:** In a conference on August 5, 2025, Peteski *again* informed counsel for PBR (Alyssa Moscarino and James Walsh) that Peteski was prepared to produce non-privileged documents responsive to certain of PBR's Requests, but that Peteski was still waiting for entry of a protective order prior to producing the documents. Additionally, counsel for Peteski and PBR finally conferred on Peteski's objections to PBR's Requests—for the first time. PBR also served additional discovery requests on Peteski that day (the "Second PBR Requests").

14. **August 6, 2025**: On August 6, 2025, counsel for PBR (James Walsh) informed Peteski's counsel that he would provide a list of high priority requests for production later that day. Unfortunately, rather than continue progressing with Peteski and providing the list as promised, PBR filed its Motion to Compel against Debtor and Peteski. *See* Docket No. 173. The Motion to Compel came as a surprise to Peteski, as the parties were making substantive progress on individual Requests, and counsel for Peteski already assured PBR that non-privileged, responsive documents related to DIP financing would be forthcoming upon entry of a protective order.

4

15. **August 8, 2025**: The Court held a status conference on the PBR Motion to Compel and determined that he would let the conferral process play out before setting the PBR Motion to Compel for hearing.

16. **August 9, 2025**: *For over three weeks after Peteski responded to the Trinity Requests, Trinity did not respond to or otherwise acknowledge Peteski's objections, nor did it make any reasonable effort to discuss or agree to a protective order to facilitate the production of documents.* See *Trinity MTC Joinder*, at ¶ 12 (confirming that "counsel for Trinity conferred with counsel for the Debtor regarding deficiencies" but not mentioning counsel to Peteski), ¶ 8 (confirming that "[o]n August 9, 2025, counsel for Trinity, counsel for PBR, and counsel for Peteski, McGraw, Green Chair, and (apparently) Envoy Media Co. engaged in an approximately three-hour video conference to discuss discovery issues."). Instead, Trinity—for even longer than PBR—let its Requests lie dormant in their objected-to state. *Trinity never sought to meet and confer with Peteski prior to this meeting.*

17. **August 12, 2025:** Trinity filed its Joinder to PBR's Motion to Compel, which was the first time Trinity included a list of search terms that were *never provided* to Peteski prior to the filing of the Trinity MTC Joinder. That same day the Court set the PBR Motion to Compel and Trinity Motion to Compel Joinder for hearing. *See Notice of Hearing* [Docket No. 207]. Indeed, if Trinity *had* provided those terms to Peteski before their filing, Trinity's allegations would have been moot, as Peteski quickly agreed to utilize those terms upon receiving them via Trinity *filing them* (and prior to the Court's hearing on PBR's Motion to Compel).

18. **August 14, 2025**: The Court heard PBR's Motion to Compel and Trinity's Joinder.

5

**B. The Movants raised only two concerns with Peteski's production at the Motion to Compel Hearing, both of which have been addressed.**

19. At the Motion to Compel Hearing on August 14, 2025, counsel for PBR outlined its few remaining issues with Debtor and Peteski into four categories—only two of which involved Peteski. Motion to Compel Hearing Tr. 10:1-17 (N. Secco speaking).

20. In discussing the Movants' demand for the collection, search, and review of the personal text messages and emails of Dr. McGraw's sons, Peteski's counsel made clear that there would be a large burden associated with that process, stating:

> It is [an] enormous burden to search terms and then on short notice review whatever documents there are. And the majority of them, and I know personally from involved in reviewing the last couple of days, there are thousands of documents and nothing relevant. . . . Anybody that you send and have search terms, ***they're going to hit a bunch of things that have nothing to do with this***, I mean, just by applying search terms. And you thereby get thousands of documents you got to review to make sure that you haven't missed anything. So that's the concern I raise. But no, I've not and I don't believe anybody at our firm has reviewed Jordan or Jay's emails or text messages [yet].

Motion to Compel Hearing Tr. 22:14-18; 22:25-23:6 (C. Babcock speaking) (emphasis added).

21. To be clear, at no point did Peteski ever represent that the number of ***responsive documents*** would be voluminous, as Movants imply. Rather, counsel for Peteski was emphasizing the ***voluminous number of documents that would have to be reviewed*** for responsive communications. Nevertheless, the Court overruled Peteski's objections and ordered the collection, search, review, and production of responsive emails and text messages of Jay and Jordan McGraw, which Peteski promptly began work on. Ultimately, however, the prediction of minimal responsive documents from the collection and review of a huge number of documents came true. *See infra*.

