SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Jeri Leigh Miller (24102176)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:        tom.califano@sidley.com
              jeri.miller@sidley.com

SIDLEY AUSTIN LLP
Stephen E. Hessler (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:        shessler@sidley.com
              pventer@sidley.com

*Attorneys for the Debtor*
*and Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MERIT STREET MEDIA, INC.,[1] | Case No. 25-80156 (SWE) |
| Debtor. | |

## CHAPTER 11 PLAN OF
## MERIT STREET MEDIA, INC.

Dated: September 15, 2025

---

[1] The last four digits of the Debtor's federal tax identification number are 8990.  The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

## <u>TABLE OF CONTENTS</u>

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

   A.   Defined Terms .......................................................................... 1

   B.   Rules of Interpretation ................................................. 16

   C.   Computation of Time .................................................... 17

   D.   Reference to Monetary Figures ..................................... 17

   E.   Reference to the Debtor ................................................ 17

   F.   Controlling Document ................................................... 17

ARTICLE II. DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, AND PRIORITY TAX CLAIMS ................................................................................. 17

   A.   DIP Claims ................................................................... 17

   B.   General Administrative Expense Claims ....................... 18

   C.   Professional Claims ...................................................... 19

       1.   Final Fee Applications and Payment of Professional Claims ................... 19

       2.   Professional Claim Reserve Account ..................... 19

       3.   Post-Confirmation Date Fees and Expenses ........... 19

   D.   Priority Tax Claims ...................................................... 20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 20

   A.   Classification of Claims and Interests ........................... 20

   B.   Treatment of Claims and Interests ................................ 21

       1.   Class 1 – Other Secured Claims ............................ 21

       2.   Class 2 – Other Priority Claims ............................ 22

       3.   Class 3 – Prepetition Bridge Loan Claims ............. 22

       4.   Class 4 – Unsecured Notes Claims ........................ 22

       5.   Class 5 – Trinity Claims ....................................... 23

       6.   Class 6 – Contract Litigation Claims ..................... 24

       7.   Class 7 – General Unsecured Claims ..................... 24

       8.   Class 8 – Convenience Claims ............................... 25

       9.   Class 9 – Section 510(b) Claims ........................... 25

       10. Class 10 – Existing Equity Interests ...................... 25

   C.   Special Provision Governing Unimpaired Claims ........... 26

   D.   Elimination of Vacant Classes ...................................... 26

   E.   Acceptance or Rejection of this Plan ............................. 26

       1.   Presumed Acceptance of this Plan ........................ 26

2.   Voting Classes ............................................................................ 26

F.   Confirmation and Section 1129(b) of the Bankruptcy Code ....................................... 26

G.   Subordination of Claims ................................................................................. 27

H.   Subordination Agreements.............................................................................. 27

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ........................ 27

A.   General Settlement of Claims and Interests ................................................... 27

B.   Restructuring Transactions ............................................................................. 29

1.   Media Sale ........................................................................................ 29

2.   Litigation Sale Transaction ............................................................... 29

3.   Litigation Trust Transaction .............................................................. 30

C.   Litigation Trust ............................................................................................... 30

1.   Interest in the Litigation Trust ........................................................... 30

2.   Creation and Governance of the Litigation Trust .............................. 30

3.   Litigation Trustee and Litigation Trust Agreement ........................... 31

4.   Cooperation of Plan Administrator .................................................... 31

5.   Litigation Trust Causes of Action ...................................................... 31

6.   Litigation Trust Fees and Expenses ................................................... 32

7.   Tax Treatment .................................................................................... 32

8.   Termination and Dissolution of the Litigation Trust ......................... 33

9.   Single Satisfaction of Allowed Claims From Litigation Trust ........... 33

D.   Wind-Down ..................................................................................................... 33

1.   Appointment of Plan Administrator ................................................... 33

2.   Cooperation of Litigation Trustee ...................................................... 34

E.   Sources of Consideration for Plan Distributions ........................................... 34

F.   Cancellation of Existing Securities ................................................................ 35

G.   Corporate Action ............................................................................................ 35

H.   Effectuating Documents; Further Transactions. ............................................. 36

I.   Vesting of Assets in the Plan Administrator ................................................... 36

J.   Exemption from Certain Taxes and Fees ........................................................ 36

K.   Preservation of Causes of Action ................................................................... 37

L.   Authority to Act ............................................................................................. 37

M.   Fiduciary Duties ............................................................................................. 37

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ....................................................................................................................... 37

A.   Assumption and Rejection of Executory Contracts and/or Unexpired Leases .............. 37

B.    Claims Based on Rejection of Executory Contracts and/or Unexpired Leases ............. 38

C.    Preexisting Obligations to the Debtor Under Executory Contracts and/or
          Unexpired Leases ........................................................................................ 38

D.    D&O Liability Insurance Policies ................................................................... 38

E.    Reservation of Rights ..................................................................................... 39

F.    Contracts and Leases Entered Into After the Petition Date ........................... 39

G.    Modifications, Amendments, Supplements, Restatements, or Other
          Agreements ................................................................................................. 39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 39

A.    Timing and Calculation of Amounts to Be Distributed .................................. 39

B.    Disbursing Agent ........................................................................................... 40

C.    Rights and Powers of Disbursing Agent ......................................................... 40

D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ................... 40

          1.    Record Date for Distribution ..................................................... 40

          2.    Delivery of Distributions in General .......................................... 40

          3.    Undeliverable Distributions and Unclaimed Property ................. 40

          4.    Surrender of Canceled Instruments or Securities ....................... 41

E.    Manner of Payment ........................................................................................ 41

F.    Compliance with Tax Requirements ............................................................... 41

G.    Allocations ..................................................................................................... 42

H.    Foreign Currency Exchange Rates ................................................................. 42

I.    Setoffs and Recoupments ............................................................................... 42

J.    Minimum Cash Distributions ......................................................................... 43

K.    Claims Paid or Payable by Third Parties ........................................................ 43

          1.    Claims Paid by Third Parties ..................................................... 43

          2.    Claims Payable by Third Parties ................................................ 43

          3.    Applicability of Insurance Contracts ......................................... 43

L.    No Postpetition Interest on Claims ................................................................ 44

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
AND DISPUTED CLAIMS ............................................................................................. 44

A.    Allowance of Claims ...................................................................................... 44

B.    Claims Administration Responsibilities ......................................................... 44

C.    Estimation of Claims ...................................................................................... 44

D.    Adjustment to Claims Without Objection ....................................................... 45

E.    Time to File Objections to Claims .................................................................. 45

F.   Disputed Claims Process................................................................................. 45

G.   Disallowance of Claims or Interests .............................................................. 45

H.   Amendments to Proofs of Claim..................................................................... 46

I.   No Transfers of Claims After Effective Date ................................................ 46

J.   No Distributions Pending Allowance ............................................................. 46

K.   Distributions After Allowance....................................................................... 46

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS .............................................................................................................. 46

A.   Discharge of Claims and Termination of Interests ....................................... 46

B.   Release of Liens............................................................................................. 46

C.   Release of Claims and Causes of Action ...................................................... 47

     1.   Releases by the Debtor and Its Estate ................................................ 47

     2.   Release by Third Parties ..................................................................... 48

D.   Waiver of Statutory Limitations on Releases ................................................ 49

E.   Exculpation .................................................................................................... 49

F.   Gatekeeper Provision .................................................................................... 50

G.   Injunction ...................................................................................................... 50

H.   Binding Nature of the Plan ........................................................................... 51

I.   Reimbursement or Contribution .................................................................... 51

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THIS PLAN .......................................................................... 51

A.   Conditions Precedent to the Effective Date .................................................. 51

B.   Waiver of Conditions..................................................................................... 52

C.   Effect of Failure of Conditions ..................................................................... 52

D.   Substantial Consummation ............................................................................ 52

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ...... 52

A.   Modification and Amendments....................................................................... 52

B.   Effect of Confirmation on Modifications ...................................................... 52

C.   Revocation or Withdrawal of Plan ................................................................ 53

ARTICLE XI. RETENTION OF JURISDICTION ..................................................... 53

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................... 55

A.   Immediate Binding Effect............................................................................... 55

B.   Dissolution of the Creditors' Committee ....................................................... 55

C.   Additional Documents ................................................................................... 55

D.   Payment of Statutory Fees ............................................................................. 56

E.    Reservation of Rights..................................................................................................... 56

F.    Successors and Assigns................................................................................................. 56

G.    Notices ......................................................................................................................... 56

H.    Term of Injunctions or Stays........................................................................................ 57

I.    Entire Agreement .......................................................................................................... 58

J.    Exhibits and Annexes ................................................................................................... 58

K.    Non-Severability of Plan Provisions............................................................................. 58

L.    Governing Law ............................................................................................................. 58

M.    Waiver or Estoppel ....................................................................................................... 58

N.    Closing of Chapter 11 Case .......................................................................................... 59

Merit Street Media, Inc., as debtor and debtor in possession (the "<u>Debtor</u>") proposes this chapter 11 plan, including the exhibits hereto and the Plan Supplement (as may be amended or modified from time to time, the "<u>Plan</u>") for the resolution of the outstanding claims against, and equity interests in, the Debtor.  Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, risk factors, marketing process, a summary and analysis of this Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below.

"<u>Administrative Expense Claim(s)</u>" means a Claim for costs and expenses of administration of the Chapter 11 Case arising on or after the Petition Date and until and including the Effective Date that is allowable under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code that has not already been paid, including: (a) the actual and necessary costs and expenses of preserving the Estate and operating the Debtor's business; (b) the Professional Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"<u>Administrative Expense Claims Bar Date</u>" means the deadline for Filing requests for payment of Administrative Expense Claims, which:  (a) with respect to General Administrative Expense Claims other than those that were accrued in the ordinary course of business, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Claims, shall be forty-five (45) days after the Effective Date, unless otherwise ordered by the Court.

"<u>Affiliate(s)</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person or Entity that is not a Debtor, the term "Affiliate" shall apply to such Person or Entity as if the Person or Entity were a Debtor.

"<u>Allowed</u>" means a Claim or Interest (or portion thereof) that (a) is listed in the Schedules, which may be amended by the Debtor, as neither disputed, contingent, nor unliquidated and with respect to which no claim objection or contrary or superseding Proof of Claim has been Filed, and that has not been paid pursuant to an order of this Court or otherwise satisfied prior to the Effective Date; (b) is evidenced by a Proof of Claim Filed on or before the applicable Bar Date for which no objection has been Filed on or before the Claims Objection Deadline; (c) is not the subject of an objection to allowance that was Filed on or before the Claim Objection Deadline that has not been settled, waived, withdrawn, or denied pursuant to a Final Order; or (d) is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the Holder of such Claim or Interest and the Debtor, or (iii) pursuant to the terms of this Plan; <u>provided</u>, <u>however</u> that proofs of interest need not be Filed with respect to any Interest.  A Claim evidenced by a Proof of Claim

1

Filed after the applicable Bar Date shall not be Allowed for any purpose whatsoever absent entry of a Final Order allowing such late-Filed Claim.

"<u>Assumption and Assignment Notice</u>" means the notice to be sent to each non-Debtor counterparty to a relevant Executory Contract or Unexpired Lease regarding the potential assumption and assignment of certain contracts and the Debtor's calculation of the amount necessary to cure any monetary defaults under such contract, in accordance with the Bid Procedures Order.

"<u>Assumption and Assignment Procedures</u>" means the assumption and assignment procedures set forth in the in the Bid Procedures Order for Executory Contracts and Unexpired Leases.

