Holland N. O'Neil (TX 14864700)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Mark C. Moore (TX 24074751)
Stephanie L. McPhail (TX 24104104)
Davis G. Mosmeyer III (TX 24106346)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
rslovak@foley.com
slockhart@foley.com
mmoore@foley.com
smcphail@foley.com
dmosmeyer@foley.com

Rajiv Dharnidharka
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
555 California Steet, Suite 1700
San Francisco, CA 94104
Telephone: (415) 434-4484
Facsimile: (415) 434-4507
rajiv.dharnidharka@foley.com

Nora J. McGuffey (TX 24121000)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4366
Facsimile: (312) 832-4700
nora.mcguffey@foley.com

*Attorneys for Trinity Broadcasting of Texas, Inc.
dba Trinity Broadcasting Network and TCT Ministries, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>MERIT STREET MEDIA, INC.,[1]<br><br>Debtor. | § Chapter 11<br>§<br>§ Case No.: 25-80156-11 (SWE)<br>§<br>§ |

## TRINITY BROADCASTING OF TEXAS, INC. AND TCT MINISTRIES, INC.'S SUPPLEMENTAL BRIEF ON 11 U.S.C. § 1112(B)(2)

Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network ("**TBN**") and TCT Ministries, Inc. ("**TCT**" and together with TBN, "**Trinity**"), file this supplemental brief (the "**Brief**") addressing section 1112(b)(2) of the Bankruptcy Code and in further support of the *Emergency Motion for an Order: (I) Dismissing the Debtor's Chapter 11 Case, (II) Converting the Case to Chapter 7, or (III) Appointing a Chapter 11 Trustee* [Docket No. 100] (the "**Motion**

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy., Fort Worth, Texas 76177.

to Dismiss"),[2] and respectfully state as follows:

# I.
# INTRODUCTION

1.  On Sunday, September 15, 2025—the night before the start of the trial on the Motion to Dismiss—MSM filed its plan and disclosure statement.[3] MSM's chief restructuring officer, Gary Broadbent, signed the chapter 11 plan. The plan purports to embody a settlement by and between MSM, McGraw/Peteski, and the Committee. From the outset of this trial, those parties (particularly, the Committee) have advocated that the mere filing of the plan and the "remarkable" settlement between *these* parties somehow absolves this Chapter 11 Case from its initial and continual bad faith. They also argue that filing a plan should demonstrate there is a "reasonable likelihood" that MSM can achieve confirmation. It is apparent that these parties are attempting to invoke the "unusual circumstances" exception pursuant to section 1112(b)(2) of the Bankruptcy Code.

2.  But as detailed below, MSM, McGraw/Peteski, and the Committee must do more than flaunt a Chapter 11 plan—which was negotiated by various insiders and compromised fiduciaries (namely, Broadbent and the Committee)—as the reason to deny the Motion to Dismiss. Case law is clear that the parties must demonstrate **all** of the elements of section 1112(b)(2) to prevent conversion or dismissal. Case law is equally clear that where the cause is rooted in bad faith the exception under section 1112(b)(2) is inapplicable. For that reason, Trinity submits this Brief laying out the statutory framework.

---

[2]   Capitalized terms shall have the same meaning ascribed as defined in the Motion to Dismiss or reply in support of same [Docket No. 401] unless otherwise defined herein.

[3]   Docket Nos. 412 & 416. A few hours before, MSM filed a "plan settlement" term sheet, which is between MSM, McGraw/Peteski, and the Committee.

