Holland N. O'Neil (TX 14864700)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Mark C. Moore (TX 24074751)
Stephanie L. McPhail (TX 24104104)
Davis G. Mosmeyer III (TX 24106346)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
rslovak@foley.com
slockhart@foley.com
mmoore@foley.com
smcphail@foley.com
dmosmeyer@foley.com

Rajiv Dharnidharka
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
555 California Steet, Suite 1700
San Francisco, CA 94104
Telephone: (415) 434-4484
Facsimile: (415) 434-4507
rajiv.dharnidharka@foley.com

Nora J. McGuffey (TX 24121000)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4366
Facsimile: (312) 832-4700
nora.mcguffey@foley.com

*Attorneys for Trinity Broadcasting of Texas, Inc.
dba Trinity Broadcasting Network and TCT Ministries, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: <br><br> MERIT STREET MEDIA, INC.,[1] <br><br> Debtor. | § Chapter 11 <br> § <br> § Case No.: 25-80156-11 (SWE) <br> § <br> § |

**TRINITY BROADCASTING OF TEXAS, INC. AND TCT MINISTRIES, INC.'S OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING PAYMENT OF KEY ESTATE EXPENSES**

Trinity Broadcasting of Texas, Inc. d/b/a Trinity Broadcasting Network ("**TBN**") and TCT Ministries, Inc. ("**TCT**" and together with "TBN," "**Trinity**"), file this objection (the "**Objection**") to *Debtor's Emergency Motion for Entry of an Order Authorizing Payment of Key Estate Expenses* [Docket No. 592] (the "**Key Expenses Motion**") and respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy., Fort Worth, Texas 76177.

4931-9746-7256.3

# I.
# **PRELIMINARY STATEMENT**

1. The Key Expenses Motion should be seen for what it truly is: a motion for relief from the *Order Preserving Status Quo* [Docket No. 579] (the "**Status Quo Order**") that MSM and Peteski requested, argued for, and then received. In that order, the Court ruled that any stay of its decision to convert must go both ways, and MSM could not make any transfers of estate property until the Court ruled on the as-yet-unfiled motion for stay pending appeal. MSM's attempt to get around the consequences of its own actions should be summarily denied; any relief from the Status Quo Order should be total, meaning immediate entry of an order converting this case to Chapter 7 and directing the United States Trustee to appoint a Chapter 7 trustee.

2. The Key Expenses Motion is not problematic only because it attempts to obscure the relief it seeks; the relief itself is improper. Given that the Court has already ruled that this case should be converted to Chapter 7, any attempt to pay *Chapter 11* administrative expenses, however incurred or to whom, effectively prefers those expenses over future expenses of the *Chapter 7* estate. This contravenes 11 U.S.C. § 726(b), which elevates claims incurred post-conversion over claims incurred pre-conversion, to the extent both cannot be paid.[2]

3. The proper outcome to this situation, where MSM apparently failed to pay administrative expenses *even before* the Ruling on October 28, is clear: a Chapter 7 trustee should be put in place immediately to determine which, if any, claims *can* be paid, what types of claims *may* exist in the future, and *how* such claims arose and/or might arise. Immediate conversion has the added benefit of cutting off *future* claims for a business that the Court already ruled was "as dead as a doornail when [it] filed bankruptcy" *four months ago*.

---

[2] 6 Collier on Bankr. ¶ 726.03 (16th ed. 2025) ("In a case that has been converted to chapter 7 from a chapter 11, 12 or 13 case, claims allowed under section 503(b) incurred under chapter 7 after the conversion have priority over claims allowed section 503(b) incurred under any other chapter of title 11, or under chapter 7 before such conversion, and over any expenses of a custodian superseded under section 543.")

2

4. The final—and perhaps most concerning—issue with the Key Expenses Motion is that the source of the funds to be used is unclear, at best. The Court is aware that on October 17, MSM filed an *Emergency Notice of Hearing for October 21, 2025 Setting* [Docket No. 555] relating to an as-yet-unfiled third interim DIP order. That hearing never happened. The Court is likely not aware that on October 14, counsel for MSM contacted counsel for Trinity requesting approval for a third interim DIP draw from Peteski of approximately $800,000.[3] Attached to the email from counsel was a set of projections that purported to demonstrate existing cash—as of the week ending October 17—of a literal fraction of what MSM now seeks authority to spend, *and the situation only got worse from there.*[4] To Trinity's knowledge, MSM has not borrowed any additional funds from Peteski with or without Court permission, so this projection begs an important question: where did the $484,000 MSM now seeks authority to spend come from?