6

22. After addressing all four categories of PBR's concerns, the Court asked Trinity if they had any remaining or unique concerns regarding discovery from either Debtor or Peteski. Counsel for Trinity stated Trinity had "one primary issue" in addition, which pertained solely to the deposition of the corporate representative of Debtor. *See* Motion to Compel Hearing Tr. 34:2-7. Trinity raised no additional grounds against Peteski regarding document production at the Motion to Compel Hearing.

### C. Peteski complied with Court's order and continued to produce discovery in good faith, at increasing cost and effort.

23. Counsel for Peteski immediately began efforts to comply with the Court's order of two new custodians, Jay and Jordan McGraw, as well as an additional custodian ordered for Debtors who was better suited for Peteski collection and review, Phil McIntyre.

24. Appearing before the Court the very next day, Peteski's counsel represented to the Court that efforts were underway to collect documents from the new custodians ordered by the Court the day prior, but that the collection of the documents themselves may take some time. *See* Motion to Continue Hearing Tr. 28:8-14.

25. The collection of Jordan McGraw's communications began the weekend of August 16, 2025, with a technician flying to California to perform an on-site collection.[2] The collection of the emails and texts of Mr. McIntyre began the same weekend on August 16, 2025. The collection of Jay McGraw's communications commenced the day he returned from out of town on August 20, 2025.

---

[2] As Peteski communicated to Trinity, there were technology difficulties in collecting the full file-system extraction on Jordan McGraw's phone. The 1.2 terabytes of data extracted at the California collection were unable to then be processed in Dallas, Texas. Additional attempts were made to remotely acquire the message files through iCloud backups, use of a software called Cellebrite, then one called Axiom, then one called Elcomsoft—each encountering issues in collection, potentially related to an iOS software update on the phone. The iPhone was then physically shipped from California to Dallas, Texas, when a technician was finally able to successfully extract and process the messages for review commencing on August 26, 2026.

7

26. In tandem with this increased scope of collection and review, Peteski's counsel continued to diligently review the remaining categories of documents requested, making several additional productions over the next week.

27. To date, over 1.1 million total documents and communications have been collected by Peteski. After applying the Movants' requested time period and the Movants' provided search terms, over 45,600 documents have been reviewed by Peteski's counsel, with 1,788 responsive documents produced by Peteski. This is the exact predicament Peteski previewed in its objections to the Requests and to Trinity's Motion to Compel: *only 3.9% of the documents that hit on the Movants' requested custodians and search terms—and were thus reviewed—are responsive, non-privileged documents*. In other words, the relatively small volume of documents produced by Peteski is in no way an indication of a small *review*. It is instead an illustration of why Peteski objected in the first place. But nonetheless, Peteski still took on the collection, search, and review of these documents in accordance with Movants' specific requests and instructions.

28. Below is a chart of the thirteen productions made by Peteski, and the one production made by Envoy.

| Date Produced | First Bates Value | Last Bates Value | Document Count | Page Count | Types of Documents |
|---|---|---|---|---|---|
| 8/8/2025 | PETESKI0000001 | PETESKI0001098 | 136 | 1098 | • DIP negotiation communications with Debtor |
| 8/13/2025 | PETESKI0001099 | PETESKI0001183 | 9 | 85 | • Formation docs for Peteski, Envoy, and Green Chair |
| 8/17/2025 | PETESKI0001184 | PETESKI0001296 | 45 | 113 | • Dr. McGraw emails<br>• Dr. McGraw texts |
| 8/18/2025 | PETESKI0001297 | PETESKI0001380 | 28 | 84 | • Dr. McGraw emails<br>• Dr. McGraw texts |