"<u>Available Cash</u>" means the aggregate sum of, as applicable, (a) all Cash or Cash equivalents of the Debtor, including, without limitation, (i) any Net Sale Proceeds and (ii) all proceeds from the monetization, liquidation, and/or transaction of any kind on account of, or in connection with, any of the Debtor's assets to the extent not monetized or liquidated through the foregoing clauses (i)-(ii), *less* (b) (i) the amount of cash necessary to pay Allowed Administrative Expense Claims (excluding any Priority Tax Claims that will be paid in the ordinary course of business under this Plan), Allowed DIP Claims, if applicable, and Allowed Professional Fee Claims in accordance with the Plan, (ii) the GUC Recovery Pool, (iii) any Litigation Trust Funding, (iv) payment of all statutory fees payable under section 1930 of chapter 123 of title 28 of the United States Code, and (v) funding and maintenance of the Wind-Down Budget and any reserves required under the Plan, any agreement, or applicable law; *provided* that Available Cash shall not include Litigation Trust Proceeds.

"<u>Ballot</u>" means the applicable form or forms of ballots distributed to each Holder of an Impaired Claim entitled to vote on the Plan on which the Holder indicated either acceptance or rejection of the Plan and, where applicable, any election for such treatment under the Plan.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Case.

"<u>Bankruptcy Rule(s)</u>" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Court, each as amended from time to time.

"<u>Bar Date</u>" means, (a) with respect to any Entity that is not a Governmental Unit, September 12, 2025, and (b) with respect to a Governmental Unit, December 29, 2025, each of which were the dates set by the *Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Form and Manner for Filing Proofs of Claim; (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* [Docket No. 249] as the date by which Proofs of Claim must be Filed with respect to Claims other than Administrative Expense Claims or other Claims for which the Court enters an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim by such date.

"Bid Procedures" means those certain bidding procedures set forth as Exhibit 1 to the Bid Procedures Order, as such procedures may be amended from time to time thereafter in accordance with the Bid Procedures Order.

"Bid Procedures Order" means the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of a Stalking Horse Bidder, (C) Establishing Bid Deadlines and Scheduling Auction and Sale Hearing, and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; (II)(A) Authorizing the Sale of the Assets Free and Clear of All Encumbrances, and (B) Approving the Assumption and Assignment of the Assumed Contracts; and (III) Granting Related Relief* [Docket No. •].

"Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of Texas.

"Cash" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

"Causes of Action" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment; (b) claims under contracts or for breaches of duties imposed by law; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any claim under any state or foreign law, including, without limitation, any fraudulent transfer or similar claim.

"Chapter 11 Case" means the case filed by the Debtor under chapter 11 of the Bankruptcy Code under the caption *In re Merit Street Media, Inc.*, No. 25-80156 (SWE) pending in the Court.

"Claim(s)" means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

"Claim Objection Deadline" means the deadline for Filing an objection to any Claim, which deadline shall be three hundred sixty-five (365) days after the Effective Date, subject to any extensions approved upon presentment of an order by the Plan Administrator to the Court; *provided however*, that the Claim Objection Deadline shall not apply to any Claims Filed after the applicable Bar Date.

"Claims and Balloting Agent" means Epiq Corporate Restructuring LLC, the notice, claims, and solicitation agent retained by the Debtor in this Chapter 11 Case.

"Claims Register" means the official register of Claims maintained by the Claims and Balloting Agent.

"Class" means a category of Holders of Claims or Interests pursuant to sections 1122(a) and 1123(a) of the Bankruptcy Code.

"CM/ECF" means the Court's Case Management and Electronic Case Filing system.

"Conditions Precedent" has the meaning set forth in Article IX herein.

"Confirmation" means the entry of the Confirmation Order on the docket of this Chapter 11 Case.

"Confirmation Hearing" means the hearing(s) before the Court under section 1128 of the Bankruptcy Code at which the Debtor seeks entry of the Confirmation Order.

"Confirmation Order" means the order of the Court confirming this Plan under section 1129 of the Bankruptcy Code.

"Consummation" means the occurrence of the Effective Date.

"Contract Litigation Claims" means all Claims against the Debtor arising out of or relating to breach-of-contract litigation, including all Claims held by PBR against the Debtor.

"Convenience Claim" means a scheduled or filed General Unsecured Claim in amount of $100,000.00 or less; *provided*, that a holder of a General Unsecured Claim that is in an amount greater than $100,000 may voluntarily and irrevocably elect, as evidenced by checking the applicable box on such Holder's ballot, to have such Claim irrevocably reduced to an amount of $100,000 or less and treated as a Convenience Claim.

"Court" or "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

"Creditors' Committee" means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

"Cure" means payment of all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contracts or Unexpired Leases (or such lesser amount as may be agreed upon by the parties to the Executory Contract or Unexpired Lease) that are to be assumed and assigned by the Debtor pursuant to section 365 or 1123 of the Bankruptcy Code.

"Cure Notice" means one or more notices (and any supplements, modifications, or amendments thereto), including without limitation, the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Docket No. 155] and *Supplemental Notice of (I) Potential Assumption and Assignment Of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Docket No. 183].

"<u>D&O Liability Insurance Policies</u>" means all insurance policies that have been issued (or provide coverage) at any time to the Debtor (or any of their predecessors) for directors', managers', and officers' liability (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

"<u>Debtor</u>" has the meaning ascribed to it in the recitals.

"<u>Debtor-Related Matters</u>" means anything related to the Debtor (including the management, ownership, or operation thereof), the purchase, sale, amendment, or rescission of any Claim against or Interest in the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtor's in-or out-of-court restructuring efforts, the Debtor's intercompany transactions, the Chapter 11 Case and any related adversary proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Case, the DIP Documents, the Definitive Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.

"<u>Debtor Release</u>" means the release of the Debtor Released Parties as provided for in <u>Article VIII.C.</u>

"<u>Debtor Releasing Parties</u>" shall have the meaning ascribed to such term in <u>Article VIII.C.1</u> herein.

"<u>DIP Claims</u>" means all Claims held by the DIP Lender on account of, arising under or relating to the DIP Documents, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under the DIP Documents.

"<u>DIP Documents</u>" means the Secured DIP Documents and the Unsecured DIP Documents.

"<u>DIP Facilities</u>" means, collectively, the Secured DIP Facility and Unsecured DIP Facility.

"<u>DIP Lender</u>" means the "DIP Lender" as defined in the DIP Orders.

"<u>DIP Obligations</u>" means, collectively, the "<u>DIP Obligations</u>" as defined in the DIP Documents.

"DIP Orders" means (i) the *Interim Order (I) Authorizing Post-Petition Financing Secured by Senior Liens, (II) Authorizing the Debtor to Use Cash Collateral; (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. 35]; (ii) the *Final Order (I) Authorizing Post-Petition Financing Secured by Senior Liens, (II) Authorizing the Debtor to Use Cash Collateral; (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. •]; (iii) the *Second Interim Order (I) Authorizing Post-Petition Financing on an Unsecured Administrative Basis and (II) Granting Related Relief* [Docket No. 357]; and (iv) the *Final Order (I) Authorizing Post-Petition Financing on an Unsecured Administrative Basis and (II) Granting Related Relief* [Docket No. •].

"Disallowed" means a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan or a Final Order of the Court or of any other court of competent jurisdiction.

"Disbursing Agent" means, as applicable, the Debtor, the Plan Administrator, the Litigation Trustee, or such other Entity designated by the Debtor, the Plan Administrator, or Litigation Trustee to hold and disburse the applicable Plan Distributions to Holders of Allowed Claims, Allowed Interests, or other eligible Entities pursuant to the terms of this Plan.

"Disclosure Statement" means the disclosure statement for this Plan, filed contemporaneously herewith and incorporated herein by reference (as such may be amended, modified, or supplemented from time to time hereafter), including all exhibits and schedules thereto.

"Disclosure Statement Order" means one or more orders of the Bankruptcy Court approving the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of the Plan.

"Disputed" means a Claim or an Interest (or portion thereof), (a) that is neither an Allowed Claim nor a Disallowed Claim; (b) that is listed on the Schedules as "disputed," "unliquidated," or "contingent"; or (c) for which a timely objection to such Claim has been Filed, which objection has not been withdrawn or determined pursuant to a Final Order.

"Distribution Date" means the date or dates determined by the Disbursing Agent, upon which the Disbursing Agent shall make Plan Distributions in accordance with the terms of this Plan.

"Distribution Record Date" means the record date for purposes of making Plan Distributions under this Plan, which date shall be the Effective Date.

"Effective Date" means the date that is the first calendar Day after Confirmation on which all Conditions Precedent have been satisfied or waived in accordance with this Plan and the Confirmation Order.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

"Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"Estate" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

"Exculpated Parties" means, collectively, and in each case in their capacity as such: (a) the Debtor; (b) the independent director of the Debtor; and (c) the Creditors' Committee and its members.

"Exculpation" means the exculpation provision set forth in Article VIII.E hereof.

"Executory Contract" means a contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

"Existing Equity Interest(s)" means, collectively, the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtor and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (in each case whether or not arising under or in connection with any employment agreement).

"Federal Judgment Rate" means the federal judgment rate in effect as of the Petition Date.

"File," "Filed," or "Filing" means file, filed, or filing with the Court or its authorized designee in this Chapter 11 Case.

"Final Order" means an order or judgment, as applicable, of the Court or other court of competent jurisdiction, with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulting in no modification of such order or judgment, or has been otherwise dismissed with prejudice.

"General Administrative Expense Claim(s)" means an Administrative Expense Claim other than a Professional Claim.

"General Unsecured Claim(s)" means an unsecured claim, including any Lender Deficiency Claim or any deficiency Claim under section 506(a) of the Bankruptcy Code on account of an Other Secured Claim, that is not entitled to priority under the Bankruptcy Code and that is not an Unsecured Notes Claim, Trinity Claim, or Contract Litigation Claim.

"Global Settlement" means the settlement by and among the Debtor, the DIP Lender, and the Creditors' Committee which settlement is incorporated into the terms of this Plan.

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"GUC Recovery Pool" means payments made by the DIP Lender to the Debtor on the Effective Date solely for the benefit of Holders of Allowed Non-Lender Unsecured Claims and Allowed Convenience Claims, as described more fully in Article IV.A hereof.

"Holder(s)" means an Entity holding a Claim or Interest, as applicable.

"Impaired" means a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Insurance Contracts" means all insurance policies, including the D&O Liability Insurance Policies, that have been issued (or provide coverage) at any time to any of the Debtor (or any of their predecessors) and all agreements, documents, or instruments relating thereto.

"Insurer" means any company or other entity that issued an Insurance Contract and includes any third-party administrator of or for any Insurance Contract, along with any predecessors, successors, and/or Affiliates thereof.

"Interest(s)" means (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor that existed immediately prior to the Petition Date, including all units, shares, common stock, preferred stock, membership interests, and other instruments evidencing any fixed or contingent ownership in the Debtor or any rights to purchase or demand the issuance of any of the foregoing (including options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, or convertible, exercisable, or exchangeable securities); or (b) any other agreement, arrangement, or commitment of any character relating to, or whose value is related to, any of the foregoing.

"IRS" means the United States Internal Revenue Service.

"Lender Deficiency Claim(s)" means any deficiency Claim(s) on account of the Prepetition Bridge Loan Claims and the DIP Claims.

"Lender Unsecured Notes Claim" means an Unsecured Notes Claim that is held by Peteski (or its assignee or designee).

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"Litigation Advisory Committee" means the advisory committee that shall advise the Litigation Trustee, which shall be comprised of the following members: (1) the Plan Administrator and (2) two (2) representatives appointed by the Creditors' Committee.