## II.
## ARGUMENTS & AUTHORITIES

**A.    11 U.S.C. § 1112(b)(2)**

3.  Upon a finding of cause, the burden shifts to the non-moving party to demonstrate the exception enumerated in section 1112(b)(2) of the Bankruptcy Code.[4] That section provides, in pertinent part:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, *and* the debtor or any other party in interest establishes that—
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time; *and*
>>
>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>>
>>> (i) for which there exists a reasonable justification for the act or omission; *and*
>>>
>>> (ii) that will be cured within a reasonable period of time fixed by the court.[5]

"[B]ecause § 1112(b)(2) is written in the conjunctive, a debtor must establish each element to invoke the exception and prevent dismissal or conversion."[6] This exception does not apply if the bankruptcy court finds cause to convert based on a "substantial or continuing loss to or diminution of the estate" pursuant to section 1112(b)(4)(A).[7]

---

[4]  *In re Delta AG Grp., LLC*, 596 B.R. 186, 201 (Bankr. W.D. La. 2019) ("[T]he burden shifted to Debtor to prove this case should not be dismissed or converted by proving each element set forth in § 1112(b)(2)."); *In re LTL Mgmt., LLC*, 652 B.R. 433, 451 (Bankr. D.N.J. 2023) ("The party opposing dismissal bears the burden of proving all the elements of § 1112(b)(2) to prevent dismissal.").

[5]  11 U.S.C. § 1112(b)(2)(A)–(B) (emphasis added).

[6]  *LTL Mgmt.*, 652 B.R. at 451-52 (collecting cases); *In re Turkey Leg Hut & Co. LLC*, 665 B.R. 129, 138 (Bankr. S.D. Tex. 2024) ("[A] debtor must specifically identify unusual circumstances").

[7]  *See, e.g., In re Adover Covered Bridge, LLC*, 553 B.R. 162, 176 (B.A.P. 1st Cir. 2016).

4. As such, to avoid conversion or dismissal, MSM, McGraw/Peteski, and the Committee must demonstrate: (1) there are "unusual circumstances" showing conversion or dismissal is not in the best interest of the creditors and the estate; (2) there is a reasonable likelihood that a plan will be confirmed within a reasonable amount of time; (3) there is a reasonable justification or excuse for the act or omission that demonstrates cause; *and* (4) such act or omission can be cured within a reasonable amount of time. The mere existence of a filed plan is not "unusual" in a Chapter 11 case, and is insufficient to avoid conversion or dismissal.

B. **Unusual Circumstances**

5. The Bankruptcy Code does not define "unusual circumstances;" however, courts have generally construed "unusual" to mean facts that are not common to a Chapter 11 case.[8] In essence, unusual circumstances must "suggest that the Bankruptcy Code's purpose would be better served by maintaining the case in Chapter 11."[9] Bankruptcy courts have significant discretion in making the determination as to whether there are unusual circumstances that should prevent conversion, and such determination is a fact-intensive inquiry.[10]

6. For instance, "unusual circumstances" may exist when a proposed Chapter 11 plan contemplates paying *all creditors in full as of the effective date*.[11] Indeed, the bankruptcy court in *In re Orbit Petroleum* found that the plan that proposed to pay "all creditors in full on the effective date [was] an unusual circumstance" sufficient to overcome a finding of cause enumerated in

---

[8] *Delta AG Grp.,* 596 B.R. at 196 (citing 7 Collier on Bankr. ¶ 1112.05[2] (16th ed.)).

[9] *Id.* at 197; *In re DRTMG, LLC*, 667 B.R. 862, 876 (Bankr. S.D. Ohio 2025) (noting that unusual circumstances are conditions "not common" in Chapter 11 cases, "such that parties are better off without conversion or dismissal.").

[10] *See, e.g., In re M.A.R. Designs & Constr., Inc*., 653 B.R. 843, 870-71 (Bankr. S.D. Tex. 2023); *In re Triumph Christian Ctr., Inc.,* 493 B.R. 479, 496 (Bankr. S.D. Tex. 2013); *In re 1031 Tax Grp., LLC,* 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (section 1112(b) "explicitly provides for this discretion where a court is able to identify 'unusual circumstances . . . that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate'").