## II.
## RESPONSE AND OBJECTION

5. On October 28, 2025, the Court issued its oral ruling (the "**Ruling**") on Trinity's Motion to Dismiss and PBR's Joinder thereto,[5] ruling that the Chapter 11 Case should be converted to Chapter 7 for four separate, specifically identified forms of "cause" pursuant to 11 U.S.C. § 1112(b). Recitation of the Ruling took approximately 2.5 hours, and the transcript spans 95 pages.[6] It was nothing if not thoughtful, complete, and definitive.

6. The Court's Ruling came approximately four weeks after closing arguments in a trial that began on September 16 and lasted through five days of opening argument, evidentiary presentations, and witness testimony. During that trial, the Court heard testimony from nine (9)

---

[3] *See* Exhibit 1, email dated October 14, 2025 from P. Venter to M. Moore entitled "DIP – Budget Projection." The actual projections attached to that email, Exhibit 2, are marked confidential and will be filed under seal.

[4] Another problem inherent in the Key Expenses Motion is that MSM apparently anticipated the administrative expenses that it has not yet paid and ignored them when requesting a stay pending appeal.

[5] *See* Docket No. 100 (the "**Motion to Dismiss**") and Docket No. 151 (the "**PBR Joinder**")

[6] A copy of the transcript of the Ruling is at Docket No. 581 and is cited herein as "Ruling __."

3

different witnesses, admitted approximately 200 exhibits, and ruled on numerous evidentiary and legal issues.

    7.    The Ruling summarized the Court's legal conclusions as follows:

> Regrettably, although the case was filed with questionable-but-consented-to corporate authority, I find clear cause to either convert the case to Chapter 7, dismiss the case, or appoint a Chapter 11 trustee. Given that cause, I must determine what course of action is in the best interest of creditors and the estate.[7]

Following the discussion of the four specific forms of cause found, the Court continued:

> Now that I've determined there is cause to convert or dismiss the case, I'll next determine which of those two options is in the best interests of creditors and the estate. The winner there by a large margin is conversion. A Chapter 7 trustee can sell the media library and any remaining assets under Section 363 of the Bankruptcy Code, while enjoying the benefits and protections of the automatic stay. The Chapter 7 trustee can then do his or her own independent investigation into estate causes of action, and the trustee can also review filed proofs of claim to determine which ones to object to. Creditors can have faith that the process will play out fairly and neutrally.[8]

Thus, the Ruling granted Trinity's Motion to Dismiss in part (and PBR's Joinder in full), determining that the Chapter 11 Case should be converted to one under Chapter 7.

    8.    At the conclusion of the Ruling, the Court indicated that it intended to draft its own order to be entered presently. In response counsel for MSM requested "that you stay enforcement of your pending order to permit us to take an appeal."[9] The Court then asked for clarification whether it was a request for stay pending appeal, to which counsel responded "Yes, it is. Pursuant

---

[7]    Ruling at 5:10-15.
[8]    *Id.* at 67:19-68:5.
[9]    *Id.* at 76:11-14.

4

to Rule 8007(a)."[10] Counsel for Peteski joined in the request "for a stay for some short period of time," indicating they were not yet sure whether they would file an appeal.[11]

9. Counsel for PBR and Trinity then objected to entry of an immediate stay by requesting time to brief the issue with more notice, to which counsel for MSM agreed if the briefing occurred prior to appointment of a Chapter 7 trustee.[12] Counsel for MSM further indicated that they "have a motion ready to go" and "can get that on file very promptly."[13] When asked how promptly following a short recess, counsel for MSM stated "I think we could file it first thing tomorrow morning."[14] A discussion of the mechanics of appointment of a Chapter 7 trustee then ensued involving the Court and various parties, following which counsel for Peteski first proposed "not a stay pending appeal, a temporary administrative stay, so that a Chapter 7 trustee is not appointed."[15]

10. Ultimately, following additional back-and-forth regarding an administrative stay, the Court concluded the Ruling, requested availability for a potential follow-up hearing the following day, and took no action. The following day, however, the Court entered its Status Quo Order stating that while it was "willing to preserve the status quo" by not entering an order converting the case to Chapter 7, "the status quo must apply to all parties" until such time as the Court heard the forthcoming motion for stay pending appeal.[16] The Court also ordered that the

---

[10] *Id.* at 76:11-19.
[11] *Id.* at 77:1-6.
[12] *See id.* at 77:7-78:17.
[13] *Id.* at 79:16-17.
[14] *Id.* at 80:5-6.
[15] *Id.* at 85:14-16.
[16] Docket No. 579 at 1-2.