8

| Date Produced | First Bates Value | Last Bates Value | Document Count | Page Count | Types of Documents |
|---|---|---|---|---|---|
| 8/20/2025 | PETESKI0001381 | PETESKI0001775 | 127 | 395 | • Independent Contractor communications |
| 8/20/2025 | PETESKI0001776 | PETESKI0003126 | 328 | 1351 | • Dr. McGraw emails |
| 8/22/2025 | PETESKI0003127 | PETESKI0003131 | 4 | 5 | • Private Investigator (hired by Trinity) related pictures and video |
| 8/22/2025 | PETESKI0003132 | PETESKI0003973 | 333 | 842 | • Dr. McGraw emails<br>• Dr. McGraw texts<br>• Jordan McGraw emails (@Mac… account)<br>• McIntyre emails<br>• Jay McGraw emails review complete (of @aol… account), no responsive documents found |
| 8/24/2025 | PETESKI0003974 | PETESKI0004170 | 37 | 197 | • McIntyre texts |
| 8/26/2025 | PETESKI0004171 | PETESKI0006004 | 619 | 1834 | • Dr. McGraw texts<br>• Dr. McGraw emails<br>• McIntyre emails<br>• Jay McGraw texts<br>• McIntyre texts<br>• Jay McGraw emails (@stage2… account)<br>• Jordan McGraw texts<br>• Engagement letter |
| 8/26/2025 | ENVOY0000001 | ENVOY0000162 | 22 | 162 | • Envoy documents from Envoy server |
| 8/27/2025 | PETESKI0006005 | PETESKI0006227 | 96 | 223 | • McIntyre emails<br>• Jordan McGraw texts<br>• Jordan McGraw emails (@mcgaw… |

9

| Date Produced | First Bates Value | Last Bates Value | Document Count | Page Count | Types of Documents |
|---|---|---|---|---|---|
| | | | | | account)<br>• Documents responsive to expanded searches agreed to with TBN on 8/26 |
| 8/27/2025 | PubRecord0000001 | PubRecord0000627 | 3 | 627 | • IMBD screenshots |
| 8/27/2025 | PETESKI0006228 | PETESKI0006234 | 1 | 7 | • McIntyre agreement with Trinity |

**D.    Movants continued their campaign against Peteski with ultimatums instead of good faith conferral.**

29.    Counsel for Peteski and Trinity discussed Trinity's remaining concerns of Peteski's production via videoconference on the morning of August 26, 2025. Peteski confirmed that: (1) additional productions were forthcoming that day to complete the production of all Dr. McGraw communications and all McIntyre communications; and (2) that the documents remaining for production on August 27, 2025 would be any responsive Jordan McGraw text messages and Jordan McGraw emails from his secondary account (@mcgraw… account).

30.    Counsel also conferred on the collection and search process related to the Requests for Envoy related documents. To that end, shortly after that Zoom call, counsel for Peteski further confirmed, "We'll agree to produce non-privileged documents from the 4 custodians containing the term Envoy that are responsive to RFP Nos. 51 (TBN) and 32 (PBR). We anticipate that the bulk of those documents will be produced this evening, and I believe we'll finish the production of those documents in the morning." *See* Trinity's Motion, Exhibit B at 3. Trinity counsel then asked specifically for the "projected volume of **Envoy production**," to which Peteski's counsel responded with an estimation of "less than 200 documents." *See id.* at 2 (emphasis added).

10

31. Counsel for Trinity, clearly preparing for its Motion, them ***completely mischaracterized Peteski's counsel's statement***, responding, "Are you saying less than 200 additional documents [are remaining for production], including Envoy-related documents . . . ?" *Id.* at 1. Clearly, that was not what Peteski's counsel was saying. This was a blatant distortion made in preparation to file this Motion with the Court.

32. Despite the representations of the few remaining, but small, forthcoming productions, Trinity counsel informed Peteski at 4:14 p.m. on August 26 that it would be filing a motion to seek "emergency relief from the Court" unless Peteski would agree to one of their proposed "alternatives": (1) a one week adjournment of the hearing, with Dr. McGraw's deposition rescheduled from August 28 to September 2 or 3; or (2) a demand to re-depose Dr. McGraw a second time, without any limitations on time or scope to documents produced after a certain point. *See* Trinity's Exhibit 1. The correspondence gave Peteski ***only two hours to respond***.

33. Two hours to respond was unreasonable given the primary relief sought—an adjournment of the hearing. As Trinity's sophisticated counsel knows well, adjourning a hearing could not be unilaterally agreed to by Peteski—many other interested parties would need to be involved. Not to mention real logistical issues regarding administration and continued funding of the case for an additional week.