"Litigation Assets" means (i) all Causes of Action of the Debtor or the Debtor's Estate against Trinity, PBR, or their respective Related Parties; (ii) all Causes of Action of the Debtor arising in connection with the Debtor and relating to any act or omission of Trinity, PBR, or their respective Related Parties.

"Litigation Sale" means the sale of all or substantially all of the Litigation Assets under the relevant transaction documents pursuant to the terms of the Bid Procedures Order.

"Litigation Trust" means the trust that may be created on the Effective Date pursuant to the Litigation Trust Agreement and in accordance with the terms of this Plan.

"Litigation Trust Agreement" means the trust agreement by and among the Debtor and the Litigation Trustee that, among other things, establishes the Litigation Trust and describes the powers, duties, and responsibilities of the Litigation Trustee, substantially in the form to be included in the Plan Supplement and consistent with Article IV.C of the Plan.

"Litigation Trust Assets" means the Litigation Trust Causes of Action and any other assets transferred to the Litigation Trust.

"Litigation Trust Causes of Action" means (i) all Causes of Action of the Debtor or the Debtor's Estate against Trinity, PBR, or their respective Related Parties; (ii) all Causes of Action of the Debtor arising in connection with the Debtor and relating to any act or omission of Trinity, PBR, or their respective Related Parties; and (iii) all Causes of Action of the Debtor (including for the avoidance of doubt any predecessor of the Debtor) and the Debtor's Estate arising under any D&O Liability Insurance Policy solely to the extent such Causes of Action are based on Causes of Action described in sub-sections (i) and (ii) of this section and to the extent assignable to the Litigation Trust pursuant to the terms of the applicable D&O Liability Insurance Policy; *provided*, *however*, that Litigation Trust Causes of Action shall not include any Causes of Action against any Released Party that is released pursuant to the Plan.

"Litigation Trust Documents" means the Litigation Trust Agreement and all other agreements, documents, procedures, and instruments delivered or entered into in connection with the establishment, formation, and implementation of the Litigation.  The Litigation Trust Documents shall be drafted, in the first instance, by the Creditors' Committee, in consultation with the Debtor, and the DIP Lender.

"Litigation Trust Expenses" means all reasonable fees, costs, and expenses of and incurred by the Litigation Trust, including legal and other professional fees, costs, and expenses, administrative fees and expenses, insurance fees, taxes, and escrow expenses, including reasonable fees and expenses of the Litigation Trustee, which shall be paid in accordance with the Litigation Trust Agreement.

"Litigation Trust Funding" means the initial funding to be used by the Litigation Trust and the Litigation Trustee, which may be allocated from the GUC Recovery Pool; provided, that such amounts shall not exceed $2.5 million.  For the avoidance of doubt, any amounts allocated as Litigation Trust Funding shall be credited against amounts that the DIP Lender is required to fund into the GUC Recovery Pool.

"Litigation Trust Interest" means a non-certificated beneficial interest in the Litigation Trust granted, as applicable, to each Holder of an Allowed Non-Lender Unsecured Claim, which shall entitle such holder to a Pro Rata share in the Litigation Trust Causes of Action in accordance with the Litigation Trust Agreement and Articles III.B.4 and IV.C of the Plan.

"Litigation Trust Proceeds" means proceeds of the Litigation Trust Causes of Action.

"<u>Litigation Trustee</u>" means the trustee of the Litigation Trust, as selected by the Creditors' Committee and reasonably acceptable to the Debtor, with the role, responsibilities, and authority relating to the Litigation Trust and the Litigation Trust Causes of Action set forth in the Litigation Trust Agreement and <u>Article IV.C</u> of the Plan.

"<u>Media Assets</u>" means the Debtor's assets other than the Debtor's Estate Causes of Action, including without limitation all "Transferred Assets" under the Media Sale APA, the Debtor's video library, and the Debtor's intellectual property rights; provided that the Litigation Assets shall not constitute Media Assets.

"<u>Media Sale</u>" means the sale of all or substantially all of the Media Assets under the Media Sale APA pursuant to the terms of the Bid Procedures Order.

"<u>Media Sale APA</u>" means that certain Asset Purchase Agreement dated as of [•], 2025, by and between [•], as Purchaser, and Debtor, as Seller,

"<u>Net Sale Proceeds</u>" means the net sale proceeds received by the Debtor from the Sales, less actual and customary closing costs and expenses incurred by the Debtor in connection therewith.

"<u>Non-Lender Unsecured Claim(s)</u>" means a General Unsecured Claim, Unsecured Notes Claim, Trinity Claim, or Contract Litigation Claim that is not a Lender Deficiency Claim or Lender Unsecured Notes Claim.  For the avoidance of doubt, DIP Claims, Administrative Expense Claims, Professional Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims shall not constitute Non-Lender Unsecured Claims.

"<u>Non-Lender Unsecured Notes Claims</u>" means an Unsecured Notes Claim that is not held by Peteski (or its assignee or designee).

"<u>Opt-In Form</u>" means the form, to be provided to all Holders of Claims and Interests who are not entitled to vote on the Plan, which will allow each such Holder to opt in to and grant the Third-Party Release.

"<u>Other Priority Claim(s)</u>" means a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"<u>Other Secured Claim(s)</u>" means any Secured Claim against a Debtor where, pursuant to section 506(a) of the Bankruptcy Code, the Secured Claim is secured by a valid, perfected, and enforceable Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date; *provided, that,* an Other Secured Claim shall not include a (i) Secured Tax Claim, (ii) Prepetition Bridge Lender Claim, or (iii) Trinity Claim.

"<u>PBR</u>" means Professional Bull Riders LLC.

"<u>Person(s)</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"Peteski" means Peteski Productions, Inc, a Texas corporation.

"Peteski Notes" means the *Convertible Promissory Note*, dated February 28, 2025 (as amended, restated, supplemented, or otherwise modified from time to time), by and among the Debtor, as issuer, and Peteski, as noteholder thereto, pursuant to which Peteski purchased approximately $11,407,166 of aggregate principal amount of convertible notes, and the *Convertible Promissory Note*, dated June 1, 2025 (as amended, restated, supplemented, or otherwise modified from time to time), by and among the Debtor, as issuer, and Peteski, as noteholder thereto, pursuant to which Peteski purchased approximately $14.0 million of aggregate principal amount of convertible notes.

"Petition Date" means July 2, 2025, which is the date the Debtor filed a voluntary petition in the Court for relief under chapter 11 of the Bankruptcy Code.

"Plan" has the meaning ascribed to it in the recitals.

"Plan Administrator" means the Person or Entity appointed by the Debtor on the Effective Date to administer and wind down the Debtor's remaining business operations, including the making of any Plan Distributions that may arise after the Effective Date or any other duties or responsibilities set forth herein (other than Plan Distributions to be made by the Litigation Trustee).

"Plan Distribution" means payment(s) or distribution(s) to Holders of Allowed Claims, Holders of Allowed Interests, or other eligible Entities under this Plan.

"Plan Objection Deadline" means the date set by the Court as the deadline for any Person(s) to File an objection to Confirmation of this Plan.

"Plan Supplement" means those documents and forms of documents, agreements, schedules, and exhibits to this Plan, which shall be Filed by the Debtor no later than seven (7) days prior to the Plan Objection Deadline, or such later date as may be approved by the Court, including, without limitation, (a) the Schedule of Rejected Executory Contracts and Unexpired Leases, if applicable and (b) the Litigation Trust Documents. The Debtor shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with the terms of the Plan (and subject to the consent, approval and consultation rights set forth therein).

"Prepetition Bridge Lender" means the lender under the Prepetition Bridge Loan Agreement.

"Prepetition Bridge Loan Collateral" means any and all assets of the Debtor subject to a valid, perfected, and enforceable Lien arising under, or relating to the Prepetition Bridge Loan Documents, which includes, for the avoidance of doubt, the "Prepetition Bridge Collateral" as defined in the Interim DIP Order [Docket No. 35].

"Prepetition Bridge Loan Agreement" means that certain Loan and Security Agreement, dated as of June 20, 2025 (but effective as of June 10, 2025) (as amended, supplemented, restated or otherwise modified prior to the Petition Date) by and among Merit Street Media, Inc., as borrower, and Peteski Productions, Inc., as lender.

"Prepetition Bridge Loan Documents" means the Prepetition Bridge Loan Agreement, the Loan Documents (as defined in the Prepetition Bridge Loan Agreement), and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, or otherwise modified from time to time.

"Prepetition Bridge Loan Claims" means all Claims held by the Prepetition Bridge Lender on account of, arising under, or relating to the Prepetition Bridge Loan Documents that is a Secured Claim. On the Effective Date, the Prepetition Secured Lender Claims shall be Allowed in an aggregate amount equal to: (i) the principal amount outstanding under the Prepetition Bridge Loan Agreement on such date, (ii) all interest accrued and unpaid thereon to the date of payment, (iii) all accrued and unpaid fees, expenses, and non-contingent indemnification obligations payable under the Prepetition Bridge Loan Documents, and (iv) all other obligations as provided for in the Prepetition Bridge Loan Documents, as permitted by the Bankruptcy Code. A Lender Deficiency Claim shall be treated as a General Unsecured Claim for the purposes of this Plan.

"Priority Tax Claim(s)" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

"Professional Claim(s)" means a Claim by a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"Professional Claim Reserve Account" means a reserve account in an amount equal to the Professional Claim Reserve Amount funded and maintained by the Debtor on the Effective Date solely for the purpose of paying Allowed but unpaid Professional Claims and other Administrative Expense Claims on account of the Professionals.

"Professional Claim Reserve Amount" means the aggregate amount of unpaid and estimated Professional Claims and other Administrative Expense Claims on account of the Professionals incurred upon, and after giving effect to the occurrence of, the Effective Date to be paid by the Debtor, *less* the total of any retainers held by the Professionals.

"Professional" means an Entity either (a) employed pursuant to a Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code to be compensated for services rendered prior to or on the Effective Date in accordance with sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code, as applicable; or (b) awarded compensation and reimbursement by the Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Proof of Claim" means a proof of claim Filed against the Debtor in this Chapter 11 Case on or before the applicable Bar Date.

"Reinstated" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

"Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, advisory board members, members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, management companies, fund advisors or managers, predecessors, participants, successors, assigns, representatives, subsidiaries, Affiliates, partners, limited partners, general partners, principals, employees, agents, trustees, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, investment advisors, consultants, and other professionals and advisors and any such Related Party's respective heirs, executors, estates, and nominees.

"Release" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.C hereof.

"Released Party" and, collectively, the "Released Parties" means each of, and in each case in its capacity as such:  (a) the Debtor; (b) the Plan Administrator; (c) the DIP Lender; (d) the Prepetition Bridge Lender; (e) the Committee and its members; (f) each current and former Affiliate of each Entity in clause (a) through the following clause (e); and (g) each Related Party of each Entity in clause (a) through this clause (g); *provided* that, in each case, an Entity shall not be a Released Party if it fails to submit a Ballot or Opt-In Form, as applicable, before the Voting Deadline; *provided*, *further*, that notwithstanding anything to the contrary herein, Trinity, PBR, and their respective Related Parties shall not be Released Parties (even if such Persons otherwise fall under a clause of the definition of "Released Party").