[11] *In re Orbit Petroleum, Inc.,* 395 B.R. 145, 149 (Bankr. D.N.M. 2008) ("A plan which proposes to **pay all creditors in full on the effective date** is an unusual circumstance sufficient to deny conversion or dismissal even in the face of demonstrated cause." (emphasis added)).

section 1112(b)(4).[12] This makes sense: there is no better alternative outcome possible than all creditors being paid in full on the effective date of a plan, effectively rendering them unimpaired. Another "unusual circumstances" case cited by MSM, *In re New Towne Development, LLC*, follows similar logic.[13] There, the debtor held "about $13.4 million in debt secured by land worth between $17 million and $18 million," creating a situation where "a party in interest could develop a reorganization plan to pay all administrative expenses and also all unsecured claims" in full.[14]

7.     By contrast, facts that are merely "common" among Chapter 11 debtors cannot demonstrate "unusual circumstances."[15] The mere filing of a Chapter 11 plan that contemplates some distribution to unsecured creditors does not rise to the level of an "unusual circumstance," nor does the fact that the estate may have equity in property.[16] Both of these circumstances are commonly encountered in Chapter 11 cases.[17]

---

[12]  *Id.* Specifically, the movants in *Orbit Petroleum* moved to dismiss or convert for one of the enumerated bases of "cause" under section 1112(b)(4), such as debtor's failure to file monthly operating reports, to pay U.S. Trustee fees, to make adequate protection payments, having insufficient cash flow, and inability to reorganize. *Id.* at 146.

[13]  *In re New Towne Dev., LLC,* 404 B.R. 140 (Bankr. M.D. La 2009) (finding cause to dismiss or convert but denying such relief based on "unusual circumstances.").

[14]  *Id*. at 148. Another example is *In re Pittsfield Weaving Co.*, in which the court determined unusual circumstances existed where the debtor accrued post-petition debt as a result of unexpected losses of a key customer and the debtor's trade creditors assumed the risk by continuing to deal with the debtor. *In re Pittsfield Weaving Co.,* 393 B.R. 271 (Bankr. D.N.H. 2008) (finding that while there were "unusual circumstances," the risk of continuing post-petition losses outweighed the unusual circumstances in the case thereby warranting dismissal).

[15]  *See, e.g., Delta AG Grp.,* 596 B.R. at 197 (finding that a debtor who failed to obtain insurance necessary to protect the estate and public is not an "unusual circumstance"); *In re Aurora Memory Care, LLC,* 589 B.R. 631, 642 (Bankr. N.D. Ill. 2018) (finding that debtor who has failed to file monthly operating reports and needs to obtain post-petition financing but cannot, is not uncommon in Chapter 11 cases and thus not an "unusual circumstance"); *In re Wallace*, No. 09-20496-TLM, 2010 WL 378351, at *7 (Bankr. D. Idaho Jan. 26, 2010) (finding that having a contentious dispute with a creditor or the debtor's desire to want to continue litigation in an adversary proceeding are not "unusual circumstances").

[16]  *See, e.g., In re Fall,* 405 B.R. 863, 870-71 (Bankr. N.D. Ohio 2008) ("The fact that a plan has been filed in this case or that the estate may have equity in the Plaza does not, as suggested by the Debtor–in–Possession, rise to the level of an 'unusual circumstance,' as both events are commonly encountered in Chapter 11 cases.").

[17]  *Id.*

**TRINITY'S SUPPLEMENTAL BRIEF ON 11 U.S.C. § 1112(B)(2)**                                        **PAGE 5**
4924-0332-0429.7

8. Indeed, the bankruptcy court in *In re Ozcelebi*,[18] generally adopted this principle. There, the debtor argued that his amended Sub V plan presented an "unusual circumstance" because the plan had the ability to "bring finality and totality for an independent investigation" under the bankruptcy court's jurisdiction. The bankruptcy court rejected this argument, noting:

> First, all chapter 11 plans are intended to bring finality by giving the debtor the opportunity to successfully reorganize and exit the bankruptcy system. Second, Debtor's statement seems to suggest that there is a need for an independent investigation in this case, which only convinces this Court all the more that conversion is necessary.[19]

9. But again, even if the Court were to find there are "unusual facts," the non-moving parties must still prove the remaining elements of section 1112(b)(2)(A)–(B).[20]