Debtor "shall not transfer any estate property to any person for any reason pending further Court order" and that any such transfers after the start of the delivery of the Ruling, shall be returned.[17]

11. MSM did not file the promised motion for stay pending appeal on October 29 despite previously saying it was "ready to go." Instead, at a meet-and-confer on October 30, MSM announced its intention to file on Monday, November 3. At the same meet-and-confer, Peteski was noncommittal about its intentions, but agreed to follow the same briefing schedule.[18]

12. On November 3, Peteski and MSM filed separate motions for stay of the Ruling pending appeals. In addition to seeking a stay pending appeal from the Court, each also requests that if such a stay is denied, the Court enter a *further* "administrative" stay to allow further motions to be filed in the District Court. Such a stay would be, effectively, a third bite at the proverbial apple.

13. Having gotten what it initially wanted in the form of a "temporary administrative stay," but apparently having believed prior that a stay would operate only in its favor, on November 6, MSM filed the Key Expenses Motion seeking relief from the Status Quo Order to pay previously unpaid and projected expenses of the Chapter 11 estate. From the Exhibit 1 attached to the proposed order submitted with the motion, it *appears* that MSM is requesting authority to pay approximately $484,000 in expenses incurred prior to and including November 14. This request should be flatly denied; any relief from the Status Quo Order should be total relief, including the immediate entry of an order converting this case to Chapter 7 and directing the United States Trustee to appoint a trustee.

14. It should not be lost on the Court that though the Key Expenses Motion attempts to clothe itself in the veneer of paying mere employees and vendors except for Messrs. Cheatwood

---

[17] *Id*. at 2.

[18] During the meet-and-confer, MSM's counsel provided no explanation as to why its motion was not filed on October 29, as had been represented to the Court.

and Solomon, which parties are finding out for the first time, resigned on October 17. Given the evidence heard and presented at trial, the motivations for paying all or nearly all of those employees or vendors are suspect.[19] Messrs. Cheatwood and Solomon aside, the Court heard evidence that all of MSM's remaining employees (whether it is 3 or 4 at this point is unclear) *except* Amber Calderon have actively worked for McGraw's new venture, Envoy, since the Petition Date in this case. Vendors like Digital Glue may have done similarly. None—except possibly Ms. Calderon—should be paid at this point unless and until a neutral, independent fiduciary in the form of a Chapter 7 trustee can be appointed and decides what is truly just or right.

15.   Moreover, the mere idea of paying *future* expenses for what is essentially a non-operating, pre-conversion (but post-Ruling) debtor is absurd on its face and turns the Court's Status Quo Order, ostensibly designed to allow MSM (and now Peteski) to file their motions for stay pending appeal, into a weapon to achieve what the Court already decided should not happen: a continuation of this Chapter 11 Case in Chapter 11.

### III.
### CONCLUSION

**WHEREFORE**, Trinity respectfully requests that this Court enter an order (a) denying the Key Expenses Motion in its entirety; or (b) vacating the Status Quo Order in its entirety and entering an order converting this case to Chapter 7 immediately, and (c) granting such other and further relief as may be just and proper.

[*The remainder of this page is intentionally left blank*]

---

[19]   Equally suspect is whether any of the payments for "key expenses" will go to Broadbent himself, who must have (if MSM is to be believed as to its own corporate governance) approved the filing of the motion itself.

DATED: November 7, 2025

Respectfully submitted,

*/s/ Mark C. Moore*
Holland N. O'Neil (TX 14864700)
Robert Slovak (TX 24013523)
Steven C. Lockhart (TX 24036981)
Mark C. Moore (TX 24074751)
Stephanie L. McPhail (TX 24104104)
Davis G. Mosmeyer III (TX 24106346)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
rslovak@foley.com
slockhart@foley.com
mmoore@foley.com
smcphail@foley.com
dmosmeyer@foley.com

-and-

Rajiv Dharnidharka
(admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
555 California Steet, Suite 1700
San Francisco, CA 94104
Telephone: (415) 434-4484
Facsimile: (415) 434-4507
rajiv.dharnidharka@foley.com

-and-

Nora J. McGuffey (TX 24121000)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4366
Facsimile: (312) 832-4700
nora.mcguffey@foley.com

***Attorneys for Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network and TCT Ministries, Inc.***

8

4931-9746-7256.3

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Nora J. McGuffey*
Nora J. McGuffey

4931-9746-7256.3