34. Despite counsel for Peteski calling counsel for Trinity to again represent that its productions would be complete by the next day, Trinity filed its Motion at 6:28 p.m. on August 26.

35. Peteski's counsel spent hours last night conferring with its client to assess potential adjournment. Peteski then devoted hours this morning to conferring with other parties in an attempt to find a mutually workable method to adjourn the September 2 Hearing. Unfortunately, despite

11

Peteski's willingness to adjourn the hearing for one week, a mutually agreed method for accomplishing the adjournment could not be agreed among the parties.

36. Peteski agrees to Trinity's request to adjourn the hearing to foreclose any doubt that Trinity (or PBR) suffers any prejudice in preparing for the September 2 Hearing. **However**, and regardless of Peteski's consent to a brief adjournment, there is no ground for the extreme and improper sanctions sought by Trinity in its Motion.

### Objection

**A.     Peteski's conduct in no way meets the legal requirements for sanctions.**

37. In addressing a request for sanctions under Federal Rule of Civil Procedure 37(b), "[c]ourts in the Fifth Circuit have used a four-part test to determine if the exclusion of evidence is an appropriate sanction for violating a discovery order." *In re Johns*, No. 21-60010-RLJ7, 2023 WL 6798629, at *5 (Bankr. N.D. Tex. Oct. 13, 2023) (citing *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 390 (5th Cir. 2009) (in turn citing *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). "The test considers: (1) the explanation for the party's failure to comply with the discovery order, (2) prejudice to the opposing party, (3) the possibility of curing the prejudice by granting a continuance, and (4) the importance of the evidence." *Id.* (citing *Barrett*, 95 F.3d at 380). Trinity and PBR's request for sanction here fails this test.

38. With respect to element one, Peteski has exerted great effort in consistent good faith to comply with the Requests to date, with production complete by end of day today (August 27) and prior to the depositions of Dr. McGraw and its corporate representative. To get to this completion point, Peteski undertook every effort possible to collect, review, and produce the requested documents as expeditiously as possible since this Court issued its order less than two weeks ago, entailing: the collection the documents—including text messages, which require physical phone collection, imaging, and tedious processing—of three new custodians; attorney

review of over 22,200 *new* documents (in addition to the tens of thousands of documents then also being reviewed), with review performed by 13 lawyers, as well as technical support from countless staff members; producing over 1,500 actually responsive documents since August 14[3]; and participating in numerous meet and confers with Trinity and PBR counsel. All of this was done while simultaneously: deposing two Trinity corporate representatives (both of whom were inadequately prepared on their designated topics); moving to compel a deposition of a PBR corporate representative after PBR's outright refusal to provide a witness (which this Court granted yesterday) and now preparing to take the same; preparing its own corporate representative (as required) for deposition; preparing Dr. McGraw for a deposition (that has always been agreed to); reviewing inbound discovery from MSM and Trinity (who dumped thousands of irrelevant documents, including *thousands* the night before their own corporate representative depositions); and preparing for the September 2 Hearing on the dispositive motion Trinity maintains—despite the fact that Debtor consented to the very relief Trinity seeks in its Motion to Dismiss. Any "failure" of Peteski to produce documents earlier than it did was not due to lack of diligence or good faith—but was instead a result of limitations of human attorneys, technology processing, and the fact that there are only 24 hours in a day. *See In re Johns*, 2023 WL 6798629.

39. Elements two and three—regarding any prejudice to the parties or possibility of a continuance—are moot, as Peteski is willing to agree to an adjournment and continuance of the hearing date to avoid any possibility of prejudice to the parties. *See id.* Peteski's production is complete today, August 27, 2025. Any hypothetical prejudice to the parties for the September 2 Hearing is eliminated by an uncontested continuance.

---

[3] In lieu of a "doc dump," which appears to have been provided by Trinity in recent days.

40. Similarly, with respect to the last element, the final productions by Peteski contain documents of "lesser" importance. *See In re Johns*, 2023 WL 6798629. All documents from Dr. McGraw email and texts were produced by August 26, 2026, as well as documents from Jordan McGraw's primary email account, Jay McGraw's personal texts and emails, and the vast majority of Phil McIntyre's texts. All that was produced today were 100 documents: 93 of which were text message files from Jordan McGraw (who has minimal involvement in in Peteski beyond providing music to Peteski or Merit Street produced content, and whose phone data processing was delayed, *see* footnote 2 *supra*); two text message files of Phil McIntyre, one agreement related to Envoy, three public documents from the IMDb website, and one agreement between Phil McIntrye and Trinity (which Trinity would already have). The importance of these documents produced today, if any, is low, and surely does not rise to the level of warranting sanctions.