"Releasing Party" means each of, and in each case in its capacity as such:  (a) the Debtor; (b) the Plan Administrator; (c) the DIP Lender; (d) the Prepetition Bridge Lender; (e) the Committee and its members; (f) all Holders of Claims or Interests that vote to accept or reject the Plan and who affirmatively elect to opt into the releases provided in the Plan; (g) all Holders of Claims or Interests that are deemed to accept or deemed to reject the Plan who affirmatively elect to opt into the releases provided in the Plan; (h) all Holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, but who affirmatively elect to opt into the releases provided in the Plan; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) each Related Party of each Entity in clause (a) through this clause (j) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through clause (j); *provided* that, any Holder of a Claim or Interest that (i) fails to submit a Ballot or Opt-In Form, as applicable, before the Voting Deadline or (ii) timely objects to the Third-Party Release through a formal objection filed on the docket of the Chapter 11 Case that is not resolved before confirmation shall not be a Releasing Party.

"Ribman Trust Note" means the *Convertible Promissory Note*, dated December 27, 2024 (as amended, restated, supplemented, or otherwise modified from time to time), by and among the Debtor, as issuer, and DARCY LYNN RIBMAN 1997 Trust, as noteholder thereto, pursuant to which Ribman purchased approximately $5.0 million of aggregate principal amount of convertible notes, which aggregate principal amount is currently approximately $5.0 million.

13

"Sale Documents" means the Media Sale APA and all agreements, documents, and instruments related thereto (including the Confirmation Order), and all agreements, documents, and instruments related to the Litigation Sale (including the Confirmation Order).

"Sales" means the Litigation Sale and the Media Sale, collectively.

"Sale Order" means any order entered by the Court approving the Sale, which may be the Confirmation Order.

"Schedule(s)" means, with respect to the Debtor, the schedule of assets and liabilities and statements of financial affairs, as such may be further amended, modified, or supplemented from time to time by such Debtor at any point prior to the Effective Date and Filed by the Debtor with the Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007.

"Schedule of Rejected Executory Contracts and Unexpired Leases" means a schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant to the Plan, which schedule shall be included in the Plan Supplement, as such schedule may be amended, modified, or supplemented from time to time.

"Section 510(b) Claim(s)" means any Claim(s) against the Debtor that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

"Secured Claim(s)" means a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

"Secured DIP Collateral" means the "DIP Collateral" as defined in the Secured DIP Documents.

"Secured DIP Documents" means (i) the *Interim Order (I) Authorizing Post-Petition Financing Secured by Senior Liens, (II) Authorizing the Debtor to Use Cash Collateral; (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. 35]; (ii) the *Summary of Proposed Terms and Conditions for DIP Financing and Use of Cash Collateral* attached thereto as Exhibit 1; (iii) any other "DIP Loan Documents" as defined therein; and (iv) the *Final Order (I) Authorizing Post-Petition Financing Secured by Senior Liens, (II) Authorizing the Debtor to Use Cash Collateral; (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. •].

"Secured DIP Facility" means the superpriority, senior secured, debtor-in-possession delayed-draw term loan facility in an aggregate principal amount of up to $13.4 million extended by the DIP Lender to the Debtor pursuant to the Secured DIP Documents.

"Secured Tax Claim(s)" means any Secured Claim that, absent its Secured Claim status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

"Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

"Tax Code" means the United States Internal Revenue Code of 1986, as amended.

"TBN" means the Trinity Broadcasting Network of Texas, Inc.

"TCT" means TCT Ministries, Inc.

"Third Party Release" means the consensual releases of the Released Parties by the Releasing Parties provided for in Article VIII.C.2.

"Transaction Documents" means the definitive documents to effectuate the Transactions, which, as applicable, shall include, without limitation, the Plan, the Disclosure Statement, the Disclosure Statement Order, the Plan Supplement, the Media Sale APA, and the Litigation Trust Documents or transaction documents to effectuate the Litigation Sale, as applicable.

"Transactions" means the Media Sale Transaction, the Litigation Sales Transaction, and the Litigation Trust Transaction, as applicable.

"Treasury Regulations" means the regulations promulgated under the Internal Revenue Code by the United States Department of the Treasury pursuant to the Tax Code.

"Trinity" means TBN and TCT, collectively.

"Trinity Claims" means all Claims held by Trinity, regardless of whether such Claim also falls under the definition of a General Unsecured Claim.

"U.S. Trustee" means the Office of the United States Trustee for Region 6.

"Unexpired Lease" means a lease to which one or more of the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

"Unimpaired" means a Class of Claims or Interests that is not Impaired.

"Unencumbered" means, with respect to the Debtor's assets, not subject to a valid, perfected, and enforceable Lien.

"Unsecured DIP Documents" means (i) the *Second Interim Order (I) Authorizing Post-Petition Financing on an Unsecured Administrative Basis and (II) Granting Related Relief* [Docket No. 357]; (ii) the *Summary of Proposed Terms and Conditions for Unsecured Administrative DIP Financing and Use of Cash Collateral* attached thereto as Exhibit 1; and (iii) the *Final Order (I) Authorizing Post-Petition Financing on an Unsecured Administrative Basis and (II) Granting Related Relief* [Docket No. •].

15

"Unsecured DIP Facility" means the $10.0 million unsecured administrative priority debtor-in-possession financing extended by the DIP Lender to the Debtor pursuant to the Unsecured DIP Documents.

"Unsecured Notes Claims" means all Claims under the Peteski Notes and the Ribman Trust Note.

"Voting Classes" means Classes 4, 5, 6, 7, and 8.

"Wind-Down" means the post-Effective Date wind-down process by which the Plan Administrator shall seek to (a) liquidate any remaining assets of the Debtor and make distributions relating to the same; (b) complete any tasks required to wind-down the affairs of the Debtor; and (c) otherwise close the Chapter 11 Case, as described in more detail in Article IV herein.

"Wind-Down Budget" means the budget for all reasonable activities and expenses associated with the Wind-Down, including, but not limited to, post-Effective Date professional fees and expenses and insurance costs.

### B.    Rules of Interpretation

For purposes of this Plan and unless otherwise provided herein: (1) each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) any reference to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document, schedule, exhibit, or annex, shall mean that document, schedule, exhibit, or annex, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to Article(s) are references to Articles of this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular Article, paragraph, or clause contained in this Plan; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) all references to docket numbers of documents Filed in this Chapter 11 Case are references to the docket numbers under the Court's CM/ECF system; (11) any immaterial effectuating provisions may be interpreted by the Debtor, the Plan Administrator, or Litigation Trustee as applicable, in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Court or any other Entity; (12) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan.

16

### C.        Computation of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act, or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, distribution, act, or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### D.        Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### E.        Reference to the Debtor

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor shall mean the Debtor, the Plan Administrator, and/or Litigation Trust, to the extent the context requires.

### F.        Controlling Document

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in this Plan (other than the Confirmation Order) conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

## ARTICLE II.
## DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, General Administrative Expense Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> hereof.

### A.        DIP Claims

As of the Effective Date, the DIP Claims shall be Allowed in an amount equal to (i) the principal amount outstanding under the DIP Facilities on such date, (ii) all interest accrued and unpaid thereon to the date of payment, (iii) all accrued and unpaid fees, expenses, and non-contingent indemnification obligations payable under the DIP Documents and the DIP Orders, and (iv) all other DIP Obligations as provided for in the DIP Documents.

To the extent each DIP Claim has not previously been satisfied in full (including via a credit bid as part of a Sale), (i) with respect to all DIP Obligations under the Unsecured DIP Facility, the Holder of DIP Claims relating to the Unsecured DIP Facility shall receive no recovery on account of, and has waived and cancelled the Debtor's indebtedness and obligation to repay the DIP Obligations under the Unsecured DIP Facility, (ii) with respect to all DIP Obligations under the Secured DIP Facility, except to the extent that a Holder of a DIP Claim agrees to a different treatment, the Holder of a DIP Claim shall receive, in full and final satisfaction of such Claim either (1) the proceeds of a Sale or any other sale of the Secured DIP Collateral; or (2) in the event that the DIP Lender determines to exercise its right to credit bid resulting in a sale of the Secured DIP Collateral to the DIP Lender or its designee, ownership of such assets; *provided* with respect to clause (2) above, such satisfaction, compromise, settlement, release, and discharge of the DIP Claims shall be equal to and not exceed the amount of the credit bid by the DIP Lender with respect to such assets.

## B.     General Administrative Expense Claims

Unless otherwise agreed to by the Holder of an Allowed General Administrative Expense Claim and the Debtor, each Holder of an Allowed General Administrative Expense Claim (other than DIP Claims) that is unpaid as of the Effective Date shall receive, on account and in full satisfaction of such Allowed General Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such General Administrative Expense Claim, to be paid in accordance with the following:   (1) if a General Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (2) if such General Administrative Expense Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such General Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) at such time and upon such terms as may be agreed upon by such Holder and the Debtor; or (4) at such time and upon such terms as set forth in any other order of the Court.

Each Holder of a General Administrative Expense Claim that was not accrued in the ordinary course of business must File and serve a request for payment of such General Administrative Expense Claim on the Debtor no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date.  Holders of General Administrative Expense Claims that are required to File and serve a request for payment of such General Administrative Expense Claims by the Administrative Expense Claims Bar Date that do not File and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Expense Claims against the Debtor or its property, and such General Administrative Expense Claims shall be deemed forever discharged and released as of the Effective Date.  Any requests for payment of General Administrative Expense Claims that are not properly Filed and served by the Administrative Expense Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtor, or further order of the Court.

The Debtor may settle General Administrative Expense Claims without further Court approval.  The Debtor may also choose to object to any General Administrative Expense Claim no

later than sixty (60) days from the Administrative Expense Claims Bar Date, subject to extensions by the Court, agreement in writing of the parties, or on motion of a party in interest approved by the Court.  Unless the Debtor or other party with standing, as applicable, objects to a timely Filed and properly served General Administrative Expense Claim, such General Administrative Expense Claim will be deemed Allowed in the amount requested.  In the event that the Debtor objects to a General Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Court will determine whether such General Administrative Expense Claim should be Allowed and, if so, in what amount.

### C.     Professional Claims

#### 1.      Final Fee Applications and Payment of Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Administrative Expense Claims Bar Date.  The Debtor shall pay Allowed Professional Claims in Cash in the amount the Court allows, including from the Professional Claim Reserve Account.

#### 2.      Professional Claim Reserve Account

No later than the Effective Date, the Debtor shall fund the Professional Claim Reserve Account with Cash equal to the aggregate Professional Claim Reserve Amount for all Professionals.  The Professional Claim Reserve Account shall be maintained in trust for the Professionals.  Such funds in the Professional Claim Reserve Account shall not constitute property of the Debtor, the Debtor's Estate, the Plan Administrator, the Litigation Trustee, or the Litigation Trust, except as otherwise expressly set forth in the last sentence of this paragraph.  The amount of Professional Claims owing to the Professionals on and after the Effective Date shall be paid in Cash to such Professionals from funds held in the Professional Claim Reserve Account, as soon as reasonably practicable after such Claims are Allowed by a Court order.   When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Claim Reserve Account, if any, shall revert to the Plan Administrator pursuant to the terms of this Plan without any further action or order of the Court.

Professionals shall reasonably estimate their unpaid Professional Claims Reserve Amount and shall deliver such estimate to the Debtor no later than five (5) days before the Effective Date; _provided_, _however_, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in this Chapter 11 Case.  If a Professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional for purposes of determining the Professional Claims Reserve Amount.

#### 3.      Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Disbursing Agent shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of this Plan. Upon the Confirmation Date, any requirement that Professionals comply with sections 327

through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.  The Litigation Trustee and Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

### D.    Priority Tax Claims

Except to the extent that a Priority Tax Claim has already been paid during the Chapter 11 Case or a Holder of an Allowed Priority Tax Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Priority Tax Claim will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Classification of Claims and Interests

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and Plan Distribution pursuant to sections 1122 and 1123(a) of the Bankruptcy Code.  This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class for purposes of distribution only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code and as described in Article II hereof, the Debtor has not classified DIP Claims, General Administrative Expense Claims, Professional Claims, and Priority Tax Claims.