### C. Reasonable Likelihood a Plan will be Confirmed

10. Assuming, *arguendo*, the Court finds there are "unusual circumstances" that demonstrate conversion is not in the best interest of the estate, the nonmoving parties must demonstrate that there is a reasonable likelihood a Chapter 11 plan will be confirmed.[21]

11. Where, as here, "cause" to convert is rooted in the filing of this Chapter 11 Case in bad faith and the continuing bad faith of the compromised fiduciaries (*i.e.,* Broadbent and the Committee), a plan cannot be confirmed. Indeed, pursuant to section 1129(a)(3) of the Bankruptcy Code a plan may only be confirmed if it was proposed in good faith.[22] For that reason, the Eleventh Circuit determined:

---

[18] *In re Ozcelebi*, 639 B.R. 365, 424 (Bankr. S.D. Tex. 2022).

[19] *Id.* at 424.

[20] *LTL Mgmt.,* 625 B.R. at 452 (assuming that "unusual circumstances" exist, the debtor was unable to satisfy the other elements of section 1112(b)(2)); *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 285 (Bankr. N.D. Tex. 2021) (finding that while "unusual circumstances" existed, such circumstances did not demonstrate dismissal was not in the best interest of the creditors, and also finding that debtor failed to establish the requirement under section 1112(b)(2)(A)).

[21] 11 U.S.C. § 1112(b)(2)(A).

[22] 11 U.S.C. § 1129(a)(3).

**TRINITY'S SUPPLEMENTAL BRIEF ON 11 U.S.C. § 1112(B)(2)**  PAGE 6
4924-0332-0429.7

> [T]he taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement. ***The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.***[23]

In *In re Phoenix Piccadilly, Ltd.,* the bankruptcy court found that because the Chapter 11 filing was not filed in good faith, but for a litigation tactic, there was no prospect of a successful reorganization even where the debtor had equity in the property.[24] The Eleventh Circuit affirmed and upheld that the finding of a bad faith filing cannot be overcome by a possibility for a successful reorganization.[25]

12. Similarly, the *Ozcelebi* court determined that the debtor had been acting in bad faith throughout the Chapter 11 case by, among other things, failing to accurately and honestly report information on his schedules and statements, reporting information that intentionally misled the court and his creditors, lying about certain transfers in his proposed plan and other pleadings, and artificially calculating his salary.[26] While the bankruptcy court determined that the amended plan did not demonstrate "unusual circumstances," it further held that the debtor's bad faith conduct post-petition demonstrated there was no reasonable likelihood that debtor could confirm a plan.[27] Specifically, the bankruptcy court held: "[G]iven those findings, there is no reasonable likelihood that Debtor could confirm a plan pursuant to § 1191(b), which incorporates § 1129(a)(2), requiring that '[t]he proponent of the plan complies with the applicable provisions of this title.'"[28]

---

[23] *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1395 (11th Cir. 1988) (quoting *In re Natural Land Corp. v. Baker Farm, Inc. (In re Natural land Corp.)*, 825 F.2d 296, 298 (11th Cir. 1987)) (emphasis added).

[24] *Id.* at 1394.

[25] *Id.* at 1395 ("We reject the debtor's argument that the bankruptcy court cannot ever dismiss a case for bad faith if there is equity in the property because the presence of equity indicates the potential for a successful reorganization.").

[26] *Ozcelebi*, 639 B.R. at 396-424.

[27] *Id.* at 424-25.