41. To the extent Trinity argues that it does not have sufficient time to prepare for its deposition of Dr. McGraw or Peteski's corporate representative, Trinity's own conduct belies the sincerity of that argument. In fact, Trinity produced *1,092 documents* on August 23; another *2,960 documents* on August 24—the evening before the deposition of its first corporate representative; an additional *1,086 documents* on August 25, after the first deposition concluded and on the eve of the deposition of its second corporate representative. That Trinity now complains it is somehow prejudiced in preparing for the Thursday deposition of Dr. McGraw and Friday deposition of the corporate representative of Peteski due to insufficient time to review documents is hypocritical, at best.

42. In sum, Peteski's diligence and efforts in discovery do not meet the high legal standard required for any sanctions to be awarded. The Motion and PBR's Joinder should be denied.

**B.    Trinity and PBR's requested sanctions are improper.**

43.    Tellingly, one of the sanctions requested by Trinity and PBR is "a negative inference on the issue of corporate authority[.]" *See* Mot. at 11. As the Court is well aware, Peteski is not the Debtor. And it is the corporate authority of *Debtor* that is set for hearing before the Court. While Peteski is abundantly confident that Debtor had the corporate authority to file its bankruptcy, Peteski is not relevant to that inquiry. Thus, to request a penalty against Debtor for the alleged discovery conduct of a third party is entirely improper and underscores the nefarious and improper nature of Trinity and PBR's request. *See In re Johns*, WL 6798629, at *6 (noting that courts should consider the involvement (or non-involvement) of the party the sanction seeks to "punish" in determining whether the request is a "just sanction"). This requested sanction, as well as the others, should be summarily denied.

## Reservation of Rights

44.    Nothing in this Objection should be construed as Peteski waiving any rights, objections, arguments, interests, or claims, or consenting to any issues or matters discussed herein. Peteski reserves the right to amend, modify, or supplement this Objection at any time.

## Conclusion

45.    Despite Trinity and PBR's efforts to misrepresent to this Court (and, obviously, the press) the efforts of Peteski, it is undeniable that Peteski has expended enormous effort, time, and resources in meeting its discovery obligations. Peteski made clear from its very first response to these Requests over a month ago that the Requests are overly broad, incredibly burdensome, and yield only a very small number of actually responsive and relevant documents. Nonetheless, Peteski was ordered to pick up that gauntlet on August 14, 2025, and it has been tirelessly working to abide by that order and the expansive discovery for the past 13 days. Trinity and PBR has all of the documents they asked for that were located in the collection of personal emails and texts of

15

*every single one of the custodians they requested*, over the *time period they requested*, culled by application of the *search terms they requested*, and reviewed for responsive need to their *over one hundred requests for production*. Peteski has fulfilled its discovery obligations, but is willing to consent to a short continuance of the hearing to avoid even the appearance of any prejudice against any party. No sanctions should be awarded.

WHEREFORE, Peteski respectfully requests that the Court (a) deny the relief requested in the Motion and the PBR Joinder; and (b) granting such other and further relief as may be just and proper.

Dated: August 27, 2025
Dallas, Texas

/s/ Charles L. Babcock
**JACKSON WALKER LLP**
Charles L. Babcock (TX Bar No. 01479500)
Bruce J. Ruzinsky (TX Bar No. 17439425)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Emily Meraia (TX Bar No. 24129307)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: cbabcock@jw.com
Email: bruzinsky@jw.com
Email: mcavenaugh@jw.com
Email: emeraia@jw.com


Carl C. Butzer (TX Bar No. 03545900)
Vienna F. Anaya (TX Bar No. 24091225)
William T. Farmer (TX Bar No. 24127156)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6047
Email: cbutzer@jw.com
Email: vanaya@jw.com
Email: wfarmer@jw.com

*Counsel for Peteski Productions, Inc.*

**Certificate of Service**

      I certify that on August 27, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

      */s/ Charles L. Babcock*
      Charles L. Babcock