The classification of Claims and Interests against the Debtor pursuant to this Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition Bridge Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 4 | Unsecured Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Trinity Claims | Impaired | Entitled to Vote |

| Class 6 | Contract Litigation Claims | Impaired | Entitled to Vote |
|---------|---------------------------|----------|------------------|
| Class 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Convenience Claims | Impaired | Entitled to Vote |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.     Treatment of Claims and Interests**

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

**1.     Class 1 – Other Secured Claims**

a.  *Classification.*  Class 1 consists of Other Secured Claims.

b.  *Treatment*.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Other Secured Claim, each Holder thereof shall receive, at the option of the Debtor or the Plan Administrator, as applicable:

(i)     payment in full from Available Cash attributable to the Holder of such Allowed Other Secured Claim's collateral;

(ii)     the return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim; or

(iii)     such other treatment sufficient to render such Allowed Other Secured Claim as Unimpaired.

c.  *Voting.*  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**2.      Class 2 – Other Priority Claims**

a.  *Classification.*  Class 2 consists of Other Priority Claims.

b.  *Treatment*.  On the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Other Priority Claim, each Holder thereof shall receive payment or other treatment in accordance with the Bankruptcy Code in full satisfaction of such Claim.

c.  *Voting*.  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

**3.      Class 3 – Prepetition Bridge Loan Claims**

a.  *Classification*.  Class 3 consists of Prepetition Bridge Loan Claims.

b.  *Treatment*.  On the Effective Date, except to the extent that a Holder of an Allowed Prepetition Bridge Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Prepetition Bridge Loan Claim, each such Holder thereof shall have such Claim cancelled, released, and extinguished and without any distribution or compensation.

c.  *Voting*.  Class 3 is Impaired under the Plan.  Holders of Claims in Class 3 are conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

**4.      Class 4 – Unsecured Notes Claims**

a.  *Classification*.  Class 4 consists of Unsecured Notes Claims.

b.  *Treatment*.  On the Effective Date, except to the extent that a Holder of an Allowed Unsecured Notes Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Unsecured Notes Claim, each such Holder thereof shall receive such Holder's Pro Rata share of:

(i)  In the event the Debtor consummates the Litigation Sale Transaction:

A.      the GUC Recovery Pool; and

B.      Available Cash, if any.

22

(ii) In the event the Debtor consummates the Litigation Trust Transaction:

    A.    the GUC Recovery Pool;

    B.    Available Cash, if any; and

    C.    Litigation Trust Interests.

By agreement with the Debtor, Holders of Lender Unsecured Notes Claims will receive no recovery on account of such Claims, whether from the GUC Recovery Pool, Available Cash, or Litigation Trust Interests.

c. *Voting*. Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject this Plan.

**5.**    **Class 5 – Trinity Claims**

a. *Classification*. Class 5 consists of Trinity Claims, regardless of whether such Claim also falls under the definition of a General Unsecured Claim.

b. *Allowance*. All Trinity Claims are disputed and shall be subject to the provisions of Article VII hereof.

c. *Treatment*. On the Effective Date, except to the extent that a Holder of an Allowed Trinity Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Trinity Claim, each such Holder shall receive such Holder's Pro Rata share of:

(i) In the event the Debtor consummates the Litigation Sale Transaction:

    A.    the GUC Recovery Pool; and

    B.    Available Cash, if any.

(ii) In the event the Debtor consummates the Litigation Trust Transaction:

    A.    the GUC Recovery Pool;

    B.    Available Cash, if any; and

    C.    Litigation Trust Interests.

d. *Voting*. Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject this Plan.

23

6.      **Class 6 – Contract Litigation Claims**

a.   *Classification*.  Class 6 consists of Contract Litigation Claims.

b.   *Treatment*.  On the Effective Date, except to the extent that a Holder of an Allowed Contract Litigation Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Contract Litigation Claim, each such Holder shall receive such Holder's Pro Rata share of:

(i) In the event the Debtor consummates the Litigation Sale Transaction:

A.  the GUC Recovery Pool; and

B.  Available Cash, if any.

(ii) In the event the Debtor consummates the Litigation Trust Transaction:

A.  the GUC Recovery Pool;

B.  Available Cash, if any; and

C.  Litigation Trust Interests.

c.   *Voting*.  Class 6 is Impaired under the Plan.  Holders of Claims in Class 6 are entitled to vote to accept or reject this Plan.

7.      **Class 7 – General Unsecured Claims**

a.   *Classification*.  Class 7 consists of General Unsecured Claims, including Lender Deficiency Claims.

b.   *Treatment*.  On the Effective Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such General Unsecured Claim, each such Holder shall receive such Holder's Pro Rata share of:

(i) In the event the Debtor consummates the Litigation Sale Transaction:

A.  the GUC Recovery Pool; and

B.  Available Cash, if any.

(ii) In the event the Debtor consummates the Litigation Trust Transaction:

A.  the GUC Recovery Pool;

B.  Available Cash, if any; and

C.  Litigation Trust Interests.

By agreement with the Debtor, Holders of Lender Deficiency Claims will receive no recovery on account of such Claims, whether from the GUC Recovery Pool, Available Cash, or Litigation Trust Interests.

c.  *Voting*.  Class 7 is Impaired under the Plan.  Holders of Claims in Class 7 are entitled to vote to accept or reject this Plan.

8.  **Class 8 – Convenience Claims**

a  *Classification.*  Class 8 consists of Convenience Claims.

b  *Treatment*.  Except to the extent that a Holder of an Allowed Convenience Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Convenience Claim, each such Holder shall receive on the later of (i) the Effective Date, or as soon as practicably thereafter, and (ii) the date that is ten (10) business days after such Convenience Claim becomes an Allowed Claim, in full and final satisfaction of such Claim, receive payment in Cash equal to the lesser of (x) their Pro Rata share of $750,000 on account of the Allowed Convenience Claim and (y) 50% of the Allowed amount of such Convenience Claim, in each case from the GUC Recovery Pool, on account of the Holder's Allowed Convenience Claim.

c  *Voting*.  Class 8 is Impaired under the Plan.  Holders of Claims in Class 8 are entitled to vote to accept or reject this Plan.

9.  **Class 9 – Section 510(b) Claims**

d  *Classification.*  Class 9 consists of Section 510(b) Claims.

e  *Treatment*.  On the Effective Date, each Holder of each Section 510(b) Claim in any of the Debtor shall have such Claim cancelled, released, and extinguished and without any distribution or compensation.

f  *Voting*.  Class 9 is Impaired under the Plan.  Holders of Claims in Class 9 are conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

10.  **Class 10 – Existing Equity Interests**

a.  *Classification*.  Class 10 consists of Existing Equity Interests.

      b.   *Treatment*.  On the Effective Date, each Holder of each Existing Equity Interest in the Debtor shall have such Interest cancelled, released, and extinguished and without any distribution or compensation.

      c.   *Voting*.  Class 10 is Impaired under the Plan.  Holders of Interests in Class 10 are conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

**C.**      **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtor's or Plan Administrator's rights regarding any Unimpaired or Reinstated Claim, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired or Reinstated Claim; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by the Plan.

**D.**      **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.**      **Acceptance or Rejection of this Plan**

      **1.**      **Presumed Acceptance of this Plan**

If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan, this Plan shall be presumed accepted by the holders of such Claims in such Class.

      **2.**      **Voting Classes**

Classes 4, 5, 6, 7, and 8 are Impaired and entitled to vote to accept or reject this Plan.

**F.**      **Confirmation and Section 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III of the Plan.  The Debtor hereby requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Debtor reserves the right to request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Voting Class that votes to reject the Plan.

### G.        Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor or Plan Administrator (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.        Subordination Agreements

Pursuant to section 510(a) of the Bankruptcy Code, all subordination agreements governing Claims or Interests shall be enforced in accordance with such agreement's terms.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

### A.        General Settlement of Claims and Interests

As discussed in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan, including the Global Settlement, shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan.  This Plan, including the Global Settlement, shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtor and its Estate.  Subject to Article VI.K hereof, all Plan Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

The Debtor, the Prepetition Bridge Lender, the DIP Lender, and the Creditors' Committee engaged in extensive, detailed good faith and arm's-length negotiations to resolve any outstanding issues and to formulate a chapter 11 plan supported by the Prepetition Bridge Lender, the DIP Lender, and the Creditors' Committee.  The Debtor, the Prepetition Bridge Lender, the DIP Lender, and the Creditors' Committee ultimately agreed to the Global Settlement, the terms of which are:

a.    The Creditors' Committee supports this Plan, including but not limited to the release and exculpation provisions set forth in Article VIII hereof, and including (i) supporting the expedited approval of the disclosure statement and confirmation of the Plan (including conditional approval of the Disclosure Statement in accordance with the Local Rules and Complex Case Procedures), (ii) not objecting and affirmatively

27

supporting on the record or otherwise file a pleading in support of the Plan and Disclosure Statement.

b.  The DIP Lender shall fund the GUC Recovery Pool in an amount equal to the lesser of: (a) $17.0 million, and (b) such amounts required to guarantee a 10.0% recovery to holders of Allowed Non-Lender Unsecured Claims; provided, that in any event, the amount funded by the DIP Lender to the GUC Recovery Pool shall be at least $10.0 million.  As described below, a portion of the GUC Recovery Pool shall be allocated to Litigation Trust Funding and credited toward DIP Lender funding thereof.  Holders of Prepetition Bridge Loan Claims, Lender Deficiency Claims, and Lender Unsecured Notes Claims shall not participate in any distributions from the GUC Recovery Pool. A portion of the GUC Recovery Pool ($750,000) shall be allocated to provide recoveries to Holders of Allowed Convenience Claims.

c.  The Plan Administrator shall be appointed to wind down the Debtor's estate and close the Chapter 11 Case. The Plan Administrator shall be chosen by the Debtor, subject to the DIP Lender's consent and in consultation with the Committee. The Plan Administrator shall retain professionals to assist with its wind down activities.  The Plan Administrator shall disburse the GUC Recovery Pool to Holders of Allowed Non-Lender Unsecured Claims and Allowed Convenience Claims under the Plan.

d.  Under the Plan, the Litigation Trust Causes of Action (comprising all Estate Causes of Action against Trinity and PBR) shall either be sold pursuant to the Litigation Sale or be contributed to and vest in the Litigation Trust for the benefit of Holders of Allowed Non-Lender Unsecured Claims as set forth in the Litigation Trust Documents, which shall be drafted, in the first instance, by the Committee, in consultation with the Debtor, and Peteski.

e.  The Litigation Trust Documents shall provide for the appointment of the Litigation Trustee to be selected by the Committee and reasonably acceptable to the Debtor who shall preside over the Litigation Trust and be advised by the Litigation Advisory Committee.  The Litigation Advisory Committee shall be comprised of the following members: (1) the Plan Administrator and (2) a representative appointed by the Committee.  The Litigation Advisory Committee shall vote on the terms of any settlement of the Litigation Trust Causes of Action subject to the Litigation Trustee's ability to petition the Court for appropriate relief.  Members of the Litigation Advisory Committee shall not receive any compensation for such service.

f.  Prior to the effective date of the Plan, the Creditors' Committee, and the Debtor shall agree to allocate a certain portion of the GUC Recovery Pool to fund the pursuit by the Litigation Trustee of the Litigation Trust Causes of Action; provided, that such amounts shall not exceed $2.5 million.  For the avoidance of doubt, any amounts allocated to pursue such causes of action shall be credited against amounts that the DIP Lender is required to fund into the GUC Recovery Pool.

g.  The Prepetition Bridge Lender, the DIP Lender, and the Creditors' Committee support the release and exculpation provisions set forth in Article VIII hereof.  The Debtor's

28

board and management team are conducting an investigation into potential estate causes of action against the Released Parties (the "<u>Investigation</u>"). The Creditors' Committee's legal advisors shall be permitted to participate in depositions and interviews with certain members of the Debtor's board and management team in connection with the Investigation. To the extent that the results of the Investigation results in a determination by the Debtor or Creditors' Committee that any modification of the proposed releases is warranted, all other parties have the right to opt out of the Global Settlement and all related obligations thereunder.