[28] *Id.* at 425. Notwithstanding, some courts narrowly construe the good faith requirement under section 1129(a)(3) and focus more on the plan proponent(s)' conduct in formulating, proposing, and confirming a

D.   **Justification for and Cure of the Debtor's Bad Faith**

13.   As to the last elements of section 1112(b)(2)(B)—whether the acts or omissions demonstrating cause can be justified and cured—case law is clear that bad faith cannot be justified or cured.[29]

14.   In *LTL Management*, the bankruptcy court dismissed the bankruptcy case upon finding that the debtor lacked financial distress, which in the Third Circuit demonstrates bad faith.[30] There, like here, movants argued that where cause for dismissal is found based on lack of good faith, the exception under section 1112(b)(2) is never applicable.[31] The bankruptcy court agreed, acknowledging that while some petitions may be "filed with less good faith—or more bad faith—than others," the deciding question was whether the debtor properly belongs in bankruptcy.[32] Under Third Circuit precedent, debtors that are not in financial distress have filed in bad faith, and do not belong in bankruptcy.[33] For that reason, the *LTL Management* court held that the "lack of financial distress is not the type of 'bad faith' that could be subject to the § 1112(b)(2) exception to prevent dismissal or conversion."[34]

15.   But the *LTL Management* court went further, extending section 1112(b)(2)'s inapplicability to any type of bad faith:

> Moreover, this Court is not inclined to distinguish between the various grounds supporting a finding of "bad faith." **Whatever the**

---

plan. *See, e.g., In re Madison Hotel Assocs.,* 749 F.2d 410, 425-26 (7th Cir. 1984). To that end, confirmation of a particular plan is not possible under section 1112(b)(3) if the plan process itself is tainted by the plan proponent(s)' bad faith. 7 Collier on Bankr. ¶ 1112.07[5] (16th ed. 2025). Even applying this narrow standard, it is difficult to imagine that a plan, which was heavily negotiated by compromised fiduciaries (*i.e.*, Broadbent and the Committee), could have been proposed in good faith.

[29]   *See, e.g., LTL Mgmt.,* 625 B.R. at 454; *In re Green,* BAP No. NV-15-1349, 2016 WL 6699311, at *11 (B.A.P. 9th Cir. Nov. 9, 2016); *In re Hinesley Fam. Ltd. P'ship No. 1,* 460 B.R. 547, 553 (Bankr. D. Mont. 2011).

[30]   *LTL Mgmt.,* 625 B.R. at 456 (dismissing the bankruptcy case and finding that "an exception to dismissal under § 1112(b)(2) is unavailable because the statutory elements have not been satisfied.").

[31]   *Id.* at 453.

[32]   *Id.* (citing *In re LTL Mgmt., LLC,* 64 F.4th 84, 111 (3d Cir. 2023)).

[33]   *Id.* at 452-53 (citing *In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir. 1999)).

[34]   *Id.* at 453.

> ***basis, it is "bad faith," generally, that is the accepted "cause" for dismissal or conversion in this Circuit. The weight of the case law supports the conclusion that "bad faith" cannot be cured or justified such that the exception to dismissal under § 1112(b)(2) applies.*** Rather, this Court is inclined to agree with Movants that the exception to dismissal under § 1112(b)(2) is intended for use where "cause" for dismissal is based on "technical mistakes" or other procedural and ministerial failings.[35]

Other courts have reached this same conclusion. For instance, in *In re Green*, the court held:

> [E]ven if Debtors could confirm a plan within a reasonable time, they have not shown how the "cause" established to convert their case—bad faith—was either reasonably justified or is curable. *See* § 1112(b)(2)(B). As the bankruptcy court found, filing a petition in bad faith could never be reasonably justified or curable, no matter what plan Debtors could now propose. For this same reason, we reject Debtors' argument that because they had the assets to fund a 100% plan if needed, the bankruptcy court erred in holding that they could not propose a confirmable plan.[36]

Similarly, the court in *In re Hinesley Family Ltd. Partnership No. 1*, noted:

> Yet if cause for conversion or dismissal exists because the debtor filed its chapter 11 case in bad faith, then section 1112(b)(2) would not apply because, by determining that the debtor filed the case in bad faith, the court would foreclose a reasonable justification for the filing. In addition, a bad faith determination would likely constitute "unusual circumstances" demonstrating that section 1112(b)(2) should not be applied.[37]

16. Although no court within this district has made this determination, Fifth Circuit precedent nevertheless supports this conclusion. As the Fifth Circuit has recognized:

> Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling

---

[35] *Id.* at 454 (internal citations omitted & emphasis added).