**B.    Restructuring Transactions**

The Plan provides for (i) the consummation of the Media Sale pursuant to the Bid Procedures Order and (ii) a toggle between (A) consummation of the Litigation Sale or (B) if the Debtor decides in its business judgment (after consultation with the Creditors' Committee) that consummating the Litigation Sale is not in the best interest of creditors and the estate, a contribution of the Litigation Trust Causes of Action to the Litigation Trust.

**1.    Media Sale**

The Debtor engaged in a marketing and sale process for the sale of the Media Assets pursuant to the Bid Procedures Order. Consistent with the Bid Procedures Order, the Debtor shall seek approval at the Confirmation Hearing of the Media Sale to the highest or otherwise best bidder (as determined pursuant to the terms of the Bid Procedures Order) (the "<u>Media Sale Transaction</u>"). The Confirmation Order shall include as Schedule 1 thereto findings of fact and conclusions of law that will be incorporated to the Confirmation Order by reference in their entirety and shall approve and govern the Media Sale.

On the Effective Date, the Media Sale will close and be effective in accordance with the terms and conditions of the Confirmation Order and the Media Sale APA and the Media Assets will be transferred free and clear of all Liens, charges, Claims, encumbrances, and interests, in accordance with section 1141 of the Bankruptcy Code.

**2.    Litigation Sale Transaction**

The Debtor engaged in a marketing and sale process for the sale of the Litigation Assets pursuant to the Bid Procedures Order. Consistent with the Bid Procedures Order, if the Debtor decides in its business judgment (after consultation with the Creditors' Committee) that consummating the Litigation Sale is in the best interest of creditors and the estate, the Debtor shall seek approval at the Confirmation Hearing of the Litigation Sale to the highest or otherwise best bidder (as determined pursuant to the terms of the Bid Procedures Order) (the "<u>Litigation Sale Transaction</u>"). The Confirmation Order shall include as Schedule 1 thereto findings of fact and conclusions of law that will be incorporated to the Confirmation Order by reference in their entirety and shall approve and govern the Litigation Sale.

If the Debtor pursues approval of the Litigation Sale, on the Effective Date, the Litigation Sale will close and be effective in accordance with the terms and conditions of the Confirmation Order and the applicable transaction documents and the Litigation Assets will be transferred free

and clear of all Liens, charges, Claims, encumbrances, and interests, in accordance with section 1141 of the Bankruptcy Code.

### 3.    Litigation Trust Transaction

If the Debtor decides in its business judgment (after consultation with the Creditors' Committee) that consummating the Litigation Sale is <u>not</u> in the best interest of creditors and the estate, the Debtor shall contribute the Litigation Trust Causes of Action to the Litigation Trust for the benefit of Holders of Allowed Non-Lender Unsecured Claims, on the terms and conditions set forth in Article IV.C and the Litigation Trust Documents (the "<u>Litigation Trust Transaction</u>").

### C.    Litigation Trust

### 1.    Interest in the Litigation Trust

Any and all interests in the Litigation Trust will not, and are not intended to, constitute "securities" and will not be registered pursuant to the Securities Act, as amended, or any state securities law.  However, if it should be determined that interests in the Litigation Trust constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will apply to the interests in the Litigation Trust.  Any and all interests in the Litigation Trust shall not be certificated, shall be subject to certain restrictions, and all interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law.  However, if it should be determined that interests in the Litigation Trust constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will apply to the interests in the Litigation Trust.

### 2.    Creation and Governance of the Litigation Trust

On the Effective Date, if the Debtor pursues the Litigation Trust Transaction, the Debtor shall be deemed to transfer to the Litigation Trust all of its rights, title and interest in and to all of the Litigation Trust Causes of Action free and clear of all Liens, charges, Claims, encumbrances, and interests, in accordance with section 1141 of the Bankruptcy Code.  The Litigation Trust Agreement shall be executed, and the Debtor shall take all steps necessary to establish the Litigation Trust in accordance with the Plan and the beneficial interests therein, to the extent applicable.  In the event of any conflict between the terms of the Plan and the terms of the Litigation Trust Agreement, the terms of the Plan shall govern.

Any transfer to the Litigation Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  The Litigation Trustee shall be the exclusive administrator of the assets of the Litigation Trust for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(3) of the Tax Code, as well as the representatives of the Estate of each of the Debtor appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Litigation Trustee's duties under the Litigation Trust Agreement. The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trustee.  The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in <u>Article IV.C</u>.  The Litigation Trustee shall hold and distribute Plan Distributions on account of Litigation Trust Interests in accordance with the

provisions of this Plan and the Litigation Trust Agreement. After the Effective Date, the Debtor and the Plan Administrator shall have no interest in the Litigation Trust Causes of Action except as set forth in the Litigation Trust Agreement.

### 3. Litigation Trustee and Litigation Trust Agreement

The Litigation Trust Agreement generally will provide for, among other things: (a) the transfer of the Litigation Trust Causes of Action to the Litigation Trust; (b) the mechanics of the Litigation Trust Funding and payment of Litigation Trust Expenses; (c) the retention of counsel, accountants, financial advisors, or other professionals; (d) litigation of any Litigation Trust Causes of Action, which may include the prosecution, settlement, abandonment or dismissal of any such Causes of Action; and (e) making distributions to holders of Litigation Trust Interests, as provided in this Plan and in the Litigation Trust Agreement. The Litigation Trustee, on behalf of the Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of those professionals without further order of the Bankruptcy Court from the Litigation Trust Causes of Action in accordance with this Plan and the Litigation Trust Agreement. The Litigation Trust Agreement shall include reasonable and customary provisions that allow for indemnification of the Litigation Trustee by the Litigation Trust. Any such indemnification shall be the sole responsibility of the Litigation Trust and payable solely from the proceeds of the Litigation Trust Causes of Action.

### 4. Cooperation of Plan Administrator

The Plan Administrator shall reasonably cooperate with the Litigation Trust and its agents and representatives in the administration of the Litigation Trust, including, providing reasonable access to books and records and current employees and officers, including for interviews, deposition, or testimony, with respect to (a) the investigation, prosecution, compromise, and/or settlement of the Litigation Trust Causes of Action, (b) administering the Litigation Trust, and in each case, the Litigation Trust agrees to reimburse reasonable out-of-pocket expenses incurred in connection with such cooperation. The Plan Administrator shall take all reasonable efforts to assist the Litigation Trust in connection with the foregoing, and the Litigation Trust may enter into agreements with the Plan Administrator in order to obtain information from the Plan Administrator on a confidential basis, without being restricted by or waiving any applicable work product, attorney-client, or other privilege. The Litigation Trust's receipt of documents, information or communications from the Plan Administrator shall not constitute a waiver of any privilege. For the avoidance of doubt, the Litigation Trust shall not be responsible for legal fees, if any, incurred by the Plan Administrator in fulfilling its obligations under Article IV.C.4.

### 5. Litigation Trust Causes of Action

The Litigation Trustee shall have the exclusive right in respect of all Litigation Trust Causes of Action to institute, file, prosecute, enforce, settle, compromise, release, abandon, or withdraw any and all Litigation Trust Causes of Action without any further order of the Bankruptcy Court or consent of any other party, except as otherwise provided herein or in the Litigation Trust Agreement. From and after the Effective Date, the Litigation Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Litigation Trust,

shall serve as a representative of the Estate solely for purposes of carrying out the Litigation Trustee's duties under the Litigation Trust Agreement. The Litigation Trustee may expend such portion of the Plan Distributions as he or she deems necessary, as provided in the Litigation Trust Agreement.

## 6.    Litigation Trust Fees and Expenses

From and after the Effective Date, the Litigation Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the Litigation Trust Expenses, including but not limited to reasonable fees and expenses of the Litigation Trustee and the fees and expenses of any professionals retained by the Litigation Trust from the proceeds of the Litigation Trust Causes of Action, except as otherwise provided in the Litigation Trust Agreement. The Plan Administrator shall not be responsible for any costs, fees, or expenses of the Litigation Trust.

## 7.    Tax Treatment

In furtherance of this Article IV.C, of the Plan, (i) it is intended that the Litigation Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code consistent with the terms of the Plan, and, accordingly, all assets held by the Liquidation Trust are intended to be deemed for U.S. federal income tax purposes to have been distributed by the Debtor, directly to the Holders of Allowed Class 4, 5, 6, and 7 in respect of such Claims, and then contributed by such Holders of Allowed Class 4, 5, 6, and 7 Claims to the Litigation Trust in exchange for their *pro rata* interests in the Litigation Trust; (ii) the Holders of Allowed Class 4, 5, 6, and 7 shall be treated as the beneficiaries and grantors of the Litigation Trust; (iii) the primary purpose of the Litigation Trust shall be the liquidation and distribution of the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including, without limitation, the Debtors and the Holders of Class 4, 5, 6, and 7 Claims receiving interests in the Litigation Trust, and the Litigation Trustee) shall report consistently with such treatment (including the deemed receipt of the Litigation Trust Assets, subject to applicable liabilities and obligations, by the Holders of Class 4, 5, 6, and 7 Claims and, followed by the deemed transfer of such Litigation Trust Assets to the Litigation Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation of the Litigation Trust Assets transferred to the Litigation Trust as determined by the Litigation Trustee (or its designee); (vi) the Litigation Trustee shall be responsible for filing returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); (vii) the Litigation Trustee shall annually send to each holder of an interest in the Litigation Trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; (viii) all items of income, deductions, and credit loss of the Litigation Trust shall be allocated for federal income tax purposes to the holders based on their respective interests in the Litigation Trust, including the holders of Disputed General Unsecured Claims, in such manner as the Litigation Trustee deems reasonable and appropriate; and (viii) subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests

one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustee), the Distribution Trustee may timely elect to (x) treat any portion of the Litigation Trust allocable to Disputed General Unsecured Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (y) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made for all or any portion of the Litigation Trust, all impacted parties (including the Debtor), and solely with respect to the impacted assets, shall report for United States federal, state, and local income tax purposes consistently with such election.

Any taxes (including with respect to earned interest, if any) imposed on the Litigation Trust, including as a result of an election to be treated as a "disputed ownership fund" shall be paid by the Litigation Trustee out of the assets of the Litigation Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust, including any reserve for Disputed General Unsecured Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

The Litigation Trust shall continue to have all of the rights and powers granted to the Litigation Trust as set forth in this Plan and applicable non-bankruptcy law, and the Litigation Trustee shall also have the rights, powers, and obligations set forth in the Litigation Trust Agreement.

## 8. Termination and Dissolution of the Litigation Trust

The Litigation Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the Litigation Trustee under the Plan and the Litigation Trust Agreement have been made. Upon termination and dissolution of the Litigation Trust, any remaining Plan Distributions shall be distributed to holders of Litigation Trust Interests in accordance with the Litigation Trust Agreement.

## 9. Single Satisfaction of Allowed Claims From Litigation Trust

Notwithstanding anything to the contrary herein, in no event shall holders of Litigation Trust Interests recover more than the full amount of their Allowed Claims from the Litigation Trust.