[36] *In re Green*, BAP No. NV-15-1349, 2016 WL 6699311, at *11 (B.A.P. 9th Cir. Nov. 9, 2016).

[37] *In re Hinesley Fam. Ltd. P'ship No. 1*, 460 B.R. 547, 553 (Bankr. D. Mont. 2011); *see also Layman v. Tennessee State Bank*, No. 2:19-cv-233, 2021 WL 6425951, at *8 (E.D. Tenn. Feb. 2, 2021) (stating that actions, such as intentional acts and omissions by the debtor amount to bad faith and "cannot be cured").

**TRINITY'S SUPPLEMENTAL BRIEF ON 11 U.S.C. § 1112(B)(2)**     **PAGE 9**
4924-0332-0429.7

and turnover of assets) available only to those debtors and creditors with "clean hands."[38]

Indeed, debtors must have "clean hands" in order to enjoy the benefits of the Bankruptcy Code and process.[39] Put differently, bad-faith debtors do not belong to the "class of honest but unfortunate debtors that the bankruptcy laws were enacted to protect."[40] To allow a debtor to justify or cure its bad faith would eviscerate the requirement that every bankruptcy case must be filed and prosecuted in good faith[41]——particularly, when the only estate fiduciaries have either abdicated their duties or are beholden to another insider.[42]

17. No amount of "unusual circumstances" or the possibility of plan confirmation can undo or justify a debtor's initial and continuing bad faith. To hold otherwise, would allow a debtor to continually abuse the Bankruptcy Code and process, and ultimately, undermine the integrity of this Court. As such, based on findings of bad faith (both in commencing the Chapter 11 Case and continual actions taken by compromised fiduciaries—specifically, Broadbent and the Committee), MSM, McGraw/Peteski, and the Committee cannot satisfy all elements of section 1112(b)(2) and prevent dismissal or conversion.

### III.
### CONCLUSION

18. Simply put, the exception under section 1112(b)(2) is not available, where, as here, there is evidence of incipient and continuing bad faith. No matter the "concessions" offered or the

---

[38] *Little Creek Dev. Co. v. Commonwealth Mtg. Corp., (In re Little Creek Development Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (internal citations omitted).

[39] *Id.*

[40] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

[41] *Little Creek*, 779 F.2d at 1071 ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.").

[42] *See, e.g., In re Hampton Hotel Invs., L.P.,* 270 B.R. 346 (Bankr. S.D.N.Y. 2001) (finding that as a matter of law and fact, the act of self-dealing by the debtor's principal could not be permissible or excused and finding cause to convert).

"remarkable about face" achieved through subsequent negotiations, McGraw/MSM/Peteski (and now the Committee) cannot retroactively fix the bad faith intentions underlying the filing and prosecution of this Chapter 11 Case. Moreover, the only way to "cure" the post-petition bad faith actions taken by Broadbent and the Committee *vis-à-vis* Jamie Ribman and his involvement at every step of the scheme—from June 2024 through today—would be to allow a Chapter 7 trustee to take over.

[*The remainder of this page is intentionally left blank*]

DATED: September 28, 2025			Respectfully submitted by:

/s/ Mark C. Moore
Holland N. O'Neil (TX 14864700)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Mark C. Moore (TX 24074751)
Stephanie L. McPhail (TX 24104104)
Davis G. Mosmeyer III (TX 24106346)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
rslovak@foley.com
slockhart@foley.com
mmoore@foley.com
smcphail@foley.com
dmosmeyer@foley.com

-and-

Rajiv Dharnidharka
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
555 California Steet, Suite 1700
San Francisco, CA 94104
Telephone: (415) 434-4484
Facsimile: (415) 434-4507
rajiv.dharnidharka@foley.com

-and-

Nora J. McGuffey (TX 24121000)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4366
Facsimile: (312) 832-4700
nora.mcguffey@foley.com

***Attorneys for Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network and TCT Ministries, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2025, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Nora J. McGuffey*
Nora J. McGuffey