## D. Wind-Down

## 1. Appointment of Plan Administrator

Following the Effective Date, the Plan Administrator shall wind-down the affairs and operations of the Debtor and its Estate including, but not limited to: (1) liquidating any remaining assets (except the Litigation Trust Assets); (2) prosecuting any claims or Causes of Action of the Debtor preserved herein (except the Litigation Trust Assets); (3) Claims reconciliation and Allowance; and (4) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan.

33

The responsibilities and authority of the Plan Administrator shall include the following rights and responsibilities: (1) preserving and liquidating any remaining assets (except the Litigation Trust Assets); (2) prosecuting any claims or Causes of Action of the Debtor preserved herein (except the Litigation Trust Assets); (3) contesting, settling, compromising, reconciling, and objecting to Claims; (4) administering and paying taxes, including, among other things, (a) filing tax returns (to the extent not the obligation of the Purchaser), and (b) representing the interest and account of the Debtor before any taxing authority in all matters; (5) retaining and paying, without the need for retention or fee applications, professionals in connection with the Plan Administrator's performance of its duties under this Plan; (6) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (7) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (8) making distributions to Professionals for Allowed Professional Fee Claims; (9) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan; (10) procuring the necessary insurance to facilitate the Wind-Down, including appropriate D&O Liability Insurance Policies; and (11) such other responsibilities as may be vested in the Plan Administrator pursuant to this Plan or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

### 2.        Cooperation of Litigation Trustee

The Litigation Trustee shall reasonably cooperate with the Plan Administrator and its agents and representatives in the performance of the Plan Administrator's responsibilities, including with respect to (a) preserving and liquidating any remaining assets (except the Litigation Trust Assets); (b) prosecuting any claims or Causes of Action of the Debtor preserved herein (except the Litigation Trust Assets); (c) contesting, settling, compromising, reconciling, and objecting to Claims; (d) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; and (e) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan.  The Litigation Trustee shall take all reasonable efforts to assist the Plan Administrator in connection with the foregoing, and the Plan Administrator may enter into agreements with the Litigation Trustee in order to obtain information from the Litigation Trustee on a confidential basis, without being restricted by or waiving any applicable work product, attorney-client, or other privilege.  The Plan Administrator's receipt of documents, information or communications from the Litigation Trustee shall not constitute a waiver of any privilege.  For the avoidance of doubt, the Plan Administrator shall not be responsible for legal fees, if any, incurred by the Litigation Trustee in fulfilling its obligations under this Article IV.D.

### E.        Sources of Consideration for Plan Distributions

Except as otherwise provided in the Plan or the Confirmation Order, and subject to the provisions of the Plan concerning the Professional Claim Reserve Account and the Wind-Down Budget, the Debtor or Litigation Trustee, as applicable, shall fund Plan Distributions with (i) Available Cash; (ii) the GUC Recovery Pool; and (iii) if the Debtor pursues the Litigation Trust Transaction, the Litigation Trust Proceeds.

### F.    Cancellation of Existing Securities

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator.  The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### G.    Corporate Action

On the Effective Date and following satisfaction of the Debtor's distribution and funding requirements set forth in the Plan, the Debtor shall be dissolved for all purposes unless the Plan Administrator and Litigation Trustee determine that dissolution can have any adverse impact on the remaining assets, including the Litigation Trust Causes of Action; *provided*, that neither the Debtor nor any party released pursuant to Article VIII herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtor; *provided further*, that nothing in the Plan shall be construed as relieving the Debtor or the Plan Administrator (as applicable) of their duties to pay statutory fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Chapter 11 Case or the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code.  The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the applicable Secretary of State.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtor's distribution and funding requirements set forth in the Plan, the Debtor shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtor shall be deemed to have resigned and the employees of the Debtor terminated.  From and after the Effective Date, the Plan Administrator and Litigation Trust, as applicable, shall be authorized to act on behalf of the Estate, provided that the Plan Administrator and Litigation Trust shall have no duties other than as expressly set forth in the Litigation Trust Documents, this Plan, the Plan Supplement, or the Confirmation Order, as applicable.

On and after the Effective Date, the Plan Administrator shall act for the Debtor in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by this Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sale director, or governing body of the Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Debtor, and shall succeed to the powers of the Debtor's managers, directors, and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtor.  The foregoing shall

not limit the authority of the Debtor or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement or other agreement entered into on or after the Effective Date.  Following the Effective Date, the Plan Administrator is given full power of attorney and had the authority to execute and/or endorse documentation on behalf of the Debtor in furtherance of the Plan and the Debtor's liquidation, including but not limited to, the filing of final tax returns and the dissolution of the Debtor.

### H.    Effectuating Documents; Further Transactions.

Upon entry of the Confirmation Order, the Debtor, the Plan Administrator, and the Litigation Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.   The Debtor, the Plan Administrator, the Litigation Trustee, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

### I.    Vesting of Assets in the Plan Administrator

Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, any remaining assets, claims, rights, Retained Causes of Action, Causes of Action, and any remaining property acquired by the Debtor under or in connection with this Plan, shall vest in the Debtor or Litigation Trust, as applicable, free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Subject to the terms of this Plan, on and after the Effective Date, the Plan Administrator or the Litigation Trust, as applicable, may use, acquire, and dispose of any of the remaining assets, and may prosecute, compromise, or settle any Claims and Causes of Action, including the Retained Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### J.    Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or

governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Litigation Trust Assets to the Litigation Trust.

### K.    Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor that are not otherwise transferred or sold pursuant to the Litigation Sale Transaction or Litigation Trust Transaction, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtor and the Plan Administrator as of the Effective Date. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action of the Debtor against it.

### L.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtor is formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

### M.    Fiduciary Duties

Nothing in this Plan shall require the Debtor, its board of directors, or the Special Committee thereof, after consulting with counsel, to take any action or to refrain from taking any action to the extent taking or failing to take such action would be inconsistent with applicable law or their respective fiduciary obligations under applicable Law.

### ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and/or Unexpired Leases

On the Effective Date, except as otherwise provided herein (which exclusion includes the D&O Liability Insurance Policies) or in the Confirmation Order, all Executory Contracts or Unexpired Leases not previously or concurrently assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those

Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

### B.        Claims Based on Rejection of Executory Contracts and/or Unexpired Leases

Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and/or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Court by the applicable counterparty within thirty (30) days after the later of (1) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection; (2) the effective date of such rejection; or (3) the Effective Date.  In the event the Debtor or Plan Administrator objects to such Claim, the Proof of Claim shall be adjudicated in accordance with the procedures set forth in Article VII hereof.

Any Claims arising from the rejection of an Executory Contract and/or Unexpired Lease not Filed with the Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Estate, or its property without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract and/or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtor's Executory Contracts and/or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the appropriate Class herein.

### C.        Preexisting Obligations to the Debtor Under Executory Contracts and/or Unexpired Leases

Rejection of any Executory Contract and/or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or Plan Administrator under such Executory Contracts and/or Unexpired Leases.   In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtor, the Plan Administrator, and the Litigation Trustee expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnities, or continued maintenance obligations.

### D.        D&O Liability Insurance Policies

Each D&O Liability Insurance Policy to which the Debtor is a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of

the Bankruptcy Code.  Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies.  In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtor who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

### E.      Reservation of Rights

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any contract is in fact an Executory Contract or Unexpired Lease or that the Debtor have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory at the time of assumption and assignment or rejection, the Debtor shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

### F.      Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Plan Administrator in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

### G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

### A.      Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the initial Distribution Date (or if a Claim is not an Allowed Claim on the initial Distribution Date, on the next Distribution Date after such Claim or Interest becomes an Allowed Claim), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII.  Except as otherwise provided in this Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.      Disbursing Agent**

All Plan Distributions shall be made by the applicable Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.

**C.      Rights and Powers of Disbursing Agent**

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all Plan Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.      Record Date for Distribution**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Plan Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims occurring on or after the Distribution Record Date.  If a Claim, other than one based on a publicly traded security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**2.      Delivery of Distributions in General**

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such Plan Distribution; *provided, however*, that the manner of such Plan Distribution shall be determined at the discretion of the Plan Administrator or Litigation Trustee, as applicable; *provided further*, that to the extent a Proof of Claim has been filed, the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

**3.      Undeliverable Distributions and Unclaimed Property**

In the event that any Plan Distribution to any Holder of Allowed Claims is returned as undeliverable, no Plan Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Plan Distribution shall be made to such Holder without interest; *provided, however*, that such Plan Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at

the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Plan Administrator, automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property or Interest in property shall be discharged and forever barred.

### 4.      Surrender of Canceled Instruments or Securities

On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any agreement that governs the rights of the Holder of a Claim or Interest or a trustee or agent under such documents, which shall continue in effect for purposes of allowing Holders to receive Plan Distribution under this Plan and maintaining priority of payment, and to preserve any applicable charging Liens and reimbursement and/or indemnification rights, in each case as set forth in the applicable certificates or instruments. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired under this Plan.

### E.      Manner of Payment

All distributions of Cash to the Holders of the applicable Allowed Claims or Interests under this Plan shall be made by the Disbursing Agent on behalf of the Debtor. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

### F.      Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the applicable Disbursing Agent and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The applicable Disbursing Agent reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Any party entitled to receive a Plan Distribution shall, upon request, deliver to the withholding agent or such other Person designated by the applicable Disbursing Agent the appropriate IRS Form or other tax forms or documentation requested by applicable Disbursing Agent to reduce or eliminate any required federal, state, or local withholding. If the party entitled

to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the applicable Disbursing Agent, as applicable, and any Claim in respect of such distribution under this Plan shall be discharged and forever barred from assertion against such Debtor, the Plan Administrator, the Litigation Trust, or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### G.    Allocations

Plan Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest, and then to any other remaining portion of such Claims.

### H.    Foreign Currency Exchange Rates

Except as otherwise provided in a Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

### I.    Setoffs and Recoupments

Except as expressly provided in this Plan, the Debtor, the Plan Administrator, and the Litigation Trust, as applicable, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Plan Administrator or the Litigation Trust (as applicable) may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Plan Administrator or the Litigation Trust (as applicable) and the Holder of the Allowed Claim; or (2) otherwise adjudicated by the Court or another court of competent jurisdiction, but shall not be required to set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Administrator or the Litigation Trust or their applicable successor of any and all claims, rights, and Causes of Action that the Plan Administrator or Litigation Trust or their applicable successor may possess against the applicable Holder.  In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Plan Administrator or Litigation Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing in accordance with Article XII.G on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**J.      Minimum Cash Distributions**

The Disbursing Agent shall not be required to make any distribution on account of an Allowed Claim that is less than one hundred dollars ($100); *provided* that if no distribution is made to a Holder of an Allowed Claim pursuant to this section, the amount of such distribution shall be added to any subsequent distribution(s) to such Holder on account of such Allowed Claim until the distribution such Holder is entitled to is $100 or higher.

**K.      Claims Paid or Payable by Third Parties**

**1.      Claims Paid by Third Parties**

The Debtor, the Plan Administrator, or the Litigation Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, the Plan Administrator, or the Litigation Trustee.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtor, the Plan Administrator, or the Litigation Trustee on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Plan Distribution to the Plan Administrator or Litigation Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.  The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the Plan Administrator or Litigation Trustee annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

**2.      Claims Payable by Third Parties**

No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract.  To the extent that one or more of the Debtor's Insurers agrees to pay in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.

**3.      Applicability of Insurance Contracts**

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Contracts shall be in accordance with the provisions of the applicable Insurance Contract and this Plan.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including Insurers under any Insurance Contract, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers.

L.    **No Postpetition Interest on Claims**

Unless otherwise specifically provided for in the DIP Orders, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    **Allowance of Claims**

Except as otherwise set forth in this Plan, after the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as specifically provided in this Plan or an order entered by the Court in the Chapter 11 Case, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with this Plan.

B.    **Claims Administration Responsibilities**

Except as otherwise specifically provided in this Plan, after the Effective Date, the Plan Administrator shall have the sole authority to:   (1) File, withdraw, or litigate to judgment, objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises or other payments without any further notice to or action, order, or approval by the Court.

C.    **Estimation of Claims**

Before or after the Effective Date, the Debtor or the Plan Administrator (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Debtor or Plan Administrator without the Debtor or Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Court.

### E.    Time to File Objections to Claims

Except as otherwise set forth herein, any objections to Claims shall be served and Filed by the Claim Objection Deadline.  All Claims not objected to by the Claim Objection Deadline shall be deemed Allowed unless such deadline is extended upon approval of the Court.

### F.    Disputed Claims Process

All Claims of any Entity from which property is sought by the Debtor or Plan Administrator, as applicable, under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or Plan Administrator, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan.  A Claim deemed Disputed pursuant to this Article VII.F shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtor or the Plan Administrator from such holder have been paid.

### G.    Disallowance of Claims or Interests

All Claims of any Entity from which property is sought by the Debtor or Plan Administrator, as applicable, under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or Plan Administrator, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed pursuant to section 502(d) of the Bankruptcy Code if:  (1) the Entity, on the one hand, and the Debtor or Plan Administrator, as applicable, on the other hand, agree or the Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as provided herein or otherwise agreed to by the Plan Administrator in their sole discretion, any and all Claims evidenced by Proofs of Claims Filed after the applicable Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely-Filed by a Final Order.

### H.    Amendments to Proofs of Claim

On or after the earlier of (1) the Effective Date and (2) the Bar Date, a Proof of Claim may not be Filed or amended without prior authorization of the Court (or the written consent of the Plan Administrator), and any such new or amended Proof of Claim Filed that is not so authorized before it is Filed shall be deemed Disallowed in full without any further action.

### I.    No Transfers of Claims After Effective Date

After the Effective Date, no Holder of a Claim may sell, transfer, encumber, pledge or assign all or any part of its Claim unless such Holder and the applicable counterparty acknowledge in writing that any Plan Distribution on account of such Claim shall be paid or distributed by the Disbursing Agent to the Holder of such Claim on the Distribution Date.  Any purported sale, transfer, encumbrance, pledge or assignment by a Holder of a Claim in violation of this Article VII.I shall be null and void.

### J.    No Distributions Pending Allowance

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that if only the Allowed amount of an otherwise valid Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

### K.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim, satisfying the Allowed amount in full, in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Plan Distribution to which such Holder is entitled under this Plan as of the Effective Date, without any interest, dividends, or accruals on account thereof.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.    Discharge of Claims and Termination of Interests

Because the Debtor is liquidating, the Debtor is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any holders of Claims or Interests.

### B.    Release of Liens

Except as otherwise provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to this Plan, on the Effective Date

and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor or Plan Administrator, as applicable, and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Debtor, to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtor or Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and Filing or recording of such releases.  The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtor or the Plan Administrator, as applicable, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Debtor or Plan Administrator, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

C.     **Release of Claims and Causes of Action**[2]

1.     **Releases by the Debtor and Its Estate**

**Effective as of the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtor, its Estate, and the Plan Administrator, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable by or on behalf of any of the Debtor, its Estate, or the Plan Administrator, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the Debtor, its Estate, or the Plan Administrator would have**

---

[2] Release provisions remain subject to ongoing review and modification, including as part of the Investigation.

been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtor-Related Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any Causes of Action included in the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtor, the Estate, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtor, its Estate, or the Plan Administrator asserting any claim or Cause of Action released pursuant to the Debtor Release.

2.      Release by Third Parties

Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Debtor-Related Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (b) any Causes of Action included in the Schedule of Retained Causes of Action; (c) actual fraud, willful misconduct, or gross negligence as determined by a Final Order; or (d) the rights of any Holder of Allowed Claims to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall

constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtor and its Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

### D.    Waiver of Statutory Limitations on Releases

Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

### E.    Exculpation

**Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation (to the extent on or prior to the Effective Date) of, as applicable, the Debtor-Related Matters except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (b) any Causes of Action included in the Schedule of Retained Causes of Action.**

49

F.        **Gatekeeper Provision**

**No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Released Parties or the Exculpated Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article VIII.C and Article VIII.E without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Released Party or Exculpated Party, and is not a Claim that the Debtor released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party; and (2) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any such Released Party or Exculpated Party.  Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.**

G.        **Injunction**

**EXCEPT  AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

H.     **Binding Nature of the Plan**

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE PLAN ADMINISTRATOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, OR (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE.**

I.     **Reimbursement or Contribution**

If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.
CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THIS PLAN**

A.     **Conditions Precedent to the Effective Date**

The following shall be conditions precedent to the Effective Date (collectively, the "Conditions Precedent"):

1.     The Court shall have entered the Confirmation Order;

2.     The Debtor shall have obtained all regulatory approvals that are necessary to implement and effectuate this Plan.

3.     The Plan Supplement and all of the schedules, documents, annexes, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with this Plan.

4.     The Transaction Documents, including the Litigation Trust Documents, if applicable, shall have been executed by the applicable parties thereto. The

Plan Supplement documents shall have been satisfied or waived in accordance with the terms of such Plan Supplement documents.

5.      The Professional Claim Reserve Account and Wind-Down Budget shall have been fully funded pursuant to the terms of the Plan.

### B.      Waiver of Conditions

The Debtor may waive any one or more of the Conditions Precedent to the Effective Date without notice, leave, or order of the Court.

### C.      Effect of Failure of Conditions

If Consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtor, or Claims against, or Interests in, the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity.

### D.      Substantial Consummation

"Substantial Consummation" of this Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

### A.      Modification and Amendments

Except as otherwise specifically provided in this Plan, the Debtor reserves the right to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in this Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend, or modify this Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

### B.      Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.        Revocation or Withdrawal of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtor revokes or withdraws this Plan, or if Confirmation or Consummation does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts and/or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

A.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

B.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

C.        resolve any matters related to:  (1) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (2) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and assigned; and (3) any dispute regarding whether a contract is or was executory or expired;

D.        ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

E.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

F.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

G.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Disclosure Statement, except to the extent that a Plan Supplement document provides for exclusive jurisdiction and venue in another forum;

H.      enter and enforce any order for the sale of property pursuant to sections 1123, or 1146(a) of the Bankruptcy Code, including the Confirmation Order;

I.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

J.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

K.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

L.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K hereof;

M.      enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

N.      determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, including the Transaction Documents, if applicable, except to the extent that any Plan Supplement document provides for exclusive jurisdiction and venue in another forum;

O.      enter an order concluding or closing the Chapter 11 Case;

P.      adjudicate any and all disputes arising from or relating to distributions under this Plan;

Q.      consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

R.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

S.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan, including the Transaction Documents, except to the extent that any document provides for exclusive jurisdiction and venue in another forum;

T.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

U.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII hereof;

V.      enforce all orders previously entered by the Court; and

W.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.      Immediate Binding Effect

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtor.

### B.      Dissolution of the Creditors' Committee

On the Effective Date, the Creditors' Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to this Chapter 11 Case; *provided,* that, after the Effective Date, the Creditors' Committee will continue to exist solely with respect to any applications for Professional Claims, including preparing same, objecting to same, defending same and attending any hearing with respect to same.

### C.      Additional Documents

On or before the Effective Date, the Debtor may File with the Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, all Holders of Claims or Interests receiving Plan Distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### D.      Payment of Statutory Fees

All fees payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) (including interest under 31 U.S.C. § 3717) as of the Confirmation Date will be paid on the Effective Date or as soon as reasonably practicable thereafter.  Notwithstanding anything to the contrary in the Plan, such fees are not subject to an allowance procedure under 11 U.S.C. § 503(b), nor is the U.S. Trustee required to file a request for payment of such fees.

Following confirmation, the Plan Administrator shall pay quarterly fees to the U.S. Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6) (including interest under 31 U.S.C. § 3717); *provided* that if a final decree has not been entered and the Chapter 11 Case closed solely as a result of the Litigation Trust's ongoing activities, then such quarterly fees shall be paid by the Litigation Trust.  Quarterly fees shall be payable for any case that is reopened. So long as the Debtor, Plan Administrator, or the Litigation Trust, as applicable, are required to make these payments, the Debtor, Plan Administrator, or the Litigation Trust, as applicable, shall file with the Court quarterly reports in the form specified by the U.S. Trustee for that purpose.

### E.      Reservation of Rights

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### G.      Notices

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by electronic email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic email, when received and telephonically confirmed, addressed as follows:

| Debtor | Counsel to the Debtor |
|---|---|
| Merit Street Media, Inc.<br>5501 Alliance Gateway Fwy,<br>Fort Worth, TX 76177<br>Attention: Gary Broadbent, Chief<br>Restructuring Officer | Sidley Austin LLP<br>2021 McKinney Avenue, Ste. 2000<br>Dallas, TX 75201<br>Attn: Thomas R. Califano and Jeri Leigh Miller<br>Email: tom.califano@sidley.com,<br>jeri.miller@sidley.com<br>-and-<br>787 Seventh Avenue<br>New York, NY 10019<br>Attn: Stephen H. Hessler and Patrick Venter<br>Emails: shessler@sidley.com, pventer@sidley.com |
| **U.S. Trustee** | **Counsel to the DIP Lender and Prepetition Bridge Lender** |
| Office of the United States Trustee<br>Earle Cabell Federal Building<br>1100 Commerce Street, Rm. 976<br>Dallas, TX 75242<br>Attention: Asher Bublick<br>Email: Asher.Bublick@usdoj.com | Jackson Walker<br>1401 McKinney St., Suite 1900,<br>Houston, Texas 77010<br>Attention:  Matthew Cavenaugh and Bruce Ruzinsky<br>Email: mcavenaugh@jw.com, bruzinsky@jw.com |
| **Counsel to Creditors' Committee** | |
| O'Melveny & Myers LLP<br>2801 North Harwood Street<br>Suite 1600<br>Dallax, TX 75201-2692<br>Attn: Louis R. Strubeck, Jr., Gregory P. Wilkes, and Laura Smith<br>Email: lstrubeck@omm.com, gwilkes@omm.com, lsmith@omm.com | |

After the Effective Date, the Debtor have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### H.    Term of Injunctions or Stays

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### I.      Entire Agreement

Except as otherwise indicated, this Plan (including, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### J.      Exhibits and Annexes

All exhibits, annexes, and documents attached hereto or included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits, annexes, and documents are Filed, copies of such exhibits, annexes, and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits, annexes, and documents from the Debtor's restructuring website at https://dm.epiq11.com/case/meritstreetmedia or the Court's website at www.txnb.uscourts.gov.  To the extent any exhibit, annex, or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Court or otherwise specifically provided for in such exhibit, annex, or document, the non-exhibit, non-annex, or non-document portion of this Plan shall control.

### K.      Non-Severability of Plan Provisions

If prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

### L.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### M.      Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain

amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Court prior to the Confirmation Date.

N.      **Closing of Chapter 11 Case**

After the full administration of the Chapter 11 Case, the Plan Administrator shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

[*Remainder of Page Intentionally Left Blank*]

Dated: September 15, 2025           **MERIT STREET MEDIA, INC.**

_/s/    Gary Broadbent_
Name: Gary Broadbent
Title: Chief Restructuring Officer